January 13, 2023

**VIA ECF *and* FAX**

The Honorable P. Kevin Castel
United States District Judge
Daniel Patrick Moynihan
United States Courthouse
500 Pearl St.
New York, New York 10007

      Re:   *In re Google Digital Advertising*, 1:21-md-03010 (PKC);
              Plaintiffs' Proposed ESI Protocol

Dear Judge Castel:

      In accordance with the Court's Pre-Trial Order No. 5 (Doc. 394), the Plaintiffs' Coordinating Committee submits Plaintiffs' proposed Protocol Regarding Electronically Stored Information.[1] Although the parties negotiated most provisions, they did not reach agreement on all provisions. Plaintiffs accordingly set out their position on those portions of the ESI protocol that remain disputed. We note that the next conference in this matter is scheduled for February 15, 2023, at 2:00 p.m.

**BACKGROUND – The Parties' Negotiations.**

      Plaintiffs—the State AGs, Publisher Plaintiffs, and Class Advertisers—have worked diligently to coordinate and to negotiate a mutually agreeable ESI Protocol with Google. Despite many months of negotiations, dating to even before the MDL, and all Plaintiffs' collective efforts since the MDL was created, Google ultimately refused even to provide suggested revisions to the draft ESI protocols that Plaintiffs sent in April 2022 and in June 2022. Instead, Google demanded in July 2022 that Plaintiffs scrap all prior efforts and begin again, using an ESI Order from a different case involving Meta.

      Seeking to avoid unnecessary disputes, Plaintiffs started over again with the new form from Google and Meta. Plaintiffs provided comments in August 2022, and eventually received

---

[1] Plaintiffs' Exhibit A is the clean version of Plaintiffs' proposed ESI Order. Exhibit B shows Google's proposals in redline on top of Plaintiffs' proposed ESI Order.

a revised mark-up back from Google in October 2022, after which Plaintiffs provided collective comments back on November 4, 2022. Since then the parties have engaged in several meet-and-confers via video conference, and have exchanged several drafts. However, as described further below, Google has taken inconsistent positions and even backtracked on provisions to which it previously agreed. More concerning, Google also has insisted on language that would allow it to destroy—never mind produce—large swaths of likely relevant and potentially critical ESI.

Google is not entitled to a protective order allowing it to destroy relevant information, produce what data it does produce in a form unusable by Plaintiffs, and avoid any obligation to produce privilege logs on a rolling basis. For the reasons set forth below, Plaintiffs ask that the Court enter their proposed ESI protocol, instead of Google's.

**GENERAL PROVISIONS - SECTION I**

**Production Specifications (paragraph I.2).**

Google seeks to exempt from this ESI Order's production specifications any electronically stored information produced during any "pre-complaint investigation of the subject matter of this litigation" to any enforcement agency or other person worldwide. With respect to Google's documents, this would likely make the ESI Order a nullity. Beginning as far back as 2007, Google's conduct at issue in these cases has been or is currently being investigated by numerous enforcement agencies including, at least: 1) the Federal Trade Commission; 2) the U.S. Department of Justice; 3) the Attorneys General of numerous States not parties to these actions; 4) the United Kingdom's Competition and Markets Authority; 5) the French Competition Authority; 6) the Directorate-General of Competition for the European Commission; and 7) Australia's Competition and Consumer Commission. It is thus likely that Google has already produced the vast majority of documents and data sought in discovery in these actions to one or more agencies or individuals during a "pre-complaint investigation." Under Google's proposal, none of those documents would need to comply with the provisions of the ESI Order in this case.

Plaintiffs should not be forced, for likely the vast majority of responsive materials, to blindly accept ESI protocols and policies negotiated by non-parties to this controversy. Plaintiffs have no way to know the circumstances of Google's prior productions to non-party enforcement agencies and individuals. Google's previously produced materials may be incompatible with Plaintiffs' review tools, or may have been produced without key metadata needed to evaluate or authenticate those materials. Google's offer to meet and confer on this issue is cold comfort—Google's proposal would by default exempt an enormous number of relevant materials from the ESI Order in these actions and Google would have no incentive to budge from that default position. Google's proposed Paragraph I.2 should be rejected.

Plaintiffs' proposed paragraph I.2 is reasonable. Plaintiffs agree that Google need not reformat any materials previously produced the Plaintiff States in *this* proceeding during their

pre-complaint investigation, to the extent those documents are responsive to a Rule 34 document request. But plaintiffs should be permitted to make reasonable requests for readable or useable versions of those documents. Plaintiffs' review of the documents produced to the Plaintiff States in their investigation reveals that many contain unreadable content. For instance, certain documents contain comments from Google employees that appear in the documents' margins. Often, those comments are truncated in the image that Google produced to Plaintiffs. The content of those comments may be highly relevant to these cases, and Plaintiffs should be permitted to make reasonable requests that Google provide versions of such documents that can be read in their entirety, including all comments. To the extent other similar issues arise concerning the readability of materials previously produced to the Plaintiff States, Plaintiffs also should be permitted to make reasonable requests for readable and useable versions of those documents.

Plaintiffs' proposed paragraph I.2 preserves the utility of this ESI Order that the parties have been negotiating for months. It also reflects a reasonable compromise: Google need not reformat documents it has previously produced to the Plaintiff States, so long as Plaintiffs can make reasonable requests for readable versions of those documents. Thus, the Court should adopt Plaintiffs' proposal which makes all documents produced in this MDL subject to the protocols and procedures governing production of ESI here.

## PRESERVATION – SECTION II

The ESI Order in this action must require all parties to preserve relevant evidence. Google's destruction of relevant evidence in other actions has been widely reported—including since the start of 2023. *See, e.g.*, *Google Can't 'Get Away' With Deleting Chats, Judge Says*, Law360 (Jan. 12, 2023) (regarding *In re Google Play Store Antitrust Litigation*, No. 3:21-md-02981-JD (N.D. Cal.), Dkt. No. 408), *available at* <https://www.law360.com/california/articles/1565188/google-can-t-get-away-with-deleting-chats-judge-says>. To avoid similar problems in this case, Plaintiffs respectfully submit that the Court should adopt their proposed ESI Order rather than Google's.

**Preservation of Certain Categories of Documents (paragraphs II.3(h), (j), and (l)).**

Google seeks to destroy, at the outset of discovery, overbroad categories of data and information that may include relevant information. To move the case forward, Plaintiffs have agreed to not file any motions currently against Google, provided that Google' representations are memorialized, and it is understood that Plaintiffs objected and reserve their rights to later challenge any inappropriate destruction by Google. Plaintiffs note below where the Court's immediate intervention is needed now, and where the debate may be resumed at a later time.

The data and documents that Google seeks permission to destroy in subsections (h), (j), and (l) are relevant to Google products and services at issue in the case, such as Dynamic Allocation and Last Look. The interplay between Google's role as the moderator of online ad auctions via ad servers on the one hand, and as a participant in the same ad auctions on the

other, will be memorialized in, for instance, "internet histor[ies]", "server [and] network logs", and "log files", especially if Google engages in any self-preferencing within the fractions of a millisecond that winners and losers of ad auctions are decided. Google should be ordered to preserve these documents, not allowed to destroy them.

**Preservation of Ad Logs (paragraph II.3(k)).**

The dispute as to subsection (i) involves Google's refusal to agree to preserve ad log files. Ad log files contain detailed information about how an ad server selected which ad to serve to a particular reader in a particular ad space. For instance, they describe whether an ad was sold in a programmatic auction or served based on a deal negotiated directly between advertiser and publisher. When an ad is sold programmatically, ad log files preserve key details about the auction, including who won, who bid, and how much they bid. In a case about Google's abuse of its monopoly position to manipulate advertising auctions, ad log files will be critical to Plaintiffs' proof. Indeed, this Court already determined that Google's treatment of ad log files plausibly constitutes anticompetitive conduct. *In re Google Digital Advertising Antitrust Litig.*, 2022 WL 4226932 *34-35 (S.D.N.Y. Sept. 13, 2022) (holding the State Plaintiffs "plausibly allege[] that . . . Google's redaction of auction data" was anticompetitive).

Throughout negotiations, Google has refused to agree to preserve vast quantities of that highly relevant material. Google's initial proposal sought permission to destroy ad log files for any advertisements viewed outside of the United States. On November 10, 2022, counsel for Daily Mail told Google that Daily Mail's complaint seeks to recover damages to both its U.S. and non-U.S. properties caused by Google's anticompetitive conduct and that the Publisher Class's complaint alleges product markets encompassing countries outside the United States. Ads viewed in foreign countries are thus relevant to at least those complaints and Google's pre-motion to dismiss letter nowhere indicates that it seeks to dismiss allegations concerning non-U.S. advertisements. (Doc. 367.) On January 12, 2023, Google eventually agreed to a compromise proposed by Daily Mail: Google will preserve ad log files for ads viewed in the United States, U.K., Canada, Australia, Ireland and New Zealand.

The only dispute remaining concerns Google's potential destruction of ad log files for ads viewed in the remainder of the European Union. Plaintiffs have agreed not to challenge Google's failure to preserve these ad log files now, so long as the ESI protocol includes a footnote provision stating: "Google takes the position that EU ad log files are not relevant or necessary, and that it would be unduly burdensome for Google to preserve EU ad log files. Plaintiffs disagree and reserve all rights. Nevertheless, given Google's position, Google is precluded from taking any position whatsoever based on EU ad log files that it does not preserve or produce in this litigation." This provision is necessary to protect Plaintiffs from Google destroying these EU ad log files and then later making arguments about these files, or in any way criticizing Plaintiffs or their experts for not using these files. Such a result would obviously be unfair and prejudice Plaintiffs, and Google cannot justify its refusal to include such a provision.

Finally, Plaintiffs' proposal does not contain Google's proposed unnecessary footnote to this provision. Paragraph II.5, to which all parties agree, already states that preservation of materials is not a concession that "such material is discoverable." That necessarily means that Google's agreement to preserve foreign ad log files is not a concession that those files are relevant. *See* Fed. R. Civ. P. 26(b)(1) (only "relevant" material is discoverable). Nor is it necessary to state that the parties will meet and confer to identify ad log files that are "proportionate" to the needs of this case—the parties already agree that they will meet and confer about all Rule 34 requests. *See* Pls.' Proposal ¶ III.1; Google Proposal ¶ III.1.

**Encryption Keys (paragraph II.3).**

Google should not be allowed to "destroy or otherwise fail to preserve encryption keys, mapping tables, identifiers, or other data sources that are necessary to make relevant ESI and Documents useable for the purposes of this Action" and so Plaintiffs' Paragraph II.4 should be included. Google has provided no basis to allow it to destroy these relevant encryption keys, mapping tables, identifiers, or other data sources that are necessary to make relevant ESI, data and documents useable for the purposes of this Action. In fact, Google does not even dispute that this preservation may be necessary to allow other data and documents to be used.

With respects logs of calls made from cellular phones (paragraph II.2(d)), Plaintiffs have not accepted the change and have included proposed compromise language. Call logs, like chats and emails, may include evidence of relevant communications and should not be destroyed.

**COLLECTION AND REVIEW – SECTION III**

**De-duplication (paragraph III.5.**

The parties need to sort out technical aspects of de-duplication for the efficient Plaintiffs asked that Google confirm the method of deduplication that it will use prior to its migration to Source Hash. Google has informed Plaintiffs that it proposes to use the MD5 Hash value in combination with the Axcelerate calculated "RM_duplicate" hash value. Google proposes. We await Google's explanation of why it wants to use the RM_Duplicate hash value and how that differs from or supports the industry standard MD5 hash value. Only with that explanataion can we evaluate why simply using MD5 hash value for deduplication, which we believe is industry standard, would not be sufficient.

Plaintiffs have not yet heard from Google as respects the technical aspects of de-duplication ad have thus reverted to their proposed language.

**Email threading (paragraph III.6).**

Plaintiffs and Google previously agreed on the language included in Plaintiffs' proposed ESI Protocol concerning email threading. When Meta became involved in

negotiations, it added provisions that would allow email threading, meaning that a party may produce only "Last in Time" emails, and "need not produce earlier, less inclusive email messages or 'thread members.'"

Meta's eleventh-hour proposed change to Paragraph III.6 should be rejected. Nothing in Plaintiffs' proposal would prohibit any party from utilizing email threading to review its own documents prior to production—which can save time and resources. However, producing only "last in thread" emails deprives the recipient of necessary metadata that otherwise would allow the receiving party to search for emails sent to and from certain people during certain timeframes, because metadata for the earlier-in-time, included emails, is not produced with the latest-in-time email on the top of the strong. There is no additional burden and no prejudice to any party from reverting to the agreement between Google and Plaintiffs.

Moreover, the Court should not reward Meta's efforts to curb the data to which Plaintiffs will be entitled under the ESI Order while Meta simultaneously insists that it should not be subject to discovery at this time. (*See, e.g.*, Dkt. 429 (Letter from Meta); Dkt. 432 (Court noted that "no pleading against Meta has ever been before the Court for a ruling").) Meta's new proposed email threading language—which Google is now proposing to the Court despite Google's prior agreement with Plaintiffs not to produce threaded emails—risks the loss of important metadata and will make use of the documents unwieldy and inefficient. In order to help streamline depositions, expert and witness testimony, Plaintiffs request that the Court enter their proposed ESI Protocol.

**PRODUCTION FORMAT – SECTION IV**

Provided Plaintiffs' concerns regarding paragraph I.2 (above) are adequately addressed, Plaintiffs would be willing to accept Google's added language to paragraph IV.1.

**PRIVILEGE LOGS – SECTION V**

**Privilege Log Timelines and Method of Production (paragraph V.1).**

In accordance with Local Rule 26.2 and to ensure that discovery proceeds efficiently, Plaintiffs respectfully submit that (1) documents and accompanying privilege logs should be produced on a rolling basis; and (2) privilege logs should be produced 30 days following each production. The same rule relieves the parties of their obligation to submit privilege logs simultaneously with the production of documents and at the same time promotes efficiency by enabling timely privilege challenges that will not delay the litigation or impact depositions and expert reports. Yet Google refuses to agree to produce privilege logs on a rolling basis.

Local Rule 26.2 expressly requires that privilege logs be provided "at the time of the response to such discovery or disclosure, unless otherwise ordered by the Court." Local Rule 26.2; *see also* Fed. R. Civ. P. 26. The unjustifiable failure to timely provide a privilege log operates as a waiver of any applicable privilege. *See FG Hemisphere Assocs., L.L.C. v.*

*Republique Du Congo*, No. 01 Civ. 8700 (SAS)(HBP), 2005 WL 545218, at *6 (S.D.N.Y. Mar. 8, 2005) (collecting cases); *Brown v. Barnes & Noble, Inc.*, 474 F. Supp. 3d 637, 646–47 (S.D.N.Y. 2019), *aff'd*, No. 116CV07333MKVKHP, 2020 WL 5037573 (S.D.N.Y. Aug. 26, 2020). Respectfully, the local rule's requirement that privilege logs be provided "at the time of the response to such discovery or disclosure" presupposes that privilege logs are to be produced on a *rolling basis*, rather than "at the close of the four-month substantial completion deadline" as Google suggests.

At the December 2022 meet and confer, the parties discussed trying to agree to a mutually acceptable time limit and method for producing privilege logs. Plaintiffs made clear their position that privilege logs are to be produced on a *rolling basis*. Google's stated objection to rolling privilege logs was that it would incentivize Google to produce documents only at the end of the four-month period set forth by this Court. Google's suggestion that it will withhold responsive documents until just before the substantial completion deadline, apparently so that it can delay complying with its privilege log obligations, would condone a disfavored practice. As Magistrate Judge Parker aptly stated:

> This Court does not condone waiting on the production of a privilege log until the end of a rolling ESI production. Producing parties should provide a log with each production tranche and/or on a rolling basis. This allows the receiving party to timely raise issues about withheld documents. It also allows for the review of smaller subsets of documents and smaller in camera reviews (if necessary), allowing for early clarification of privilege issues. Such a process is fairer to the requesting party, more efficient, and less costly. Additionally, Rule 26 contemplates the supplementation of privilege logs throughout discovery.

*Brown*, 474 F. Supp. 3d at 647 (citation omitted).

We anticipate that the parties will work in good faith to provide documents over the course of the four-month substantial completion deadline, and Plaintiffs reserve the right to make any and all arguments concerning impact on the case of a single or multiple eleventh-hour productions. Plaintiffs' position is fair, reasonable and comports with the Local Rules whereas Google's proposal would impose needless delay and prevent prompt and efficient resolution of privilege disputes (which is particularly concerning given the overbreadth of Google's privilege claims already in this case). Delay in resolving privilege issues will, in turn, lead to delay as respects, *inter alia*, depositions and expert reports, which will be impacted by any privilege challenges. Plaintiffs' proposal presents the best compromise.

**Identification of Specific Attorneys (paragraph V.3(h)).**

Plaintiffs submit that privilege logs must include both the name of the attorney(s) and the legal organization who provided the legal advice at issue. This case involves matters as respects which attorneys have provided substantial business advice and this matter has already seen belated claims of privilege asserted and then withdrawn by Google when challenged by

Plaintiffs. Clarity on the basis for Google's privilege assertions is thus paramount. Defendant Google's inability to identify both the name of the attorney providing the legal advice and the organization that attorney works for undercuts a claim of privilege in the first instance. Moreover, Google's stated position that it would wait until the end of the four-month substantial completion period before producing documents (and thus privilege logs) demands precision in Google's privilege logs so that privilege challenges can be timely and efficiently made.

**Privilege Log Exemptions (paragraph V.8(g)).**

The nature of this proceeding as a Multidistrict Litigation necessitates that communications in furtherance of Plaintiffs' common interest privilege be the exempted from logging. As such, Plaintiffs request that "Documents sent solely between or among counsel for any Plaintiff (including such counsel's agent(s))" be excluded from any privilege log. While some reciprocal language may be appropriate as respects Defendants, any documents that could substantiate claims of collusion between Defendants, as asserted in some of the matters before the Court including the Network Bidding Agreement between Google and Meta, should not be exempted from logging.

The Court should require that privilege logs include an entry for each email withheld as privileged. *See United States v. Davita, Inc.*, 301 F.R.D. 676, 685 (N.D. Ga. 2014) ("The emerging majority view appears to be that individual emails within a string should be separately logged in some fashion."), *recon. granted on other grounds*, 2014 WL 11531065 (N.D. Ga. May 21, 2014); *BreathableBaby, LLC v. Crown Crafts, Inc.*, 2013 WL 3350594, at *8 (D. Minn. May 31, 2013) ("courts are moving in the direction of requiring litigants to log separately each e-mail in a string."), *rpt. and rec. adopted,* 2013 WL 3349999 (D. Minn. July 1, 2013). This is warranted because every email in a thread is "a separate communication, for which a privilege may or may not be applicable." *Baxter Healthcare Corp. v. Fresenius Med. Care Holdings, Inc.*, 2008 WL 4547190, at *1 (N.D. Cal. Oct. 10, 2008). *See also Davita, Inc.*, 301 F.R.D. at 685 ("A string of emails, after all, is not just a single communication. It reflects a series of different communications that, because of the way in which it was printed or maintained, happens to exist as one document."). The date, universe of authors and recipients, and subject matter may (and, experience shows, often will) vary from email to email within a thread, and so every communication in a thread should be logged to "accurately state how many separate communications are included in the withheld document, and who received which of those communications." *Davita*, 301 F.R.D. at 685.

Google's proposal to require logging of only the most recent email in a thread would improperly deny Plaintiffs the information needed to effectively assess and challenge privilege claims. For example, if the last email in a thread consisted of a party simply forwarding an email chain to counsel, logging only the last-in-time email as Google proposes would not capture or provide any information regarding any non-privileged communications that may have preceded that forwarding. "[T]he obvious and unavoidable byproduct of" Defendants' proposal "would be stealth claims of privilege which, by their very nature, could *never* be the

subject of a meaningful challenge by opposing counsel or actual scrutiny by a judge; this, in turn, would render Fed.R.Civ.P. 26(b)(5) a nullity." *In re Universal Serv. Fund Tel. Billing Pracs. Litig.*, 232 F.R.D. 669, 673 (D. Kan. 2005). Accordingly, the Court should adopt Plaintiffs' proposed language requiring logging of each withheld email.

**APPENDICIES**

**Meta Data Fields (Appendix D).**

Google eliminated Google-Drive-specific metadata fields from the list of metadata fields included in the Appendix, without explanation. During the meet-and-confer process, Google represented that it expects to produce documents exported from Google Drive files.

The Google-Drive-Specific metadata fields included in Plaintiffs' proposed ESI Protocol are known to be available through Google Drive, and other metadata may not be available. Where such metadata is available, its production entails virtually no additional burden. As the language preceding the metadata table makes clear, "[t]he parties are not obligated to populate manually any of the[se] fields." Google has never justified its refusal to include these metadata fields in the ESI Protocol, and their exclusion can only serve to deprive Plaintiffs of potentially relevant metadata that could be critical to making sense of Google's productions, including, for example, by searching those productions based on metadata to find documents that key employees authored or on which they collaborated.

**Presentations (Appendix H, I).**

It is Plaintiffs' position that Presentations (e.g., Powerpoint and other) need to be produced in native format. They are otherwise not searchable and often unreadable, with important links being undetectable. Notably, Google's suggested compromise that it "produce presentations in a readable .JPEG format together with a searchable text file" adds burden and unnecessary complexity, and risks omitting critical presenter comments and similar data. Plaintiffs maintain that these documents must be produced in native format.

As set forth in Sedona Principle 12: "The production of electronically stored information should be made in the form or forms in which it is ordinarily maintained or that is reasonably usable given the nature of the electronically stored information and the proportional needs of the case." *See The Sedona Principles*, Third Edition: Best Practices, Recommendations & Principles for Addressing Electronic Document Production, 19 Sedona Conf. J. 169 (2018); Comment 12.b. to the Sedona Principles makes clear that: "Ideally, the form or forms used for production of ESI should be agreed upon early. Absent agreement, ESI must be produced as ordinarily maintained or in a form or forms reasonably usable to the requesting party." *Id*. at 171-72 (Emphasis supplied).

Moreover, as the Sedona Principles point out, the 2006 Advisory Committee Note to Rule 34(b) indicates that "[i]f the responding party ordinarily maintains the information it is

producing in a way that makes it searchable by electronic means, the information should not be produced in a form that removes or significantly degrades this feature." *Id*. at 176. In short, Plaintiffs' position is correct.

**Linked Documents (Appendix J).**

Linked documents are critical in this matter, and the documents Google produced in this action frequently contain links to relevant information, which are inaccessible to Plaintiffs and missing from Google's production. During the meet and confer process surrounding this protocol, and in prior negotiations with the States preceding creation of this MDL, Google informed Plaintiffs that it has an automated tool for identifying links, at least in e-mails, and searching for and producing documents associated with those links. Thus, at least with respect to e-mails, the burden on Google is low to provide linked documents.

Google previously agreed to language that closely tracks the language in Plaintiffs' proposed ESI Protocol. However, when Meta became involved in the negotiations, both parties backtracked on Google's prior agreement to use its automated tool. Plaintiffs propose that the ESI Protocol include their proposed language in Appendix Section J, under which a party such as Google, which has access to an automated tool that will locate linked documents, use that tool, just as Google previously agreed to do months ago. Plaintiffs further request that any receiving party may make "reasonable and proportionate requests" for linked documents identified in any producing party's productions, including in documents produced by Meta, documents produced by Google that may not be capable of being searched via the automated tool, or in documents produced by Plaintiffs, should they include links to missing, relevant material. Google previously agreed to this provision as well.

**Databases, Data Sources, Logs, and Other Structured Data (Appendix L).**

Plaintiffs' technicians have informed that the review platform utilized by a number of the plaintiff groups does not support Parquet, and so Plaintiffs have requested that Google utilize other file types such as .xlms/.xls or .csv.

**Password-Protected, Encrypted, or Proprietary-Software Files (Appendix T).**

Google should be required to make "reasonable efforts" to break any encryption or password protection that would render responsive ESI unreviewable. A similar provision was included in the ESI order in *FTC v. Meta Platforms, Inc.*, the model order Google insisted the parties use as a basis for negotiation. *See* Stipulation and Order Regarding Discovery Procedure App'x 1, ¶ R, *F.T.C. v. Meta Platforms, Inc.*, No. 1:20-cv-03590 (D.D.C. Mar. 8, 2022), ECF No. 108. Without explanation, however, Google removed that provision from its initial proposed order. Plaintiffs have asked Google on multiple occasions to justify its proposed elimination of its obligation to provide Plaintiffs with reviewable forms of responsive ESI. Google has not done so. Google's current proposal improperly shifts the burden to Plaintiffs to request that Google *remove* encryption and password-protection and even then

Google will break that encryption only if it is "proportionate" to do so. Google's proposal will cause unnecessary further delay. Forcing Plaintiffs to come to Google each time they find an encrypted or password-protected document can be expected to lead to innumerable potential disputes.

Google's proposal to require plaintiffs to show that it is "proportionate" to break encryption or password-protection makes little sense for two reasons. First, if Google has produced the materials to Plaintiffs, it necessarily concedes that those materials are "proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1) (only materials proportional to the needs of the case are discoverable). Second, and in any event, plaintiffs would have no way to determine whether breaking encryption for a particular materials is "proportionate," because they will not be able to review the materials until the encryption is broken. Google should be obligated to produce relevant and responsive ESI in a form Plaintiffs can immediately review.

**CONCLUSION**

For the foregoing reasons, Plaintiffs respectfully request that the Court enter Plaintiffs' proposed ESI protocol.

Respectfully submitted,

| | |
|---|---|
| /s/ W. Mark Lanier | /s/ Ashley Keller |
| W. Mark Lanier | Ashley Keller |
| New York Bar No.: 4327284 | ack@kellerlenkner.com |
| Mark.Lanier@LanierLawFirm.com | Brooke Clason Smith |
| Alex J. Brown | brooke.smith@kellerlenkner.com |
| New York Bar No.: 4593604 | Jason A. Zweig |
| Alex.Brown@LanierLawFirm.com | New York Bar No.: 2960326 |
| Zeke DeRose III | jaz@kellerlenkner.com |
| Zeke.DeRose@LanierLawFirm.com | 150 N. Riverside Plaza, Suite 4270 |
| Tower 56 | Chicago, Illinois 60606 |
| 126 East 56th Street, 6th Floor | (312) 741-5220 |
| New York, NY 10022 | Zina Bash |
| (212) 421-2800 | zina.bash@kellerlenker.com |
| THE LANIER LAW FIRM, PLLC | 111 Congress Avenue, Suite 500 |
| | Austin, TX 78701 |
| | (512) 690-0990 |
| | KELLER LENKNER LLC |

*Counsel for Texas, Idaho, Louisiana (The Lanier Law Firm only), Mississippi, North Dakota, South Carolina, and South Dakota*

*Submitted on behalf of all Plaintiff States*

/s/ *Dena C. Sharp*

Dena C. Sharp (pro hac vice)
Jordan Elias (pro hac vice)
Scott M. Grzenczyk (pro hac vice)
**GIRARD SHARP LLP**
601 California Street, Suite 1400
San Francisco, CA 94108
Tel: (415) 981-4800
Fax: (415) 981-4846
dsharp@girardsharp.com
jelias@girardsharp.com
scottg@girardsharp.com

Tina Wolfson (TW-1016)
Theodore W. Maya (pro hac vice)
Bradley K. King (BK-1971)
**AHDOOT & WOLFSON, PC**
2600 West Olive Ave., Suite 500
Burbank, CA 91505
Tel.: (310) 474-9111
Fax: (310) 474-8585
twolfson@ahdootwolfson.com
tmaya@ahdootwolfson.com
bking@ahdootwolfson.com

*Interim Co-Lead Counsel for Advertiser Plaintiffs*

/s/ *John Thorne*

John Thorne
Daniel G. Bird
Bethan R. Jones
Christopher C. Goodnow
Mark P. Hirschboeck
Eliana Margo Pfeffer
Eric J. Maier
**KELLOGG, HANSEN, TODD, FIGEL &
  FREDERICK, P.L.L.C.**
1615 M Street NW, Suite 400
Washington, DC 20036
Tel: (202) 326-7900
Fax: (202) 326-7999
jthorne@kellogghansen.com
dbird@kellogghansen.com
cgoodnow@kellogghansen.com
bjones@kellogghansen.com
mhirschboeck@kellogghansen.com
epfeffer@kellogghansen.com
emaier@kellogghansen.com

Jeffrey A. Lamken
Caleb-Hayes-Deates
**MOLOLAMKEN LLP**
Tel: (202) 556-2000
Fax: (202) 556-2001
jlamken@mololamken.com
chayes-deats@mololamken.com

*Counsel for Associated Newspapers, Ltd. and Mail Media, Inc.*

/s/ *Caitlin G. Coslett*
Eric L. Cramer
ecramer@bm.net
Michael C. Dell'Angelo
mdellangelo@bm.net
Caitlin G. Coslett
ccoslett@bm.net

/s/ *Serina M. Vash*
Serina M. Vash
New York Bar No.: 2773448
svash@hermanjones.com
153 Central Avenue, # 131
Westfield, NJ 07090
(404) 504-6516

Patrick F. Madden
pmadden@bm.net
**BERGER MONTAGUE PC**
1818 Market St., Suite 3600
Philadelphia, PA 19103
Telephone: (215) 875-3000

Philip C. Korologos
pkorologos@bsfllp.com
Brianna S. Hills
bhills@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
55 Hudson Yards, 20th Floor
New York, NY 10001
Telephone: (212) 446-2300

David Boies
dboies@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
333 Main Street
Armonk, NY 10504
Telephone: (914) 749-8200

Jesse Panuccio
jpanuccio@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
1401 New York Avenue, NW
Washington, DC 20005
Telephone: (202) 895-7580

Mark C. Mao
mmao@bsfllp.com
Sean P. Rodriguez
srodriguez@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
44 Montgomery Street, 41st Floor
San Francisco, CA 94104
Telephone: (415) 293-6820

Sabria A. McElroy
smcelroy@bsfllp.com
**BOIES SCHILLER FLEXNER LLP**
401 E. Las Olas Blvd., Suite 1200
Fort Lauderdale, FL 33301

**HERMAN JONES LLP**

John C. Herman
jherman@hermanjones.com
3424 Peachtree Road, N.E., Suite 1650
Atlanta, GA 30326
(404) 504-6500
**HERMAN JONES LLP**

Paul T. Farrell, Jr.
paul@farrellfuller.com
Michael J. Fuller, Jr.
mike@farrellfuller.com
1311 Ponce De Leon, Suite 202
San Juan, PR 00907
(939) 293-8244
**FARRELL & FULLER, LLC**

/s/ Stuart A. Davidson
Paul J. Geller
pgeller@rgrdlaw.com
Stuart A. Davidson
sdavidson@rgrdlaw.com
Alexander C. Cohen
acohen@rgrdlaw.com
Maxwell H. Sawyer
msawyer@rgrdlaw.com
120 East Palmetto Park Road, Suite 500
Boca Raton, FL 33432
(561) 750-3000
**ROBBINS GELLER RUDMAN & DOWD LLP**

David W. Mitchell
davidm@rgrdlaw.com
Steven M. Jodlowski
sjodlowski@rgrdlaw.com
655 West Broadway, Suite 1900
San Diego, CA 92101
(619) 231-1058
**ROBBINS GELLER RUDMAN & DOWD LLP**

Robert P. Fitzsimmons

Telephone: (954) 377-4216

George A. Zelcs
gzelcs@koreintillery.com
Randall P. Ewing
rewing@koreintillery.com
Marc A. Wallenstein
mwallenstein@koreintillery.com
Ryan A. Cortazar
rcortazar@koreintillery.com
**KOREIN TILLERY LLC**
205 North Michigan Avenue, Suite 1950
Chicago, IL 60601
Tel.: (312) 641-9750
Fax: (312) 641-9751

Stephen M. Tillery
stillery@koreintillery.com
Michael E. Klenov
mklenov@koreintillery.com
Carol L. O'Keefe
cokeefe@koreintillery.com
**KOREIN TILLERY LLC**
505 North 7th Street, Suite 3600
St. Louis, MO 63101
Tel.: (314) 241-4844
Fax: (314) 241-3525

*Interim Co-Lead Counsel for the Publisher Class*

bob@fitzsimmonsfirm.com
Clayton J. Fitzsimmons
clayton@fitzsimmonsfirm.com
Mark A. Colantonio
mark@fitzsimmonsfirm.com
1609 Warwood Avenue
Wheeling, WV 26003
(304) 277-1700
**FITZSIMMONS LAW FIRM PLLC**

*Counsel for Direct Action Newspaper Plaintiffs AIM Media Indiana Operating, LLC, AIM Media Midwest Operating, LLC, AIM Media Texas Operating, LLC, Brown County Publishing Company, Inc. and Multi Media Channels, LLC, Clarksburg Publishing Company, d/b/a WV News, Coastal Point LLC, Eagle Printing Company, Ecent Corporation, Emmerich Newspapers, Incorporated, J.O. Emmerich & Associates, Inc., Delta Democrat Publishing Company, Commonwealth Publishing Company, Inc., Delta Press Publishing Company, Inc., Newton County Appeal Inc., Marion Publishing, Company, Yazoo Newspaper, Co., Inc., Sunland Publishing Company, Inc., Simpson Publishing Co., Inc., Montgomery Publishing Co., Inc., Franklinton Publishing Co., Inc., Charleston Publishing Co., Inc., Clarion Publishing Company, Inc., Scott Publishing, Inc., Clarke Publishing, Inc., Hattiesburg Publishing, Inc., Tallulah Publishing, Inc., Louisville Publishing, Inc., Kosciusko Star-Herald, Inc., Enterprise-Tocsin, Inc., Grenada Star, Inc., Tate Record Inc., Flag Publications, Inc., Gale Force Media, LLC, HD Media Company, LLC, Journal Inc., Robinson Communications, Inc., Something Extra Publishing, Inc., Rome News Media, LLC, Times Journal, Inc., Neighbor Newspapers, Inc., Savannah Publishing Co., Inc., Gould Enterprises, Inc., Union City Daily*

*Messenger, Inc., Weakley County Press, Inc., Southern Community Newspapers, Inc., Capital Region Independent Media LLC, and Appen Media Group*

CC: Counsel of Record