

Craig M. Reiser

Axinn, Veltrop & Harkrider LLP
630 5th Avenue
New York, NY 10111
212.728.2218
creiser@axinn.com

November 10, 2025

*Via ECF*

The Honorable P. Kevin Castel
United States District Judge
Southern District of New York
500 Pearl Street
New York, NY 10007

Re: *In re Google Digital Advertising Antitrust Litigation*, No. 1:21-md-03010 (PKC)
*Gannett Co., Inc. v. Google LLC, et al.*, No. 1:23-cv-05177 (PKC)
*Associated Newspapers Ltd., et al. v. Google LLC, et al.*, No. 1:21-cv-03446 (PKC)

Dear Judge Castel:

Pursuant to Your Honor's May 13, 2025 Order, ECF No. 990, Defendants Google LLC and Alphabet Inc. (together, "Google") respectfully renew their request for permission to move for summary judgment on all claims (Counts I-VII) in the Complaint filed by Plaintiff Gannett Co., Inc. ("Gannett"); and all claims (Counts I-VI) in the Complaint filed by Plaintiffs Associated Newspapers Ltd. and Mail Media, Inc. (together, "Daily Mail").[1] In connection with the summary judgment motion it seeks leave to file, Google requests that the Court set a schedule for Google to move to exclude the opinions of certain experts on whom Google expects Gannett and Daily Mail to rely to oppose summary judgment. There is no conference scheduled at this time.[2]

On October 27, 2025, this Court granted in part Gannett's and Daily Mail's motions for partial summary judgment on the basis of collateral estoppel. ECF No. 1219 ("Collateral Estoppel Order") at 32. In doing so, the Court expressly did not "relieve [Gannett's and Daily Mail's] burden of proving antitrust injury and damages," *id.*, and likewise did not consider (1) the merits of Gannett's and Daily Mail's allegations with respect to conduct not addressed by the liability opinion in *United States v. Google LLC*, 778 F. Supp. 3d 797 (E.D. Va. Apr. 17, 2025)

---

[1] Gannett's Second Amended Complaint, ECF No. 1197 (Sept. 29, 2025) is referred to herein as "Gannett Compl." Daily Mail's Third Amended Complaint, ECF No. 1196 (Sept. 29, 2025) is referred to herein as "Daily Mail Compl."

[2] Google will provide an unredacted version of this pre-motion letter to all parties and the Court under separate cover. Moreover, if the Court would like to review any of the supporting documentation cited herein, Google will provide any cited document upon request. Google has not filed supporting materials for this pre-motion letter on the public docket since they are protected by the Modified Confidentiality Order, ECF No. 685.

November 10, 2025
Page 2

(the "Virginia Case"); (2) issues related to Gannett's and Daily Mail's state law claims; and (3) issues related to the timeliness of Gannett's and Daily Mail's state and federal claims.

Although the Sherman Act claims in Gannett's and Daily Mail's Complaints describe "online display" advertising markets that also include "mobile applications" and "video" advertising,[3] this Court held that Google is precluded as to the Virginia Court's findings defining markets for "publisher ad servers for open-web display advertising" and "ad exchanges for open-web display advertising." Collateral Estoppel Order at 14, 17.

Relying on the markets defined by this Court, Google now seeks to move for summary judgment only as to those issues the Court did not resolve in the Collateral Estoppel Order. Gannett and Daily Mail each assert claims under Section 2 of the Sherman Act for monopolization of an alleged market for publisher ad servers (Count I) and monopolization and attempted monopolization of an alleged market for ad exchanges (Counts II-III).[4] Gannett's and Daily Mail's claims under Section 2 of the Sherman Act are premised in part on certain conduct addressed in the Court's Collateral Estoppel Order[5] as well as additional conduct that has not already been dismissed by the Court and was not addressed in this Court's Collateral Estoppel Order.[6] Gannett and Daily Mail each also assert claims for unlawful tying under Section 1 of the Sherman Act (Count IV).

As explained below, Google is entitled to summary judgment on Gannett's and Daily Mail's federal antitrust claims because:

- For each act that Gannett and Daily Mail challenge as part of their monopolization claims, Gannett and Daily Mail lack evidence supporting at least one of: (1) harm to competition; (2) antitrust injury; and (3) actual injury to Gannett and Daily Mail (Counts I-III);

- Gannett and Daily Mail offer no evidence to support a rational estimate of damages because: (1) for some conduct, there is no evidence to support a rational damages

---

[3] *See* Gannett Compl. ¶¶ 30, 70, 71, 83; Daily Mail Compl. ¶¶ 22, 55, 68.

[4] Gannett's and Daily Mail's Counts generally mirror one another, with two exceptions. First, only Gannett includes a Count VII for unjust enrichment. Second, Gannett's Count V asserts claims under N.Y. Gen. Bus. L. ("GBL") §§ 349-350, whereas Daily Mail's Count V is limited to claims under GBL § 349. Google's references to various "Counts" throughout this pre-motion letter refer to the similar (and identically numbered) Counts advanced by both Gannett and Daily Mail.

[5] The tying of AdX to DFP, Last Look, Dynamic Revenue Share ("DRS"), and Unified Pricing Rules ("UPR," and, together with the other conduct addressed in the Court's Collateral Estoppel Order, the "Virginia Conduct").

[6] Bernanke, Global Bernanke, Bell, Alchemist (together with Bernanke, Global Bernanke, and Bell, the "Google Ads Optimizations"), the restriction of Google Ads bids to AdX, Project Elmo, Project Poirot, the acquisitions of Admeld and DoubleClick, Enhanced Dynamic Allocation ("EDA"), the redaction of auction data, Minimum Bid to Win ("MBTW"), Dynamic Allocation, and, for Daily Mail, viewable CPMs and Line Item Caps (together, the "Non-Precluded Conduct").

estimate at all; (2) Prof. Hortacsu's damages calculations are unreliable and based on unsupported markets that are broader than those on which this Court granted collateral estoppel; and (3) the Foreign Trade Antitrust Improvements Act, 15 U.S.C. § 6a (the "FTAIA") bars Gannett's and Daily Mail's claims for foreign damages in any event (Counts I-IV).

Gannett also asserts state law claims for deceptive practices in violation of GBL §§ 349 & 350 (Count V), fraud (Count VI), and unjust enrichment (Count VII), and Daily Mail asserts state law claims for deceptive practices in violation of GBL § 349 (Count V) and fraud (Count VI).[7] Google is entitled to summary judgment on Gannett's and Daily Mail's state law claims because:

- The undisputed evidence of Gannett's and Daily Mail's sophistication precludes them from establishing justifiable reliance for their fraud claims and consumer-oriented conduct for their GBL claims (Counts V and VI);

- Gannett and Daily Mail offer no evidence of causation (Counts V and VI);

- The undisputed evidence demonstrates that Google's alleged conduct was not misleading (Counts V and VI); and

- Gannett's unjust enrichment claim is duplicative of its other deficient claims and otherwise fails because Gannett's relationship with Google was governed by contract and because Gannett offers no evidence of damages (Count VII).

In addition, Google is entitled to summary judgment on all of Gannett's and Daily Mail's claims premised on time-barred conduct. The undisputed evidence demonstrates that the limitations periods for much of the challenged conduct accrued—and the applicable statutes of limitation expired—before either Gannett or Daily Mail filed suit, and no exceptions save Gannett's and Daily Mail's untimely claims.

For these reasons and as set forth in greater detail below, the Court should enter judgment in Google's favor on each of Gannett's and Daily Mail's claims.

---

[7] On March 1, 2024, the Court dismissed certain of Gannett's and Daily Mail's federal claims. Google thereafter sought leave to seek dismissal of Gannett's and Daily Mail's (previously stayed) state law claims, and Gannett and Daily Mail sought leave to amend their state law claims in response. *See* ECF No. 728. The Court permitted the proposed amendments and "defer[red] briefing on any motion to dismiss [the state law claims] until the summary judgment stage." ECF No. 784.

I. **There Is No Evidence Establishing Gannett's And Daily Mail's Monopolization Or Attempted Monopolization Claims (Counts I-III)**

Google is entitled to summary judgment on Gannett's and Daily Mail's monopolization and attempted monopolization claims (Counts I-III) because each piece of challenged conduct[8] fails for one or more of the following reasons:

- For the Non-Precluded Conduct, Gannett and Daily Mail have no evidence demonstrating that Google acts had an "actual adverse effects on competition" through "reduced output, decreased quality, increased prices or the imposition of barriers to entry within the relevant market." *Amerisource Corp. v. RX USA Int'l, Inc.*, 2007 WL 2816193, at *4 (E.D.N.Y. Sept. 26, 2007).

- Gannett and Daily Mail have no evidence demonstrating that some challenged Google acts caused antitrust injury—i.e., that the acts caused Gannett and Daily Mail "to have suffered [an] injury in the market where competition is being restrained." *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d 151, 158 (2d Cir. 2016) (internal quotation and citation omitted); *see also Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977) (explaining that plaintiffs must prove "injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful").

- Gannett and Daily Mail have no evidence that some of the alleged acts, such as EDA, caused them actual injury. *See World Wrestling Ent., Inc. v. Jakks Pac., Inc.*, 425 F. Supp. 2d 484, 518 (S.D.N.Y. 2006), *aff'd*, 328 F. App'x 695 (2d Cir. 2009) (explaining that a private plaintiff must demonstrate "[a]n injury in fact . . . to plaintiffs' business or property").

A. **No Evidence Of Harm To Competition**

Gannett's and Daily Mail's monopolization and attempted monopolization claims fail for the Non-Precluded Conduct because there is no evidence that the conduct harmed competition. *See Cap. Imaging Assocs., P.C. v. Mohawk Valley Med. Assocs., Inc.*, 996 F.2d 537, 547 (2d Cir. 1993) (affirming grant of summary judgment for defendants because plaintiffs failed to show harm to competition). This is true for at least five reasons.

*First*, Gannett and Daily Mail have abandoned their claims regarding the alleged restriction of Google Ads bids to AdX, Project Elmo, the acquisitions of Admeld and DoubleClick, Dynamic Allocation, and viewable CPMs because they offer no expert opinion

---

[8] As this Court recently recognized, "each anticompetitive act must be separately scrutinized." Collateral Estoppel Order at 28; *see also City of Groton v. Conn. Light & Power*, 662 F.2d 921, 928-29 (2d Cir. 1981) (affirming partial summary judgment and "reject[ing] the notion that if there is a fraction of validity to each of the basic claims and the sum of the fractions is one or more, the plaintiffs have proved a violation of section 1 or section 2 of the Sherman Act"); *Eatoni Ergonomics, Inc. v. Rsch. in Motion Corp.*, 486 F. App'x 186, 191 (2d Cir. 2012) (similar).

November 10, 2025
Page 5

demonstrating that these acts independently harmed competition. *See, e.g., In re Payment Card Interchange Fee & Merch. Disc. Antitrust Litig.*, 729 F. Supp. 3d 298, 337 (E.D.N.Y. 2024) (granting summary judgment for defendant on debit monopolization claim where plaintiffs "have adduced no theory—let alone evidence—[of anticompetitive conduct]"); *Am. Banana Co. v. J. Bonafede Co.*, 407 F. App'x 520, 523-24 (2d Cir. 2010) (affirming summary judgment for defendant on monopolization claim due to, *inter alia*, inadequate expert economic evidence).[9]

*Second*, Professor Shengwu Li, who Gannett and Daily Mail offer as an expert on whether Google engaged in anticompetitive conduct, applies a flawed, circular methodology to assess Google's conduct. To determine whether Google's conduct amounts to competition on the merits, ███████████████████████.[10] This circular methodology cannot support a conclusion that the Non-Precluded Conduct conduct was anticompetitive.

*Third*, the only evidence of harm to competition proffered by Gannett and Daily Mail related to at least the redaction of auction data,[11] MBTW,[12] and Line Item Caps[13] demonstrates no or at most, *de minimis* impact on the ad exchange market. Evidence of a *de minimis* impact is insufficient to maintain monopolization and attempted monopolization claims premised on that conduct. *See Cap. Imaging Assocs.*, 996 F.2d at 546 (noting that the antitrust plaintiff must "bear the initial burden of demonstrating that the defendants' conduct or policy has had a *substantially* harmful effect on competition" (emphasis added)).

*Fourth*, Gannett and Daily Mail cannot show that the Google Ads Optimizations or Project Poirot harmed competition because they cannot establish that the Google tools containing these features had market power. In fact, Gannett and Daily Mail do not even attempt to define a market that includes DV360 or Google Ads, and they certainly do not attempt to show the market power of those products.[14] *See, e.g., Ohio v. Am. Express Co.*, 585 U.S. 529, 543 (2018) ("Without a definition of the market there is no way to measure the defendant's ability to lessen

---

[9] As to the acquisitions of Admeld and DoubleClick and conduct involving Google's advertiser tools, moreover, the Virginia Court already found in Google's favor. *See Google*, 778 F. Supp. 3d at 843, 859.

[10] Li Revised Report ¶ 13 ██████████████████████████████████████████████████

██████████████████ Li Dep. 121:10-122:2 ██████████████████ *id.* at 122:4-122:14 █████████████████████████████████████████
████████████████████ *id.* at 119:18-120:11.

[11] Li Reply ¶ 1147 ███████████████████████████████████████████████████████
█████████████████████████████████

[12] Li Reply ¶ 704 ████████████████████████████████████████████████████████.

[13] Li Reply ¶¶ 1119-22 ██████████████████████████████████████████████████
██████████████████████████████████████████

[14] Sibley Dep. 33:7-33:12, 68:7-68:15.

November 10, 2025
Page 6

or destroy competition."); *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d at 158 ("Generally, only those that are participants in the defendants' market can be said to have suffered antitrust injury."). The Court's Collateral Estoppel Order does not fill these holes in Gannett's and Daily Mail's proof. To the contrary, the Virginia Court already rejected an "open-web display advertising" market encompassing Google's buy-side tools. *Google*, 778 F. Supp. 3d at 842-43.

*Finally,* Gannett and Daily Mail cannot show harm to competition from Global Bernanke. Plaintiffs rely on Prof. Li to attempt to prove that Global Bernanke was exclusionary conduct.[15] Prof. Li opines ▮▮▮.[16] Yet, he ▮▮▮.[17]

### B. No Evidence Of Antitrust Injury

Gannett's and Daily Mail's monopolization and attempted monopolization claims also fail for several pieces of challenged conduct because Gannett and Daily Mail cannot show they have "suffered . . . injury in the market where competition is being restrained." *In re Aluminum Warehousing Antitrust Litig.*, 833 F.3d at 1658 (internal citation omitted); *see also In re Zinc Antitrust Litig.*, 155 F. Supp. 3d 337, 364 (S.D.N.Y. 2016) (explaining that for Section 2 claims, the plaintiff's injury must be in the market "in which defendants allegedly conspired to obtain, obtained, or came close to obtaining a monopoly").

As defined by this Court, the relevant product markets are "publisher ad servers for open-web display advertising" and "ad exchanges for open-web display advertising." Collateral Estoppel Order at 14, 17. Gannett and Daily Mail nonetheless seek to recover for harm occurring outside of those markets. For example, Daily Mail's claims premised on viewable CPM conduct relate only to mobile app advertising,[18] which is outside the "open-web" markets ruled on by this Court. *See* Collateral Estoppel Order at 14.

---

[15] Prof. Li ▮▮▮ 

[16] Li Revised Report ¶¶ 429, 469; Li Dep. 242:7-246:20.

[17] Specifically, Prof. Li ▮▮▮, Li Reply ¶ 427; Li Dep. 246:22-250:2, which defeats the collusion claim. *City of Pontiac Police & Fire Ret. Sys. v. BNP Paribas Sec. Corp.*, 92 F.4th 381, 401 (2d Cir. 2024) (dismissing "alleged auction conspiracy" due to failure to "demonstrate an agreement to conspire"). Prof. Li ▮▮▮, Li Revised Report ¶ 477; Li Dep. 296:22-297:7, and ▮▮▮, Li Dep. 287:18-288:3, 290:13-290:23, which defeats the predatory pricing claim. *Weyerhaeuser Co. v. Ross-Simmons Hardwood Lumber Co.*, 549 U.S. 312, 322 (2007) (predatory pricing claims "logically require firms to incur short-term losses" and involve "cut[ing] prices to drive [rivals] out of business").

[18] *See* Daily Mail Compl. § III.B.6.

November 10, 2025
Page 7

Many of the alleged harms for which Prof. Hortacsu calculates damages likewise fail the antitrust injury test because they are based on purported injury to sales occurring outside of the relevant markets. *See infra* at 9. For example, Prof. Hortacsu opines ████████████████ ████████████████████████████████████ which are neither in the "open-web" markets ruled on in Virginia that this Court accepted in its Collateral Estoppel Order ███ ███████████████████████████████████.

### C. No Evidence Of Actual Injury To Gannett Or Daily Mail

Gannett's and Daily Mail's monopolization and attempted monopolization claims additionally fail for several pieces of conduct because there is no evidence of injury in fact sufficient to confer antitrust standing. *See World Wrestling Ent.*, 425 F. Supp. 2d at 518 (listing injury in fact as an element of antitrust standing). For example, Gannett and Daily Mail cannot claim injury from several challenged auction features because Prof. Hortacsu concedes ███ ██████████████████████████████████████████████████████████████████████████[21] this is baseless speculation since Prof. Hortacsu ████████████████████████████████████ █████████████████████████████████████████████████████████████████████████████[22] Similarly, Gannett and Daily Mail cannot claim injury from EDA because Prof. Hortacsu █████████████████ ███████████████████████████████████████████████████████████████████████████ ████████████████████████████[24]

### II. There Is No Evidence Supporting Damages Related To Gannett's And Daily Mail's Federal Claims (Counts I-IV)

Google is independently entitled to summary judgment on all of Gannett's and Daily Mail's claims for damages in Counts I-IV. To recover an award of damages, Gannett and Daily Mail must supply a "rational basis" for calculating the amount of damages incurred. *SCM Corp. v. Xerox Corp.*, 645 F.2d 1195, 1197 (2d Cir. 1981) (affirming dismissal of claim for monetary damages where "'the jury (had not been) given a rational basis for approximating' the damages incurred" by plaintiff (internal citation omitted)); *In re Gen. Motors LLC Ignition Switch Litig.*, 407 F. Supp. 3d 212, 232, 240 (S.D.N.Y. 2019) (granting summary judgment on claims for

---

[19] Hortacsu Dep. 155:4-155:15.

[20] Sibley Dep. 33:13-33:15.

[21] Hortacsu Second Revised Reply ¶¶ 80, 89.

[22] Hortacsu Dep. 113:11-114:14; 119:4-122:19.

[23] Hortacsu Dep. 154:13-156:2, 168:10-171:8, 176:10-176:25 ████████████████ ████████████████████████████████████████████████████████████████████████

[24] ████████████████████████████████████████████████████████████████████████████ ███████████ *See* Chevalier Report ¶ 391.

damages where plaintiffs did not provide a "basis for a rational estimate of damages" (internal citation and quotations omitted)). They have not done so because:

- For some conduct, Gannett and Daily Mail do not offer any evidence supporting an estimate of damages;

- Gannett's and Daily Mail's claims for foreign damages are barred by the FTAIA;

- Prof. Hortacsu's analyses do not amount to competent evidence of damages because they are based on markets broader than those on which Gannett and Daily Mail were granted collateral estoppel; and

- Prof. Hortacsu's analyses are otherwise based on unreliable models.

### A. Gannett And Daily Mail Have Not Calculated Any Damages Attributable To Certain Conduct

Gannett and Daily Mail have abandoned damages claims for at least: the alleged restriction of Google Ads bids to AdX, the tying of AdX to DFP, Project Elmo, Project Poirot, the acquisitions of Admeld and DoubleClick, viewable CPMs, the redaction of auction data, MBTW, Dynamic Allocation, and Line Item Caps. Indeed, Gannett and Daily Mail have offered no expert evidence—and the record is devoid of any other evidence—that these alleged acts caused damages to Daily Mail and Gannett or, if they had, what those damages might be. *See New York v. Julius Nasso Concrete Corp.*, 202 F.3d 82, 89 (2d Cir. 2000) (recognizing that a plaintiff must "provide the court with some relevant data from which the district court can make a reasonable estimated calculation of the harm suffered"). This is enough for summary judgment in Google's favor.

### B. Gannett And Daily Mail Cannot Recover Foreign Damages

Google is also entitled to summary judgment on Gannett's and Daily Mail's claims for foreign damages underlying Counts I-IV. It is black letter law that conduct that occurs outside the United States is outside the reach of the Sherman Act, except where it either: (1) impacts U.S. "import commerce" or (2) has a "direct, substantial, and reasonably foreseeable effect" on U.S. commerce. *See F. Hoffmann-La Roche Ltd. v. Empagran S.A.*, 542 U.S. 155, 162 (2004) (The FTAIA "lays down a general rule placing *all (nonimport) activity involving foreign commerce* outside the Sherman Act's reach." (citing 15 U.S.C. § 6a and emphasis added)). Gannett and Daily Mail cannot satisfy either exception to the FTAIA because (1) there is no evidence that the foreign conduct of which they complain was directed at the U.S. import market, and (2) there is no evidence that any conduct allegedly impacting ███████████████ ███████████████████ had a "direct, substantial, and reasonably foreseeable effect" on domestic commerce. *See Biocad JSC v. F. Hoffmann-La Roche*, 942 F.3d 88, 94 (2d Cir. 2019).

The Court's ruling that relevant markets are "worldwide in scope" does not change this conclusion. Collateral Estoppel Order at 32. For example, after amending its Complaint to allege only worldwide markets, Daily Mail now specifically alleges that Google's conduct was foreign (the alleged monopolization of worldwide markets) and that such conduct had foreign effects.[25] Gannett and Daily Mail are also both simultaneously pursuing damages in the United Kingdom, further demonstrating that their antitrust claims are predicated on violations occurring outside the U.S. *See, e.g.*, ECF No. 1167-4 at 4. The FTAIA bars these kinds of claims arising from foreign injuries in foreign markets. *See Sullivan v. Barclays PLC*, 2017 WL 685570, at *21 (S.D.N.Y. Feb. 21, 2017) (Castel, J.) (a defendant's conduct must have "a reasonably proximate causal nexus to an antitrust injury *in the United States*" (emphasis added) (cleaned up)), *aff'd in part, rev'd in part on other grounds and remanded sub nom. Sullivan v. UBS AG*, 2025 WL 2423899 (2d Cir. Aug. 22, 2025); *In re Intel Corp. Microprocessor Antitrust Litig.*, 452 F. Supp. 2d 555, 556 (D. Del. 2006) (rejecting application of "domestic effects" exception where U.S. plaintiff alleged defendant was attempting to monopolize the worldwide market for microprocessor sales and alleged the conduct excluded U.S. competitors).

### C. Prof. Hortacsu's Damages Calculations Do Not Amount To Competent Evidence

All of Gannett's and Daily Mail's claims for damages underlying Counts I-IV should independently be dismissed because Prof. Hortacsu's damages calculations do not provide a basis for computing damages in the relevant markets defined by this Court. Although this Court held that the relevant product markets are "publisher ad servers for open-web display advertising" and "ad exchanges for open-web display advertising," Collateral Estoppel Order at 14, 17, Prof. Hortacsu's damages models include transactions expressly excluded from those markets, ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮[26] In other words, Gannett and Daily Mail offer no competent evidence of damages in the markets this Court has defined.

### D. Prof. Hortacsu's Damages Calculations Are Based On Unreliable Models

Finally, Gannett and Daily Mail have not put forth evidence sufficient to support a rational estimate of damages incurred as a result of certain challenged conduct (Google Ads Optimizations, EDA, Last Look, DRS, and UPR) because—as Google plans to argue in its related motion to exclude—that conduct is all analyzed under Prof. Hortacsu's unreliable and inadmissible damages models.

For example, 

---

[25] Daily Mail Compl. ¶¶ 61-62, 72-73, 88, 242-43, 249; *see also* Gannett Compl. ¶¶ 70, 83, 250-51, 258.

[26] Prof. Hortacsu ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Hortacsu Second Revised Report ¶¶ 1-2.

November 10, 2025
Page 10

████████████████████████████████████████████████████████████████████████.[28] There is thus no competent evidence of damages—and indeed of injury to Gannett and Daily Mail at all—arising from Prof. Hortacsu's ████████████████.

Prof. Hortacsu's ████████████████████ models similarly cannot support a rational estimate of damages because ████████████████████████████████. *See, e.g., Comcast Corp. v. Behrend*, 569 U.S. 27, 36 (2013) (reversing class certification when plaintiffs' "model failed to measure damages resulting from the particular antitrust injury on which petitioners' liability in this action is premised"). Prof. Hortacsu ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.[31] Similarly, Prof. Hortacsu ████████████████████████████████████████████████████████████████████████████.[32] Moreover, Prof. Hortacsu's ████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████.[33]

More broadly, Gannett and Daily Mail have not adduced evidence sufficient to support a reliable estimate of damages because Prof. Hortacsu ████████████████████████████████████████████████████████████████████████.[34] Prof. Hortacsu's ████████████████████████████████████

---

[27] Hortacsu Second Revised Reply ¶ 89 ████████████████████████████████████████████████████████████.

[28] Hortacsu Second Revised Reply ¶ 80; Hortacsu Second Revised Reply Figure 7; Hortacsu Dep. 111:3-112:9, 113:11-113:24, 119:4-122:19, 185:24-187:13.

[29] Hortacsu Dep. 17:24-19:12.

[30] Hortacsu Second Revised Reply ¶ 402 (citing Li Opening Report ¶¶ 385, 553, 585, 1274, 1303; Sibley Opening Report ¶ 438); *see also id.* ¶¶ 517-680 (████████████████████████████████████).

[31] Hortacsu Dep. 219:16-221:4.

[32] Hortacsu Dep. 218:3-218:18. ████████████████████████████████ *See* Hortacsu Second Revised Report Table 16.

[33] Sibley Dep. 33:7-12; Hortacsu Second Revised Report § VII.

[34] Specifically, Prof. Hortacsu estimated that, ████████████████████████████████████████████████████████████████████████████████████████████████████████████████

▬▬▬▬▬ underscores the invalidity of his antitrust damages models.

### III. There Is No Evidence Supporting Gannett's And Daily Mail's State Law Claims (Counts V-VII)

On March 15, 2024, Google sought leave to move to dismiss Gannett's and Daily Mail's state law claims. The Court declined that motion, choosing instead to defer briefing on any motion to dismiss until the summary judgment stage. Discovery has now confirmed why Gannett and Daily Mail could not adequately plead their state law claims: there is no evidence of several essential elements of those claims.

Gannett and Daily Mail bear the burden of demonstrating "clear and convincing" evidence of fraud. *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Secs., LLC*, 13 F.4th 247, 259-60 (2d Cir. 2021). Yet, they never alleged—much less can point to evidence of—three of fraud's elements: (1) causation; (2) the existence of material misrepresentations or omissions of fact; and (3) reasonable reliance. *See Fin Guar. Ins. v. Putnam Advisory Co.*, 783 F.3d 395, 402 (2d Cir. 2015) (listing elements of a common law fraud claim). Gannett and Daily Mail similarly lack evidence to support certain required elements of the GBL claims they failed to allege: (1) causation, (2) consumer-oriented conduct, and (3) materially misleading conduct. *See Daniel v. Mondelez Int'l, Inc.*, 287 F. Supp. 3d 177, 186 (E.D.N.Y. 2018) (listing the required elements for claims under GBL §§ 349-350).

Finally, Gannett cannot pursue its unjust enrichment claim because it is duplicative of Gannett's other claims. *See Carovillano v. Sirius XM Radio Inc.*, 715 F. Supp. 3d 562, 586–87 (S.D.N.Y. 2024) (dismissing unjust enrichment claim as "merely duplicative" of GBL claims).

The Court's Collateral Estoppel Order has no bearing on Gannett's and Daily Mail's state law claims. Even assuming that Gannett and Daily Mail can prove the additional elements required of them for their federal claims that this Court has yet to resolve (and they cannot), the Court's finding that certain conduct was anticompetitive under the antitrust laws does not inform whether that conduct amounted to, for example, material misrepresentations or omissions of fact or materially misleading conduct. *See, e.g.*, *Plum Tree, Inc. v. N. K. Winston Corp.*, 351 F. Supp. 80, 88 (S.D.N.Y. 1972) (allowing Sherman Act claim to go forward but dismissing fraud and contract claims based on same allegations). Similarly, the Court's conclusion that the relevant antitrust markets are worldwide does not impact the scope of damages recoverable for Gannett's and Daily Mail's state law claims.

---

▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬▬

### A. No Evidence Of Reliance Or Consumer-Oriented Conduct (Counts V & VI)

Gannett's and Daily Mail's fraud claims require a showing that their reliance on Google's alleged misrepresentations "was justifiable, both in the sense that [Gannett and Daily Mail were] justified in believing the representation[s] and that [they were] justified in acting upon [them]." *Century Pac., Inc. v. Hilton Hotels Corp.*, 528 F. Supp. 2d 206, 228 (S.D.N.Y. 2007), *aff'd*, 354 F. App'x 496 (2d Cir. 2009) (internal quotations and citation omitted). Gannett's and Daily Mail's GBL claims require a showing that Google's alleged conduct was "consumer oriented," meaning that it had "a broader impact on consumers at large." *Exxonmobil Inter-Am., Inc. v. Advanced Info. Eng'g Servs., Inc.*, 328 F. Supp. 2d 443, 447 (S.D.N.Y. 2004).

Gannett and Daily Mail cannot make either showing because they are sophisticated parties who leveraged their sophistication to customize their relationship with Google in their sale of advertising inventory. The record demonstrates not only Gannett's and Daily Mail's sophistication in terms of their size and reach, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████[36] Accordingly, Gannett and Daily Mail cannot demonstrate that they justifiably relied on any alleged misrepresentations by Google for purposes of their fraud claims, nor can they establish that the conduct about which they complain was consumer oriented for purposes of their GBL claims. *See Grumman Allied Indus. v. Rohr Indus., Inc.*, 748 F.2d 729, 737 (2d Cir. 1984) ("New York courts are particularly disinclined to entertain claims of justifiable reliance" for fraud "[w]here sophisticated businessmen engaged in major transactions enjoy access to critical information but fail to take advantage of that access."); *Exxonmobil*, 328 F. Supp. 2d at 449 (explaining that GBL § 349 does not apply to transactions between "relatively sophisticated parties with equal bargaining power" because those transactions are generally not consumer oriented).

### B. No Evidence Of Causation (Counts V & VI)

Causation is a required element of both GBL and fraud claims, and there is no evidence demonstrating that any alleged deceptive act or practice caused Gannett's and Daily Mail's alleged harm. *See Bennett v. U.S. Trust Co. of N.Y.*, 770 F.2d 308, 316 (2d. Cir 1985) ("The absence of adequate causation is . . . fatal to a common law fraud claim under New York law."); *Marshall v. Hyundai Motor Am.*, 334 F.R.D. 36, 59 (S.D.N.Y. 2019) ("Under GBL § 349, a plaintiff must show that he or she was injured as a result of the defendant's deceptive acts or

---

[35] *See, e.g.*, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[36] *See, e.g.*, ███████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

practices.").

There is no expert or factual evidence supporting the required element of causation for the conduct Prof. Hortacsu analyzes, let alone for conduct he does not address at all. Prof. Hortacsu ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[37] Moreover, Prof. Hortacsu ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮.[38] Not only do Gannett and Daily Mail fail to provide evidence of causation writ large, but they especially fail to provide evidence demonstrating that Google's alleged conduct caused damages incurred on their sales outside of the United States. Moreover, they provide no legal basis to recover purported non-U.S. damages. Finally, Gannett and Daily Mail representatives ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ *See infra*, III.C. These gaps are fatal to Gannett's and Daily Mail's fraud and GBL claims. *See, e.g., Weiner v. Snapple Bev. Corp.*, 2010 WL 3119452, at *6 (S.D.N.Y. Aug. 5, 2010) (explaining that "[o]nly by showing that plaintiffs in fact paid more for Snapple beverages as a result of Snapple's 'All Natural' labeling can plaintiffs establish the requisite elements of causation and actual injury under [GBL] § 349").

### C. No Evidence That Google Made Material Misrepresentations To Gannett Or Daily Mail (Counts V & VI)

Moreover, the undisputed evidence demonstrates that Google did not make material misrepresentations or omissions of fact as required for Gannett's and Daily Mail's fraud and GBL claims. Indeed, Daily Mail ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

---

[37] *See, e.g.*, Hortacsu Dep. 140:12-140:14, 146:9-146:12, 147:17-147:19. In addition, Gannett and Daily Mail are not entitled to pursue claims pertaining to Alchemist. As this Court has explained, a party's complaint is "an authoritative source of the party's claim in this action." Collateral Estoppel Order at 29. Yet, despite having now had multiple opportunities for amendment even after fact discovery concluded, Gannett and Daily Mail nowhere assert any claims relating to Alchemist. *See In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2012 WL 6708866, at *5 (N.D. Cal. Dec. 26, 2012) (granting motion for partial summary judgment because "identification of these entities as co-conspirators for the first time in expert reports served after the close of discovery is prejudicial to defendants"), *aff'd*, 637 F. App'x 981 (9th Cir. 2016).

[38] *See, e.g.*, Hortacsu Second Revised Reply Table Summation 8-9.

███████████[39] and the Gannett individual ████████████████████████████████████████[40]

Statements that are true when made, statements that are predictive in nature, and statements that are merely advertising puffery cannot support either fraud or GBL claims.[41] Yet these kinds of statements are at the heart of Gannett's and Daily Mail's Complaints. For example, Gannett and Daily Mail each appear to pursue fraud and GBL claims related to conduct, such as statements about AMP, that the Court has already determined amounts to "little more than a sales pitch or boast" in the context of Gannett's and Daily Mail's federal antitrust allegations. ECF No. 701 at 55. As another example, Google's alleged statements that Exchange Bidding would ██████████████████████████████████████████████[42] likewise closely resemble the type of marketing puffery courts have found inactionable. *See, e.g.*, *In re Scotts EZ Seed Litig.*, 2013 WL 2303727, at *7, 11 (S.D.N.Y. 2013) (defendant's representations that its seed products were "Drought tolerant," would "Grow[ ] Anywhere," and would "Make the Most of Every Drop" were non-actionable puffery).

To the extent Gannett's and Daily Mail's claims are based on Google's alleged omissions, many of those alleged omissions likewise do not rise to the level of materiality required to sustain GBL and fraud claims because the undisputed evidence demonstrates that the allegedly omitted information—like DRS and how it operated—was in fact disclosed, or could have been discovered through means available to sophisticated publishers like Gannett and Daily Mail.[43] *See, e.g.*, *Serrano v. Cablevision Systems Corp.*, 863 F.Supp.2d 157, 167 (E.D.N.Y. 2012) ("Dismissal of [GBL] claims is appropriate when the business practice at issue was fully

---



[39] ████████████████████████████████████████

[40] ████████████████████████████████████████ *see also id.* 206:1-207:19.

[41] *See, e.g.*, *Gomez-Jimenez v. New York Law School*, 103 A.D.13, 16-18 (N.Y. App. Div. 2012) (dismissing common law fraud claims and GBL claims because the defendants' statement was not actually false or misleading); *Serrano v. Cablevision Sys. Corp.*, 863 F.Supp.2d 157, 167-69 (E.D.N.Y. 2012) (granting defendant's motion for summary judgment on GBL and fraud claims because statements that defendant offered "High Speed Internet," "Faster Internet," and "blazing fast speed" were puffery); *People by James v. PepsiCo, Inc.*, 222 N.Y.S.3d 907, 916-17 (Sup. Ct. N.Y. Oct. 31, 2024) (dismissing GBL claims because "a representation or a prediction of something which is hoped or expected to occur in the future is not a misrepresentation of fact.").

[42] Hortacsu Second Revised Report ¶ 837 (citing Google sources).

[43] *See, e.g.*, ████████████████████████████████████████

disclosed to the plaintiff."); *Colangelo v. Champion Petfoods USA, Inc.*, 2022 WL 991518, at *27 (N.D.N.Y. 2022) (finding GBL claims fail because the omitted fact "was information that Plaintiff could reasonably obtain" through ordinary diligence and attention).

    **D. Gannett's Unjust Enrichment Claim Fails As A Matter of Law (Gannett Count VII)**

Google is entitled to summary judgment on Gannett's unjust enrichment claim (Count VII) for at least three reasons. First, the claim "must be dismissed as duplicative" of Gannett's common law fraud and GBL claims, which are (i) premised on the same alleged facts, (ii) arose from an identical course of conduct, and (iii) would be proven using the same evidence. *In re Namenda Indirect Purchaser Antitrust Litig.*, 2021 WL 2403727, at *38 (S.D.N.Y. June 11, 2021) (internal quotation omitted). Second, Gannett's Complaint and the undisputed evidence demonstrate that Google's conduct related to AdX/DFP features was governed by contract,[44] which prohibits Gannett's unjust enrichment claim as a matter of law. *Cornhusker Farms, Inc. v. Hunts Point Co-op. Market, Inc.*, 2 A.D.3d 201, 206 (N.Y. Sup. Ct. 2003) ("[T]he existence of a valid and enforceable written contract precludes recovery on a theory of unjust enrichment."). Third, Gannett offers no evidence of damages related to its unjust enrichment claim.[45]

**IV. The Court Should Grant Summary Judgment On All Of Gannett's And Daily Mail's Claims Premised On Time-Barred Conduct (All Counts)**

Google is entitled to summary judgment on all claims that are premised on time-barred conduct, including for Gannett's and Daily Mail's federal claims premised on the Virginia Conduct. *Fitzgerald v. A. L. Burbank & Co.*, 451 F.2d 670, 683 (2d Cir. 1971) (explaining that even if a party has a valid claim—which is not the case for Gannett and Daily Mail—they can be "time-barred from asserting it"). For Gannett's and Daily Mail's federal antitrust claims, as pled, this means that Google is entitled to summary judgment for all claims that are based on conduct occurring before April 20, 2017 for Daily Mail and before June 20, 2019 for Gannett.[46] *See* 15

---

[44] *See, e.g.*, Gannett Compl. ¶¶ 135-37, 199-200; ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

[45] Hortacsu Dep. 135:13-135:20. Indeed, Gannett offers no expert evidence at all related to its unjust enrichment claim.

[46] *See* Case No. 21-03446, ECF No. 1 (Apr. 20, 2021); Case No. 23-05177, ECF No. 1 (June 20, 2023). The only possible exception would be under the *American Pipe* doctrine for conduct that was sufficiently alleged in prior class complaints to put Google on notice of claims against it. The *American Pipe* doctrine stands for the proposition that the limitations period for claims of a putative class member are tolled by the filing of a class action complaint that asserted the same claims. *See In re WorldCom Sec. Litig.*, 496 F.3d 245, 255 (2d Cir. 2007) ("[T]he initiation of a class action puts the defendants on notice of the claims against them," and "[a] defendant is no less on notice when putative class members file individual suits[.]"). Because the first putative publisher class complaint was filed in December 2020, the *American Pipe* doctrine would only toll the statute of limitations for conduct occurring after December 2016.

U.S.C. § 15b (explaining that federal antitrust claims are barred "unless commenced within four years after the cause of action accrued"); *Zenith Radio Corp. v. Hazeltine Research, Inc.*, 401 U.S. 321, 338 (1971) (explaining that accrual occurs "when the defendant commits an act that injures a plaintiff's business"). Similarly, under New York law,[47] Gannett's and Daily Mail's GBL claims are untimely to the extent they are premised on conduct occurring three years before each entity filed suit, their fraud claims are untimely to the extent they are based on conduct occurring six years before each entity filed suit, and Gannett's unjust enrichment claim is untimely to the extent it is based on conduct occurring six years before Gannett filed suit.

The record demonstrates that conduct underlying Gannett's and Daily Mail's claims is so stale that it accrued—and the applicable statutes of limitation expired—years before that conduct was challenged by Gannett or Daily Mail (or by any member of a purported publisher class). For example, the record demonstrates (and Gannett's and Daily Mail's operative complaints concede[48]) that claims related to the first two versions of DRS accrued no later than DRS's public launch in the summer of 2016.[49] Accordingly, the four-year statute of limitations on conduct related to the first two versions of DRS ran by the summer of 2020—approximately six months before the filing of any putative class action,[50] ten months before Daily Mail brought suit, and three years before Gannett brought suit. The analysis is similar for other conduct underlying Gannett's and Daily Mail's claims, including for, among other things, the alleged tie between AdX real-time bids and DFP: indeed, Gannett ██████████████████████████████████████████████████████████████████████████,[51]

---

[47] Because Daily Mail entity Mail Media, Inc. is a New York resident, New York statutes of limitation apply to its claims. *Robb Evans & Assocs. LLC v. Sun Am. Life Ins.*, 2012 WL 488257, at *2 (S.D.N.Y. Feb. 14, 2012) ("A federal court considering state law claims under supplemental jurisdiction applies the choice of law principles of the forum state. Under New York State law, if the plaintiff is a resident of New York or the cause of action accrued in New York, the New York State statute of limitations applies."). New York statutes of limitation may also apply to the claims brought by Associated Newspapers Ltd. and Gannett Co., Inc., but because those entities are non-New York residents, New York's borrowing statute operates to apply other applicable limitations periods to the extent those periods would be shorter than the periods available under New York law. *See Barza Dev. Corp. v. Meister Seelig & Fein LLP*, 2018 WL 2356664, at *3 (S.D.N.Y. May 10, 2018) (Castel, J.) (explaining that under the New York borrowing statute, "when a nonresident plaintiff sues upon a cause of action that arose outside of New York, the court must apply the shorter limitations period, including all relevant tolling provisions, of either: (1) New York; or (2) the state where the cause of action accrued.").

[48] Gannett Compl. ¶ 182 (alleging that "Google finally announced Dynamic Revenue Share publicly in 2016"); Daily Mail Compl. ¶ 151 (same).

[49] ██████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████████

[50] And in any event, allegations related to DRS were not raised in a putative publisher class complaint until December 5, 2022. Publisher Plaintiffs' Am. Consol. Class Action Compl. ¶¶ 24, 286-94, Case No. 21-03010, ECF No. 408 (Dec. 5, 2022).

[51] ██████████████████████████████████████

which took place over *17 years* ago. No exceptions save Gannett's and Daily Mail's untimely claims.[52]

\* \* \*

For all of these reasons, Google respectfully requests permission to file (1) a single motion for summary judgment on Counts I-VII of Gannett's Second Amended Complaint and Counts I-VI of Daily Mail's Third Amended Complaint and (2) related motions to exclude applicable expert opinions, including those of Prof. Ali Hortacsu. If the Court grants leave for Google to file its motion for summary judgment, Google proposes that it be allowed to file the motion on January 23, 2026; that Gannett and Daily Mail respond 60 days later on March 24, 2026; and that Google reply 30 days after that on April 23, 2026. Google requests that Google be permitted 60 pages for its opening summary judgment brief, Gannett and Daily Mail be permitted 60 pages for a joint response brief, and Google be permitted 30 pages for any reply brief. As described above, Gannett and Daily Mail challenge a host of Google conduct, and all of their claims—including the state law claims that have been deferred to the summary judgment stage, *see* ECF No. 784—suffer from multiple flaws. Additional pages will be needed to ensure that the Court receives the most helpful and complete presentation of the arguments.

For Google's motion to exclude, Google proposes that it be allowed to file the motion on April 7, 2026; that Gannett and Daily Mail respond 30 days later on May 7, 2026; and that Google reply 30 days after that on June 5, 2026.

Dated: November 10, 2025

Respectfully submitted,

*/s/ Craig M. Reiser*
Craig M. Reiser
Denise Plunkett
Eva Yung
Christopher Erickson
AXINN, VELTROP & HARKRIDER LLP
630 Fifth Avenue, 33rd Floor
New York, New York 10111
Telephone: (212) 728-2200
Email: creiser@axinn.com
dplunkett@axinn.com
eyung@axinn.com
cerickson@axinn.com

---

[52] Relatedly, Google is entitled to summary judgment on all Counts with respect to Gannett's and Daily Mail's claims for injunctive relief regarding conduct that has ceased. *See, e.g., Zenith*, 395 U.S. at 130 (requiring for injunctive relief a demonstration of "a significant threat of injury from an impending violation of the antitrust laws or from a contemporary violation likely to continue or recur"); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220, 239 (2d Cir. 2016) (explaining that past injuries "do not confer standing to seek injunctive relief").

November 10, 2025
Page 18

                              Bradley D. Justus
AXINN, VELTROP & HARKRIDER LLP
1901 L Street, NW
Washington, DC 20036
Telephone: (202) 469-3532
Email: bjustus@axinn.com

Daniel S. Bitton
AXINN, VELTROP & HARKRIDER LLP
55 Second Street
San Francisco, CA 94105
Telephone: (415) 490-1486
Email: dbitton@axinn.com

Caroline P. Boisvert
AXINN, VELTROP & HARKRIDER LLP
90 State House Square
Hartford, CT 06103
Telephone: (860) 275-8129
Email: cboisvert@axinn.com

*/s/ Justina K. Sessions*
Justina K. Sessions**
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94063
Telephone: 650-618-9250
Email: justina.sessions@freshfields.com

Counsel for Defendants Google LLC and Alphabet Inc.
**Except as to *Associated Newspapers Ltd., et al. v. Google LLC*, No. 1:21-cv-03446 (PKC)

CC: All Counsel of Record (via ECF)