UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| **IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION** | No. 1:21-md-3010 (PKC) |
| *This Document Relates To:* | |
| **ASSOCIATED NEWSPAPERS LTD.,** *et al.* **v. GOOGLE LLC,** *et al.* | No. 1:21-cv-03446 (PKC) |
| **GANNETT CO., INC. v. GOOGLE LLC,** *et al.* | No. 1:23-cv-05177 (PKC) |

**DEFENDANTS GOOGLE LLC AND ALPHABET INC.'S MEMORANDUM OF LAW IN OPPOSITION TO PLAINTIFFS DAILY MAIL AND GANNETT'S MOTION FOR <u>PARTIAL SUMMARY JUDGMENT ON GOOGLE'S AFFIRMATIVE DEFENSES</u>**

**TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................................. 1

ARGUMENT .................................................................................................................................. 2

I.    The Court Should Deny Summary Judgment On Google's Failure To Mitigate Defense ..... 2

    A.    Daily Mail's Content Issues Caused Revenue Loss ............................................................ 3

    B.    Gannett's Mismanagement Caused Revenue Loss ............................................................. 5

    C.    Plaintiffs Could Have Mitigated Alleged Damages By Turning
         Off Or Limiting Exposure To Challenged Google Products Or Features ........................... 7

CONCLUSION ............................................................................................................................. 11

# **TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*APL Co. PTE v. Blue Water Shipping U.S. Inc.*,
   592 F.3d 108 (2d Cir. 2010) ..................................................................................................10

*DeMario v. Panebianco's Estate*,
   85 A.D.2d 771 (N.Y. App. Div. 1981) ....................................................................................3

*Drummond v. Morgan Stanley & Co.*,
   1996 WL 631723 (S.D.N.Y. Oct. 31, 1996) ............................................................................7

*Int'l Cards Co., Ltd. v. MasterCard Int'l Inc.*,
   2016 WL 7009016 (S.D.N.Y. Nov. 29, 2016) .......................................................................11

*LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*,
   72 A.D.3d 409 (N.Y. App. Div. 2010) ....................................................................................7

*Massaro v. Rockland Fuel Oil Corp.*,
   218 A.D.3d 458 (N.Y. App. Div. 2023) ..................................................................................9

*Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*,
   2015 WL 14019139 (S.D.N.Y. Dec. 4, 2015) .........................................................................9

*Securitron Magnalock Corp. v. Schnabolk*,
   65 F.3d 256 (2d Cir. 1995) ......................................................................................................4

*Teva Pharms. USA, Inc. v. Sandoz, Inc.*,
   749 F. Supp. 2d 130 (S.D.N.Y. 2010) .....................................................................................7

*In re Visa Check/Mastermoney Antitrust Litigation*,
   2003 WL 1712568 (E.D.N.Y. Apr. 1, 2003) .........................................................................10

**PRELIMINARY STATEMENT**

Technological developments and new forms of media have dramatically changed how and where people find, consume, and share information. ██████████████████████████████████████████████████████████████████████████████████████████████████████.[1]

Plaintiffs' failure to rise to the moment and pivot their business models from their historical print newspapers to the new, internet-driven digital era has sent them in search of a scapegoat for their own mismanagement. They found that scapegoat in Google, who has for years partnered with publishers to help them monetize their content in a constantly evolving industry. More than four years into their respective lawsuits—and as will be shown in Google's forthcoming motion for summary judgment—the record demonstrates that Plaintiffs' losses are of their own making and that there is no evidence to support multiple essential elements of their federal and state law claims.

The fact that Daily Mail and Gannett have no claims to be tried ends the need to evaluate the sufficiency of Google's defenses to those deficient claims. But these same reasons likewise demonstrate why Plaintiffs are not entitled to summary judgment on Google's failure to mitigate defense. There is a genuine dispute of material fact on Google's failure to mitigate defense because the evidence demonstrates that Plaintiffs are sophisticated players in the digital advertising industry who failed to avail themselves of numerous avenues to mitigate their claimed damages. For example, ███████████████████████████████████████████████████████████████████████████████████, Daily Mail could have changed its content policies. And ████████████████████████████████████████████████████████████████████████████████████

---

[1] Plaintiffs Associated Newspapers Ltd. and Mail Media, Inc. are referred to collectively as "Daily Mail." Plaintiff Gannett Co, Inc. is referred to as "Gannett." Daily Mail and Gannett are referred to collectively as "Plaintiffs."

███████████, Gannett could have addressed the gross mismanagement of its digital advertising business by correcting its inventory offering errors. Moreover, Plaintiffs both could have taken a host of conduct-specific mitigation steps ranging from turning off AdX to reconfiguring DFP in other ways.

Plaintiffs' motion does nothing to advance their deficient claims or narrow the issues for trial. Instead, and despite this Court's admonition that their motion would "likely [] turn on material facts that are disputed," ECF No. 1248 ¶ 7, Plaintiffs have advanced a doomed effort to prevent the factfinder from hearing Google's failure to mitigate defenses. Plaintiffs' motion for partial summary judgment concerning Google's failure to mitigate defenses should be denied.

To avoid unnecessary litigation, Google is withdrawing its unclean hands affirmative defense. Nonetheless ███████████████████████████████████████████████████████████████████████████████████████████████, see, e.g., GANNETT_GOOG_0321812, DM_GOOG_0259833, ███████ ███████████████████████████.

## ARGUMENT

### I. The Court Should Deny Summary Judgment On Google's Failure To Mitigate Defense

Plaintiffs argue that the Court should enter judgment in their favor on Google's failure to mitigate defense, claiming that the Court's collateral estoppel ruling somehow bears on the issue and that Google failed to present evidence of the quantum of mitigation. *See* Plaintiffs' Memo. of Law, ECF No. 1257 ("Pltfs' Br.") at 11. Plaintiffs are mistaken.

Contrary to Plaintiffs' contention that turning off AdX is the only ground on which Google asserts they could have mitigated damages, the evidence demonstrates that Plaintiffs could have mitigated their purported damages in myriad other ways. Specifically, there is

2

evidence from which a reasonable jury could conclude that (1) Daily Mail could have mitigated its damages by addressing its pervasive content issues, (2) Gannett could have mitigated its damages by reining in its rampant mismanagement, and (3) both Plaintiffs could have mitigated damages by making other reasonable adjustments in DFP.

Accordingly, Plaintiffs' motion for summary judgment should be denied.

### A. Daily Mail's Content Issues Caused Revenue Loss

There are disputed issues of material fact because there is evidence demonstrating that Daily Mail could have mitigated revenue losses by addressing the harm to its revenue arising from ███████████████████ content on its web properties. *DeMario v. Panebianco's Estate*, 85 A.D.2d 771, 771 (N.Y. App. Div. 1981) (affirming reduction in damages due to failure to mitigate where "plaintiffs could have reduced their loss by adopting measures" and did not).



███████ DM_GOOG_0461720 at -742 (Ex. 13)██

███████ DM_GOOG_0461761 at -771 (Ex. 14)██

███ *id.* at -775. And Daily Mail's Chief Digital Officer testified, both in his personal capacity and as Daily Mail's corporate designee, that ███████████████████

███ *See* M. Wheatland Dep. Tr. 160:5-161:21 (Ex. 15); Daily Mail 30(b)(6) Dep. Tr. 149:7-150:22 (Ex. 16).

3

██████████████████████████████████████████████████████████████████████████

DM_GOOG_0045401 at -402, -404 (Ex. 11). ████████████████████████████████

████████████████████████████████████████████████████████████████████████

████████ *Id.* at -403. ██████████████████████████████████████████████

████████████████████████████████████████ DM_GOOG_0089942 at -942 (Ex. 17); *see also* DM_GOOG_0045999 (Ex. 18) ████████████████████████████████████

████████████████████████████████████████; DM_GOOG_0446371 at -371 (Ex. 19) ████████████████████████████████████████████████████████████████

DM_GOOG_0884759 at -759 (Ex. 20) ████████████████████████████████████

████████████████████████████████████

      Indeed, industry players are aware of the advertising revenue consequences on publishers for failing to maintain content standards. Alejandro Borgia, Director of Project Management for the Ads Safety team at Google, testified at trial in the Eastern District of Virginia that Google's content policies protect advertisers so that their brands are not associated with bad content. 2024.09.25 PM Tr. 112:7-19 (Ex. 21). Borgia also testified that publishers with content issues like Daily Mail are "not going to be able to monetize their site successfully." *Id.* at 104:1-5. This kind of evidence creates a triable issue of fact as to the impact on Daily Mail's revenue at a trial in this case. *See Securitron Magnalock Corp. v. Schnabolk*, 65 F.3d 256, 265 (2d Cir. 1995) (lay witness with personal knowledge can testify as to losses).

      To this day, Daily Mail refuses to face the reality of its sensitive content. ████████ ████████████████████████████████████████████████████████████████████████ ████████, Daily Mail's Chief Digital Officer testified under oath that ████████████ ████████ M. Wheatland Dep. Tr. 178:4-12 (Ex. 15), ██████████████████████████ that there is,

at minimum, a disputed issue of material fact, i.e., a reasonable jury could find that Daily Mail's poor editorial practices resulted in lost advertising revenue.

B.      **Gannett's Mismanagement Caused Revenue Loss**

Gannett is not entitled to summary judgment on Google's failure to mitigate defense because there is evidence demonstrating that Gannett could have mitigated its revenue losses by avoiding the mismanagement of its digital advertising business. Gannett's Hail Mary play in response to the newspaper industry's decline was to merge with GateHouse Media. *See* Berger Report ¶¶ 59-60 (Ex. 22) (describing a "continued overall decline" in "traditional news publishers"); ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. But this merger only accelerated the decline of Gannett's failing business. ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ (Ex. 23) ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. In particular, Gannett's decline has been marked by ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓. *See, e.g.*, GANNETT_GOOG_0020207 at -207-209 (Ex. 24). Gannett's digital advertising revenue has consistently underperformed as a result, failing to mitigate the effects of any alleged damages from Google's conduct. As a result, a reasonable jury could find that Gannett lacked diligence in preserving its revenue from the sale of its advertising inventory on each ad tech platform with which it partnered, and summary judgment is thus improper.

Gannett has ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓ GANNETT_GOOG_0020207 at -207-209 (Ex. 24). ▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓▓

██████████████. *Id.* at -207. ████████████████████

████████████████████████████████████████████. *Id.*

Later, ████████████████████████████████████████

████████████████████████████ GANNETT_GOOG_0646455 at -

456 (Ex. 25). Gannett shared ██████████████████████████

████████████████████████████ *Id.* at -458. This error so harmed

Gannett's reputation among advertisers that it issued a press release attempting to limit the

inventory affected from this one incident to a value of no more than $10 million.[2] ████

████████████████████████████████████████████████████

███████████ GANNETT_GOOG_0020207 at -207 (Ex. 24). ████████████

████████████████████████████████████████████████████

████████████ (Ex. 23) ████████████████████████████████

████; GANNETT_GOOG_1586587 at -587 (Ex. 26) ████████████████

████████████████████████; GANNETT_GOOG_0969246 at -246 (Ex. 27)

████████████████████████.

████████████████████████████████████████████████████

████████████████ GANNETT_GOOG_0047811 at -811 (Ex. 28), ████████

████████████, GANNETT_GOOG_1133714 at -714 (Ex. 29), ████████████

(Ex. 30), ████████████████████████████████████████████

████████████ (Ex. 23). In any event, a reasonable jury could find that a sophisticated

---

[2] USA Today, Gannett Issues Statement in Response to Wall Street Journal Story Regarding Advertising Data - USA Today Co., Inc., March 9, 2022, https://investors.usatodayco.com/news/news-details/2022/Gannett-Issues-Statement-in-Response-to-Wall-Street-Journal-Story-Regarding-Advertising-Data/default.aspx.

company like Gannett should have corrected these drains on its digital advertising revenue before seeking a windfall from Google.[3]

C. **Plaintiffs Could Have Mitigated Alleged Damages By Turning Off Or Limiting Exposure To Challenged Google Products Or Features**

Finally, Plaintiffs are not entitled to summary judgment on Google's failure to mitigate defense because a reasonable jury could find—based on the testimony of their damages expert and other evidence—that there were numerous adjustments they could have made to their digital advertising business with Google to mitigate their alleged losses. For example, there is evidence suggesting that Plaintiffs could have, among other things, (1) turned off AdX, (2) limited exposure to EDA, and (3) favored non-Google exchanges on auctions for their inventory.

Plaintiffs are sophisticated companies that actively monitor their advertising revenue and thus could (and should) have recognized and minimized revenue losses. ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ (Ex. 31); Daily Mail 30(b)(6) Dep. Tr. 78:18-81:21 (Ex. 16); ▇▇▇▇▇▇▇▇▇▇▇▇ (Ex. 23). Plaintiffs state in interrogatory responses that ▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇ Daily Mail's 2nd Supp.

---

[3] In arguing that a failure to mitigate defense demands affirmative expert testimony, Plaintiffs rely on a ruling on patent definiteness, Pltfs' Br. at 14 (citing *Teva Pharms. USA, Inc. v. Sandoz, Inc.*, 749 F. Supp. 2d 130 (S.D.N.Y. 2010)), an area of law where there is "no substitute for competent, substantiated expert testimony." *Sandoz*, 749 F. Supp. at 134-35 (quoting *Invitrogen Corp. v. Clontech Labs., Inc.*, 429 F.3d 1052, 1068 (Fed. Cir. 2005)). But outside of that specific context, courts routinely consider this affirmative defense without any supporting expert testimony at all. *See Drummond v. Morgan Stanley & Co.*, 1996 WL 631723, at *2 (S.D.N.Y. Oct. 31, 1996) (granting defendant summary judgment on failure to mitigate defense without supporting expert testimony); *LaSalle Bank Nat. Ass'n v. Nomura Asset Capital Corp.*, 72 A.D.3d 409, 411 (N.Y. App. Div. 2010) (explaining that "expert testimony is not required to determine whether [a] plaintiff reasonably mitigated its damages").

Resp. to Interrog No. 23 (Ex. 32); Gannett Supp. Resp. to Interrog. No. 23 (Ex. 33). Indeed, constant monitoring of display advertising revenue was part of standard operations for these companies. Daily Mail's Chief Digital Officer testified that ███████████████ ███████████████████████████████████████████ M. Wheatland Dep. Tr. 102:13-21, 104:22-105:9 (Ex. 15). Similarly, ███████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████ (Ex. 30) ██████████████████████████████████████ ███████████████████████████████████████ *Id.* 57:17-19. █████████████ ███████████████, as Gannett's corporate designee testified, █████████████ ███████████████████████████████████ Gannett 30(b)(6) Dep. Tr. 242:6-17 (Ex. 34).

Google also regularly communicated with Plaintiffs to work through any revenue issues they faced. ████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████ (Ex. 35) █████████████████████ (Ex. 30). Gannett and Daily Mail benefitted when they implemented solutions proposed by Google. *See, e.g.*, GANNETT_GOOG_0969246 at -246 (Ex. 27) █████████████████ ███████████████████████████; DM_GOOG_0000031 at -031 (Ex. 36) ███████████ ███████████████████████████████████████████████████████████ ███████████████████████████████████ But Gannett and Daily Mail did not implement solutions proposed by Google in all instances. *Compare* DM_GOOG_0045401 at -403 (Ex. 11) ██████████████████████████████████████████████████████

8

██████████████████████████████ *with* DM_GOOG_0145191 at -192 (Ex. 37) ██████

██████████████████████████████████████████████; *see also supra* § I.A.

Plaintiffs' failure to mitigate their alleged losses using the information and Google resources available to them creates a genuine dispute of material fact as to their lack of diligence. *See Royal Park Invs. SA/NV v. HSBC Bank USA, N.A.*, 2015 WL 14019139, at *1 (S.D.N.Y. Dec. 4, 2015) (finding evidence of plaintiff's knowledge and "actions that the [plaintiffs] could have . . . taken" are relevant to failure to mitigate); *Massaro v. Rockland Fuel Oil Corp.*, 218 A.D.3d 458, 459 (N.Y. App. Div. 2023) (denying summary judgment against failure to mitigate defense because plaintiff failed to take steps he should have known were available after owning a business in the relevant industry for 30 years). Specifically, the evidence shows that there are several actions Plaintiffs could have taken to mitigate their losses—and the amounts they could have saved by taking those steps.

*First*, Plaintiffs' own damages expert suggests that Plaintiffs lost more revenue from EDA alone than they would have lost by simply turning off AdX for indirect deals.[4] Specifically,

████████████████████████████████████████████████████████████████

██████████████████████████████████████. Prof. Hortacsu also estimated that if ██████

████████████████████████████████████████████████████████████████

████████████████████████████████████████████████████████████████

██████████████. Hortacsu Second Revised Reply Table Summation 2 & 4, Figure 7 (Ex. 6); Hortacsu Dep. Tr. 204:12-215:20 (Ex. 7); Hortacsu Second Revised Report Table 76 (Ex. 8). In other words, this evidence demonstrates that if Gannett turned off AdX, Gannett would have

---

[4] Contrary to Plaintiffs' assertions, *see* Pltfs' Br. at 13 (quoting E.D. Va. Op. at 863), the proposed mitigation based on Prof. Hortacsu's analysis is entirely consistent with this Court's collateral estoppel order and the liability finding from the Eastern District of Virginia; it shows that Plaintiffs would lose money if they stopped using AdX, but less than the purported damages they suffered by using AdX.

9

mitigated its alleged damages to U.S. revenue by ▮▮▮▮ from just the alleged harm due to EDA alone.[5] Plaintiffs argue that turning off AdX would not mitigate damages because EDA would still apply to their direct deals. Pltfs' Br. at 14-15. This misses the point. If EDA alone was so harmful to Plaintiffs' business that their own expert's analysis demonstrates they would have lost less revenue had they turned off AdX entirely, then turning off AdX would have mitigated not just alleged damages arising from EDA, but those arising from other challenged conduct as well.[6] And Gannett could have mitigated any alleged damages further by, among other things, better managing its ad inventory. *See supra* § I.B.

The denial of summary judgment in *In re Visa Check/Mastermoney Antitrust Litigation*, 2003 WL 1712568 (E.D.N.Y. Apr. 1, 2003) is instructive. There, the court permitted the defendant's failure to mitigate defense to proceed to trial because there was evidence that the plaintiffs could have "steered" their customers to products offered by the defendants' competitors. 2003 WL 1712568, at *8. Similarly, Prof. Hortacsu's calculations here show that Plaintiffs could have substantially mitigated their damages by steering their digital advertising inventory to non-Google exchanges by turning off AdX.[7]

---

[5]  Hortacsu Second Revised Reply ¶ 200 (Ex. 6) ▮▮▮

[6] Plaintiffs are also wrong that they would still face alleged damages due to EDA if AdX were turned off. Plaintiffs' theory of harm from EDA is that ▮▮▮ Li Revised Opening Report ¶ 924 (Ex. 12). ▮▮▮

[7] Plaintiffs nonetheless argue a jury should not hear this evidence because any measures they could have taken were "outside 'the range of reason.'" Pltfs' Br. at 11 (quoting *APL Co. PTE v. Blue Water Shipping U.S. Inc.*, 592 F.3d 108, 111 (2d Cir. 2010)). Plaintiffs' cited case does not help them. There, the court vacated a portion of a final judgment reducing the amount of damages awarded to a plaintiff for failure to mitigate its loss because the trial court (acting as the factfinder) failed to consider whether the plaintiff's failures fell within the range of reason. *APL*, 592 F.3d at 112. Google should be entitled to argue the reasonableness of proposed mitigation measures to a factfinder just as in *APL*.

*Second*, there is evidence showing that there were conduct-specific mitigation options available to Plaintiffs short of turning off AdX entirely. Using EDA as just one example, Prof. Milgrom opines that Plaintiffs could have limited their exposure to EDA and avoided resulting damages by "set[ting] floor prices to re-establish the pre-EDA process for its inventory [or] assign[ing] direct deals to 100% sponsorship line items, to which EDA would not apply." Milgrom Report ¶ 439.i (Ex. 9); *see also* Chevalier Report ¶ 360 (Ex. 10) ("[I]f publishers wanted to avoid the alleged negative impacts of EDA, they could have limited their exposure to EDA by opting to sell through channels for which EDA does not apply."). There is similar mitigation evidence related to other challenged conduct. *See, e.g.*, Milgrom Report at ¶¶ 377 (Ex. 9) (describing ways to disable DA "without completely turning off AdX"), 765-67 (describing ways to favor non-Google exchanges post-UPR). As a result, there is evidence from which a reasonable jury could find that Plaintiffs could have mitigated their alleged damages and did not.[8]

## CONCLUSION

For the foregoing reasons, Plaintiffs' motion for summary judgment on Google's failure to mitigate defense should be denied.

---

[8] Plaintiffs' appeal to *Int'l Cards Co., Ltd. v. MasterCard Int'l Inc.*, 2016 WL 7009016 (S.D.N.Y. Nov. 29, 2016) is unavailing. While the court denied the defendant summary judgment on its failure to mitigate defense, it allowed the defendant to introduce evidence of the plaintiff's failure to mitigate at trial because that evidence "may impugn the amount of the damages" which "creates a factual issue that should be resolved at trial." *MasterCard*, 2016 WL 7009016 at *3.

Dated: December 12, 2025                                        Respectfully Submitted,


                                                                */s/ Craig M. Reiser*
                                                                Craig M. Reiser
                                                                Denise Plunkett
                                                                Eva Yung
                                                                Christopher Erickson
                                                                AXINN, VELTROP & HARKRIDER LLP
                                                                630 Fifth Avenue, 33rd Floor
                                                                New York, New York 10111
                                                                Telephone: (212) 728-2200
                                                                Email: creiser@axinn.com
                                                                           dplunkett@axinn.com
                                                                           eyung@axinn.com
                                                                           cerickson@axinn.com

                                                                Bradley D. Justus
                                                                AXINN, VELTROP & HARKRIDER LLP
                                                                1901 L Street, NW
                                                                Washington, DC 20036
                                                                Telephone: (202) 469-3532
                                                                Email: bjustus@axinn.com

                                                                Daniel S. Bitton
                                                                AXINN, VELTROP & HARKRIDER LLP
                                                                55 Second Street, CA 94105
                                                                Telephone: (415) 490-1486
                                                                Email: dbitton@axinn.com

                                                                Caroline P. Boisvert
                                                                AXINN, VELTROP & HARKRIDER LLP
                                                                90 State House Square
                                                                Hartford, CT 06103
                                                                Telephone: (860) 275-8129
                                                                Email: cboisvert@axinn.com

                                                                */s/ Justin K. Sessions*
                                                                Justina K. Sessions**
                                                                FRESHFIELDS US LLP
                                                                855 Main Street
                                                                Redwood City, CA 94063
                                                                Telephone: 650-618-9250
                                                                Email: justina.sessions@freshfields.com

Counsel for Defendants Google LLC and Alphabet Inc.

*\*\*Except as to Associated Newspapers Ltd., et al. v. Google LLC, No. 1:21-cv-03446 (PKC)*

13