**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | Case No. 1:21-md-03010 (PKC) |

*This Document Relates To:*

| | |
|---|---|
| ASSOCIATED NEWSPAPERS LTD. and MAIL MEDIA, INC.<br><br>       Plaintiffs,<br><br> -against-<br><br>GOOGLE LLC and ALPHABET INC.,<br><br>       Defendants. | Case No. 1:21-cv-03446 (PKC) |
| GANNETT CO., INC.<br><br>       Plaintiff,<br><br> -against-<br><br>GOOGLE LLC and ALPHABET INC.,<br><br>       Defendants. | Case No. 1:23-cv-5177 (PKC) |

**PLAINTIFFS DAILY MAIL AND GANNETT'S REPLY MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTION FOR PARTIAL SUMMARY JUDGMENT ON GOOGLE'S AFFIRMATIVE DEFENSES**

**TABLE OF CONTENTS**

Page

TABLE OF AUTHORITIES ................................................................................................... ii

INTRODUCTION ...................................................................................................................1

ARGUMENT ...........................................................................................................................2

I.  Google's Proposal To Turn Off AdX Fails as a Matter of Law ........................................2

    A.  Google Is Estopped To Argue that Failing To Turn Off AdX Was Unreasonable .....................................................................................................3

    B.  Google Has No Evidence of the Amount by which Plaintiffs Could Have Reduced Their Damages After Being Harmed by EDA. ..........................4

II. Google's Remaining Mitigation Proposals Fail as a Matter of Law ..................................8

CONCLUSION .......................................................................................................................10

## TABLE OF AUTHORITIES

Page(s)

**CASES**

*Air Et Chaleur v. Janeway*, 757 F.2d 489 (2d Cir. 1985) .................................................................. 8

*Coastal Power Int'l, Ltd. v. Transcon. Cap. Corp.*, 10 F. Supp. 2d 345 (S.D.N.Y. 1998) ............. 2

*Diamond Resorts U.S. Collection Dev., LLC v. Neally*,
    2021 WL 8773523 (M.D. Fla. Oct. 15, 2021) ........................................................................ 10

*Ellerman Lines, Ltd. v. Steamship President Harding*, 288 F.2d 288 (2d Cir. 1961) ............. 1, 7, 8

*Felske v. Hirschmann*, 2012 WL 716632 (S.D.N.Y. Mar. 1, 2012) ............................................... 3

*Fisher v. First Stamford Bank & Tr. Co.*, 751 F.2d 519 (2d Cir. 1984) ........................................ 7

*Google Digit. Advert. Antitrust Litig.*, *In re*, 721 F. Supp. 3d 230 (S.D.N.Y. 2024) ...................... 6

*LaSalle Bank N.A. v. Namura Asset Cap. Corp.*,
    47 A.D.3d 103 (N.Y. App. Div. 2007) ...................................................................... 1, 2, 6, 8

*Miller v. Lovett*, 879 F.2d 1066 (2d Cir. 1979) ................................................................... 1-2, 7, 10

*Morgan Stanley High Yield Securities, Inc. v. Seven Circle Gaming Corp.*,
    2003 WL 25835939 (Oct. 30, 2003), *report and recommendation adopted*,
    2003 WL 22879807 (S.D.N.Y. Dec. 3, 2003) ............................................................. 5, 6, 8, 9

*Nance v. N.Y. Pub. Int. Rsch. Grp. Fund, Inc.*,
    2025 WL 965883 (S.D.N.Y. Mar. 31, 2025) ............................................................................ 3

*Ocean Wide Logistics Inc. v. Power Train Components, Inc.*,
    2021 WL 9566361 (E.D.N.Y. Apr. 12, 2021) ................................................................ 4, 6, 7, 8

*Ridgeview Partners, LLC v. Entwistle*, 354 F. Supp. 2d 395 (S.D.N.Y. 2005) ............................. 7

*United States v. Google LLC*, 778 F. Supp. 3d 797 (E.D.Va. 2025) ............................................. 3

*Visa Check/Mastermoney Antitrust Litig.*, *In re*,
    2003 WL 1712568 (E.D.N.Y. Apr. 1, 2003) ............................................................................ 5

**OTHER AUTHORITIES**

Restatement (Second) Torts (2025) ............................................................................................ 10

**INTRODUCTION**

Google now concedes (at 2) it has no unclean hands defense. Although Google twice represented to the Court that it had "identified evidence in the record" to support that defense, Dkt. No. 976 at 10; Dkt. No. 1238 at 3, Google has now dropped it without contest.

Google continues to pursue its mitigation defense, but has failed to establish any genuine dispute of material fact. Although Plaintiffs disagree with Google's many mischaracterizations of evidence, those disputes are irrelevant. Even assuming the truth of Google's factual assertions, Plaintiffs are entitled to summary judgment on Google's mitigation defense.

Google fundamentally misunderstands mitigation law. Mitigation is not a defense to liability, nor is it a basis to insist, with 20/20 hindsight, that a plaintiff should have prevented injury before it occurred. Rather, *after* a defendant causes harm, the plaintiff must act reasonably to minimize damages *from that harm*. To prevail, Google must show not only that Plaintiffs acted unreasonably, but also the specific amount by which their damages would have been reduced had they instead acted reasonably. *See Ellerman Lines, Ltd. v. Steamship President Harding*, 288 F.2d 288, 290 (2d Cir. 1961) (Friendly, J.); *LaSalle Bank N.A. v. Namura Asset Cap. Corp.*, 47 A.D.3d 103, 107-08 (N.Y. App. Div. 2007).

Google argues (at 9-10) that Daily Mail and Gannett could have mitigated their damages from Enhanced Dynamic Allocation ("EDA") if they "just stopped using" Google's monopoly ad exchange, AdX. But Google is estopped to argue that publishers could forgo using AdX. *See* Mot. at 11-13. Moreover, Google has no evidence of its own regarding the amount by which disabling AdX would have reduced Plaintiffs' damages. Google thus resorts to arguing that, in hindsight – and based only on attorney arithmetic on numbers in Plaintiffs' expert report – Gannett could have turned off AdX at an unspecified time in hopes of preventing the damages caused by EDA. But that argument, too, runs counter to settled mitigation law. *See Miller v.*

1

*Lovett*, 879 F.2d 1066, 1070 (2d Cir. 1979) ("There can be no duty to mitigate damages until the injury causing those damages actually occurs."). Google's other arguments – about Daily Mail's editorial decisions and Gannett's inventory management – are untied to any calculation of damages reduction and are thus meaningless as a matter of mitigation law. The Court should grant Plaintiffs summary judgment on Google's mitigation defense.

## ARGUMENT

Google does not dispute that it bears the burden to show: (1) that Plaintiffs "unreasonably failed to mitigate" damages from Google's unlawful conduct; (2) that "reasonable efforts would have reduced [their] damages"; and (3) "the extent to which such efforts would have diminished" those damages. *Coastal Power Int'l, Ltd. v. Transcon. Cap. Corp.*, 10 F. Supp. 2d 345, 370 (S.D.N.Y. 1998) (first two quotations); *LaSalle*, 47 A.D.3d at 107 (third quotation).[1] Turning off AdX is the only purported mitigation for which Google even tries to argue the third element. That argument fails because (1) Google is estopped to argue that failing to turn off AdX was unreasonable, and (2) Google has no evidence of the amount by which, after incurring EDA damages, Plaintiffs could have reduced those damages by turning off AdX. *See infra* Part I. The Court can easily dispatch Google's remaining arguments, none of which even attempt to satisfy all of the defense's elements. *See infra* Part II.

## I. Google's Proposal To Turn Off AdX Fails as a Matter of Law

Google's argument (at 9-10) that Daily Mail and Gannett should have "just stopped using AdX" to reduce their EDA damages fails for two independent reasons: *First*, Google does not dispute that it is estopped to argue that Daily Mail or Gannett acted unreasonably by not "turning off" AdX. Mot. at 11-13. *Second*, even if Daily Mail and Gannett could have switched off

---

[1] Nor does Google dispute New York law controls here. To the extent they discuss mitigation at all, nearly all of Google's cited cases apply New York mitigation law.

AdX, Google has not identified any evidence – expert or otherwise – showing "the extent to which" Plaintiffs' damages from EDA would have been reduced. Mot. at 14-15. Instead, Google argues that Plaintiffs should have intervened to proactively anticipate and *prevent* damages from EDA before they even happened, which is contrary to bedrock mitigation law.

> A. **Google Is Estopped To Argue that Failing To Turn Off AdX Was Unreasonable.**

Less than two months ago, this Court precluded Google from relitigating that publishers are "coerced" to use Google's monopoly exchange, AdX, and that Google leverages that "coercive power" to "lock[]" publishers into its monopoly ad server. Dkt. No. 1219 at 27-28; *id.* at 32 (precluding relitigation of Google's "monopoly power in the ad server and ad exchange markets"). It follows *a fortiori* that Plaintiffs who were coerced into using AdX acted reasonably in not turning it off. *See id.* at 27. As Plaintiffs explained, *see* Mot. at 11-13, Judge Brinkema found – based on testimony from Gannett and Daily Mail witnesses – that "it was not financially viable for large publishers to forgo using AdX," and that AdX's must-have status gave Google's unlawful tie its "coercive power." *United States v. Google LLC*, 778 F. Supp. 3d 797, 861-63, 870 (E.D.Va. 2025) ("E.D. Va. Op."). Google thus is barred from arguing that, in order to reduce damages from EDA, Daily Mail and Gannett should have taken the "financially [un]viable" step of turning off AdX. *Id.* at 870.

Google offers no meaningful response and thus has conceded that it is estopped to argue that failing to turn off AdX was unreasonable. *See Nance v. N.Y. Pub. Int. Rsch. Grp. Fund, Inc.*, 2025 WL 965883, at *12 (S.D.N.Y. Mar. 31, 2025) ("It is well-established that a [nonmoving party] effectively concedes a [movant's] arguments by his failure to respond to them." (quoting *Felske v. Hirschmann*, 2012 WL 716632, at *3 (S.D.N.Y. Mar. 1, 2012))). Google says (at 2) only that "Plaintiffs are mistaken" that this Court's collateral estoppel order "bears on" its

3

mitigation defense, but it never explains why. In a footnote (at 9 n.4), Google asserts that its argument is "consistent with" the Court's collateral estoppel decision and Judge Brinkema's findings. To the contrary, Judge Brinkema already rejected Google's argument that publishers "did not necessarily have to use AdX," and instead found that publishers were "locked-in" to Google's unlawful tie because they could not forgo "[t]he unique value of real-time access" to AdX. E.D. Va. Op. at 862; *see also* Dkt. No. 1273 ¶¶ 19-20 (Google agreeing it is "[u]ndisputed" that Judge Brinkema made these findings and that this Court held it was precluded from relitigating them). This Court explicitly precluded Google from relitigating that publishers were "locked-in" to Google's ad server because it was tied to Google's must-have exchange. Dkt. No. 1219 at 27-28. Google's position would require the jury to accept, in direct conflict with this Court's issue preclusion order, not only that Daily Mail and Gannett could in fact have stopped using AdX, but that it was *unreasonable* for them *not* to do so. This Court's collateral estoppel order precludes Google from making that already-rejected argument.

> **B.    Google Has No Evidence of the Amount by which Plaintiffs Could Have Reduced Their Damages After Being Harmed by EDA.**

Even if Google were not precluded from asserting that Plaintiffs should have "just stopped using" AdX, Google's defense fails for the independent reason that it has no evidence of the amount by which Plaintiffs could have reduced EDA damages by turning off AdX.

Google rightly does not dispute that, as a matter of law, a defendant's failure to present evidence of the amount by which a plaintiff's efforts would have reduced damages is fatal to a mitigation defense. Courts in this circuit routinely grant summary judgment on that basis. In *Ocean Wide Logistics Inc. v. Power Train Components, Inc.*, for example, the defendant argued that the plaintiff could have mitigated its damages if it had stopped doing business with the contract-breacher earlier than it did. 2021 WL 9566361, at *2 (E.D.N.Y. Apr. 12, 2021). The

4

Court rejected that argument and granted the plaintiff summary judgment because the defendant failed "to establish by what amount plaintiff could have mitigated its damages." *Id*. at *3.

*Morgan Stanley High Yield Securities, Inc. v. Seven Circle Gaming Corp.*, is likewise instructive. 2003 WL 25835939, at *4-5 (Oct. 30, 2003), *report and recommendation adopted*, 2003 WL 22879807 (S.D.N.Y. Dec. 3, 2003). There, the defendant broke its promise to purchase certain notes from the plaintiffs. *See id*. at *1. Defendant argued the plaintiffs should have mitigated their damages by selling the notes to someone else, relying primarily on "a few stray remarks in the record" from the plaintiffs' own witnesses. *Id*. at *4. But the defendant "failed to offer any expert testimony to establish either that there was a market for the purchase of the" notes after the defendant's breach, or "the price at which the Notes could have been sold." *Id.* at *5. The court entered summary judgment for the plaintiff because the defendant had "failed to satisfy its burden of establishing that with reasonable efforts" the plaintiffs' "damages could have been reduced, and the amount of such reduction." *Id*.[2]

Here, as in *Ocean Wide* and *Morgan Stanley*, Google's experts did not calculate the specific dollar amount by which disabling AdX supposedly would have reduced Daily Mail's or Gannett's damages from EDA.[3] Google has utterly failed to develop its own evidence – expert or otherwise – to support its mitigation defense.

---

[2] Google argues its mitigation defense should "proceed to trial" under *In re Visa Check/Mastermoney Antitrust Litigation*, 2003 WL 1712568 (E.D.N.Y. Apr. 1, 2003). But that case does not address a defendant's failure to present evidence of damages reduction.

[3] Google purports to dispute this fact in its response to Plaintiffs' 56.1 statement by pointing to two paragraphs in two of its expert reports, but neither says anything about the amount of damages Daily Mail or Gannett could have avoided by turning off AdX. Dkt. No. 1273 ¶ 22. Professor Milgrom opines that a "████████████████████████████████████████," but says nothing about the extent to which that would have reduced Plaintiffs' damages. Boisvert Decl. Ex. 9 ¶ 439(i). Likewise, Professor Chevalier opines that publishers could have "████████████████████████" but makes no attempt to calculate how doing so would reduce Plaintiffs' damages. Boisvert Decl. Ex. 10 ¶ 360.

5

Instead, as anticipated in Plaintiffs' opening brief, *see* Mot. at 14-15, Google's only attempt to carry its burden to calculate a reduction in damages from disabling AdX rests on a (mis)reading of Plaintiffs' expert's opinions. Notably, Google attempts this calculation only for Gannett. *See* Opp. at 9-10 (arguing only "that if Gannett turned off AdX, Gannett would have mitigated its alleged damages"). Based on this failure, the Court should enter summary judgment for Daily Mail on Google's mitigation defense. *See LaSalle*, 47 A.D.3d at 107-08.

With respect to Gannett, even assuming Google's complete mischaracterization of Professor Hortacsu's report, Google's argument fails as a matter of law. Google argues (at 9-10 & n.6) that (1) Gannett's EDA damages from 2017 through 2024 are approximately ▮▮▮▮, (2) turning off AdX would have cost Gannett approximately ▮▮▮▮, (3) turning off AdX would have prevented Gannett from incurring EDA damages, and therefore (4) turning off AdX would have cost Gannett ▮▮▮▮ to prevent ▮▮▮▮ in damages, leading to net damages of ▮▮▮▮.[4] Google's argument fails for multiple reasons.

*First*, Google has no evidence of – and makes no argument about – when Gannett should have recognized its EDA damages and when it should have turned off AdX to reduce those damages. *Cf. In re Google Digit. Advert. Antitrust Litig.*, 721 F. Supp. 3d 230, 272 (S.D.N.Y. 2024) ("[T]he anticompetitive effects of EDA were not known by affected publishers.") That is independently fatal to Google's defense. *See Ocean Wide*, 2021 WL 9566361, at *3; *Morgan Stanley*, 2003 WL 25835939, at *5.

Google's failure to identify when Gannett should have disabled AdX exposes more fundamental flaws in its argument. It is black letter law that "[t]here can be no duty to mitigate

---

[4] Plaintiffs dispute Google's reading of Professor Hortacsu's report and Google's assertion that turning off AdX would eliminate damages from EDA, but those disputes are immaterial because on its own terms Google's argument fails as a matter of law.

damages until the injury causing those damages actually occurs." *Miller*, 879 F.2d at 1070; *Ridgeview Partners, LLC v. Entwistle*, 354 F. Supp. 2d 395, 403 (S.D.N.Y. 2005) ("An underlying requirement in imposing the duty to mitigate . . . is that the defendant harmed the plaintiff and plaintiff subsequently suffered injury."). Here, Google has no evidence – and does not argue – that *after* incurring ▮▮▮▮ in damages from EDA as of October 2024, turning off AdX would have reduced those damages. Nor would that make any sense. Turning off AdX at that point could not undo the depressed prices Gannett received for its directly sold advertising for the seven years prior.

To the extent Google argues that Gannett should have *anticipated* damages from EDA and turned off AdX earlier to *prevent* harm from EDA, that is not a proper mitigation defense. Again, the duty to mitigate is *not* a "duty to avoid the underlying injury." *Miller*, 879 F.2d at 1071. And if Google believes Gannett should have turned off AdX at some point *between* 2017 and 2024, it has provided no evidence of when that point arrived nor any calculation of the extent to which disabling AdX at that unknown point would have diminished Gannett's damages. *See Ocean Wide*, 2021 WL 9566361, at *3. Google's argument is based only on its counsel's arithmetic, not on evidence of what Gannett could have done in the real world.

*Second*, efforts to mitigate must be judged neither with the benefit of hindsight nor by evaluating whether the plaintiff took the *most* reasonable steps to mitigate. *See Ellerman Lines*, 288 F.2d at 290 ("It is not fatal to recovery that one course of action, reasonably open but not followed, would have avoided further injury whereas another, also reasonable and taken, produced it. If a choice of two reasonable courses presents itself, the person whose wrong forced the choice cannot complain that one rather than the other is chosen." (cleaned up)); *see also Fisher v. First Stamford Bank & Tr. Co.*, 751 F.2d 519, 524 (2d Cir. 1984) ("Hindsight may not

serve as a basis to decrease damages plaintiff is otherwise entitled to recover."). Here, using expert calculations in litigation, Google argues in hindsight that (at some unspecified time) Gannett had the choice to keep AdX on or turn it off (which Judge Brinkema found financially unviable). Having put Gannett in that position, Google "cannot complain" that Gannett chose the viable (keep AdX on) over the unviable (turn it off). *Ellerman Lines*, 288 F.2d at 290.

## II. Google's Remaining Mitigation Proposals Fail as a Matter of Law

Google proposes a handful of other steps Plaintiffs should have taken to mitigate damages "short of turning off AdX entirely," Opp. at 11, but none should detain the Court long because each fails basic requirements of mitigation law.

*First*, Google suggests (at 11) that Plaintiffs should have: (1) "limited their exposure to EDA" by using "floor prices to re-establish the pre-EDA process for its inventory" or by "assign[ing] direct deals to" certain line items it claims were not subject to EDA; (2) "disable[d] [Dynamic Allocation] 'without completely turning off AdX' "; or (3) "favor[ed] non-Google exchanges" after Google implemented Unified Pricing Rules. While Google at least gestured at its burden to calculate the impact of disabling AdX on EDA damages, *supra* pp. 6-7, Google's brief is entirely devoid of any evidence of the extent to which these other purported mitigation proposals would have reduced the damages Google's unlawful conduct caused Plaintiffs. That is fatal to Google's mitigation defense for reasons already explained. *Supra* pp. 4-5; *LaSalle*, 47 A.D.3d at 107-08; *Ocean Wide*, 2021 WL 9566361 at *3; *Morgan Stanley*, 2003 WL 25835939, at *4-5 (citing similar cases).

*Second*, Google argues (at 7-8) that because Daily Mail and Gannett "are sophisticated," they "could (and should) have recognized and minimized revenue losses." But general assertions that a plaintiff had "knowledge" of potential mitigation measures are insufficient. *Air Et Chaleur v. Janeway*, 757 F.2d 489, 494-95 (2d Cir. 1985) ("Defendant failed to carry [its]

8

burden" to show plaintiff could have mitigated by finding an alternative buyer for stock when defendant merely introduced evidence of the price at which those stocks were selling on the "over-the-counter market" and presented "proof of plaintiffs' knowledge of" that market.). Nor is it relevant that Google "communicated with Plaintiffs" about "revenue issues." Opp. at 8-9. Google does not claim that it ever proposed to Daily Mail or Gannett methods for reducing the damages caused by Google's unlawful tie, anticompetitive auction manipulations, or other wrongful conduct. *Cf. Morgan Stanley*, 2003 WL 25835939 at *4 (defendant could not support mitigation defense with testimony that, prior to its breach, it "indicated that there were" other buyers for stock). The smattering of unrelated communications Google identifies in its brief are thus irrelevant to whether Plaintiffs unreasonably failed to mitigate the damages they now seek to recover.

*Finally*, Google asserts (at 3-5) that Daily Mail cannot recover damages from Google's now-established antitrust violations because Daily Mail's content is "salacious, explicit, and violent," and claims (at 5-7) that Gannett cannot recover because it "mismanag[ed] . . . its digital advertising business," by, for example, merging with GateHouse Media.[5] Again, Google entirely fails to identify any evidence of the extent to which any changes in Daily Mail's editorial decisions or Gannett's management decisions would have reduced Plaintiffs' damages from Google's anticompetitive, deceptive, and unjust conduct. That ends the matter. *Supra* pp. 4-5.

---

[5] Google's screed regarding Daily Mail's "pervasive content issues" and Gannett's "rampant mismanagement" is rife with mischaracterizations. For example, in support of its claim (at 3) that Daily Mail "raised concerns" that its content "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," Google cites a 2015 presentation listing Daily Mail's "▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮," including the ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮. Boisvert Decl. Ex. 14 at -775. The slide says nothing about how advertisers "viewed" Daily Mail's content nor that Daily Mail was "concerned" about competing with any of the listed publications.

Google's broadsides against Daily Mail's and Gannett's business practices fail for the independent reason that Google does not explain how, but for Daily Mail's editorial decisions and Gannett's management decisions, they would have reduced the harm from Google's wrongs. A plaintiff's "failure to take reasonable steps" will diminish its damages only when that "failure to act" is a "legally contributing cause" of the harms for which it seeks to recover. Restatement (Second) Torts § 918(c) (2025); *see also Miller*, 879 F.2d at 1070 (mitigation defense is "focuse[d] on the plaintiff's duty to prevent the aggravation of injuries already received" (cleaned up)). The defense is not a license to second-guess any and all of a plaintiff's business practices. *See Diamond Resorts U.S. Collection Dev., LLC v. Neally*, 2021 WL 8773523, at *5 (M.D. Fla. Oct. 15, 2021) (striking mitigation defense based on defendant's "broad assertion that Plaintiff's entire business constitutes a failure to mitigate damages" and explaining that a defendant must show "that Plaintiff failed to mitigate damages *caused by* Defendant").

Google does not (and cannot) argue that changes to Daily Mail's editorial practices or Gannett's management decisions would have reduced the damages caused by Google's antitrust violations or other wrongdoing. Instead, Google argues only that "Daily Mail's poor editorial practices resulted in lost advertising revenue," Opp. at 5, and that Gannett's management choices were a "drain[] on its digital advertising revenue," *id*. at 7. But an argument that a plaintiff could have made more money by changing its business is not an argument that a plaintiff could have reduced the damages already caused by the defendant. Google's criticisms of Daily Mail's and Gannett's business decisions cannot support its mitigation defense.

## CONCLUSION

Because Google has abandoned its unclean hands defense and has failed to meet its burden on its unreasonable failure to mitigate defense, the Court should grant Daily Mail and Gannett's summary judgment motion.

<table>
<tr><td>Date:  December 19, 2025</td><td>Respectfully submitted,<br><br>/s/ John Thorne<br>John Thorne<br>Daniel G. Bird<br>Bethan R. Jones<br>Christopher C. Goodnow<br>Mark P. Hirschboeck<br>Eliana Margo Pfeffer<br>Eric J. Maier<br>Sven E. Henningson<br>Jonathan I Liebman<br>Kyle B. Grigel<br>KELLOGG, HANSEN, TODD, FIGEL<br>  & FREDERICK, P.L.L.C.<br>1615 M Street NW, Suite 400<br>Washington, DC 20036<br>Tel.: (202) 326-7900<br>Fax: (202) 326-7999<br>Email: jthorne@kellogghansen.com<br>         dbird@kellogghansen.com<br>         bjones@kellogghansen.com<br>         cgoodnow@kellogghansen.com<br>         mhirschboeck@kellogghansen.com<br>         epfeffer@kellogghansen.com<br>         emaier@kellogghansen.com<br>         shenningson@kellogghansen.com<br>         jliebman@kellogghansen.com<br>         kgrigel@kellogghansen.com<br><br>*Counsel for Associated Newspapers, Ltd., Mail Media, Inc., and Gannett Co., Inc.*</td></tr>
</table>