**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| **IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION** | **No. 1:21-md-03010 (PKC)** |
| *This Document Relates To:* | |
| **IN RE: GOOGLE DIGITAL PUBLISHER ANTITRUST LITIGATION** | **No. 1:21-cv-07034 (PKC)** |
| **ASSOCIATED NEWSPAPERS LTD. and MAIL MEDIA, INC.,**<br>*Plaintiffs,*<br>-against-<br>**GOOGLE LLC and ALPHABET INC.,**<br>*Defendants.* | **No. 1:21-cv-03446 (PKC)** |
| **GANNETT CO., INC.,**<br>*Plaintiff,*<br>-against-<br>**GOOGLE LLC and ALPHABET INC.,**<br>*Defendants.* | **No. 1:23-cv-05177 (PKC)** |

**DEFENDANTS GOOGLE LLC, ALPHABET INC., AND YOUTUBE LLC'S REPLY MEMORANDUM IN SUPPORT OF MOTION TO STAY**

# TABLE OF CONTENTS


INTRODUCTION ..... 1

ARGUMENT ..... 2

I. Plaintiffs Have Not Rebutted That All *Kappel* Factors Weigh In Favor Of A Stay ..... 2

A. A Stay Will Not Prejudice Plaintiffs, Who Can Still Pursue Their Full Claims For Damages ..... 2

B. Trying These Cases Risks Significant Burdens On The Court, The Jury, And On Non-Parties ..... 4

II. Plaintiffs Are Wrong That This Court Has Previously Rejected A Stay ..... 6

III. Plaintiffs' Cases Do Not Rebut That Courts Routinely Grant Stays In Similar Circumstances ..... 7

IV. In The Alternative, Postponement Is Appropriate Because Google's Trial Counsel Has Scheduling Conflicts ..... 10

CONCLUSION ..... 10

# TABLE OF AUTHORITIES

**Page(s)**

**CASES**

*In re Am. Express Anti-Steering Rules Antitrust Litig.*,
19 F.4th 127 (2d Cir. 2021) .................... 2

*Amazon.com, Inc. v. WDC Holdings LLC*,
2023 WL 7272350 (E.D. Va. Aug. 30, 2023).................... 7, 8

*In re American Express Anti-Steering Rules Antitrust Litigation*,
2016 WL 748089 (E.D.N.Y. Jan. 7, 2016) .................... 7

*CA, Inc. v. Network Sols. Provider, Inc.*,
2018 WL 6834472 (E.D.N.Y. Dec. 28, 2018) .................... 3

*Carroll v. Trump*,
669 F. Supp. 3d 249 (S.D.N.Y. 2023).................... 10

*GTFM, Inc. v. Park*,
2002 WL 31890940 (S.D.N.Y. Dec. 30, 2002) .................... 8

*Harris v. Butler*,
961 F. Supp 61 (S.D.N.Y. 1997).................... 8

*Kappel v. Comfort*,
914 F. Supp. 1056 (S.D.N.Y. 1996).................... *passim*

*Koninklijke Philips N.V. v. ZOLL Medical Corp.*,
77 F. Supp. 3d 255 (D. Mass. 2015) .................... 8

*Macheca Transp. Co. v. Phila. Indem. Co.*,
463 F.3d 827 (8th Cir. 2006) .................... 10

*Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*,
385 F.3d 72 (1st Cir. 2004).................... 8

*Nat'l Coal. on Black Civic Participation v. Wohl*,
2021 WL 694557 (S.D.N.Y. Feb. 22, 2021).................... 8

*Ohio v. American Express Co.*,
585 U.S. 529 (2018).................... 6

*OV Loop v. Mastercard Inc.*,
2023 WL 7905690 (S.D.N.Y. Nov. 16, 2023) .......... 4

*Pet Milk Co. v. Ritter*,
323 F.2d 586 (10th Cir. 1963) .......... 9

*Petrella v. Siegel*,
843 F.2d 87 (2d Cir. 1988) .......... 8, 9

*Rossi v. Ferring Pharm.*,
2016 WL 593440 (D. Conn. Feb. 12, 2016) .......... 10

*SCM Corp. v. Xerox Corp.*,
77 F.R.D. 10 (D. Conn. 1977) .......... 3, 4

*Sherman v. Jacobson*,
247 F. Supp. 261 (S.D.N.Y. 1965) .......... 9

*U.S. Airways, Inc. v. Sabre Holdings Corp.*,
938 F.3d 43 (2d Cir. 2019) .......... 6, 8

*United States v. Google LLC*,
778 F. Supp. 3d 797 (E.D. Va. 2025) .......... 6

*United States v. National City Lines, Inc.*,
334 U.S. 573 (1948) .......... 9

*United States v. Visa U.S.A., Inc.*,
163 F. Supp. 2d 322 (S.D.N.Y. 2001) .......... 5

*Verizon Communications Inc. v. Law Offices of Curtis V. Trinko*,
540 U.S. 398 (2004) .......... 6

*Wang v. Nat'l Ass'n of Realtors*,
2025 WL 278819 (S.D.N.Y. Jan. 23, 2025) .......... 3

*Youngbloods v. BMG Music*,
2011 WL 43510 (S.D.N.Y. Jan. 6, 2011) .......... 9

*Zachman v. Hudson Valley Fed. Credit Union*,
2021 WL 1873235 (S.D.N.Y. May 10, 2021) .......... 4

*In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. and Versys Femoral Head Prods. Liab. Litig.*,
2021 WL 5963392 (S.D.N.Y. Dec. 16, 2021) .......... 5

## INTRODUCTION

The risk of multiple lengthy, duplicative, and potentially unnecessary trials requires a stay to protect the interests of the courts, the public, and non-parties.[1] Plaintiffs do not and cannot dispute that a reversal of the Virginia Action would upend the results of two jury trials. Instead, they claim that Google's motion should be denied because the Court already declined to stay these cases. That is not true. Google has never before sought to stay these cases for the simple reason that there was no reason to seek such relief. But now, with a trial date set and pretrial proceedings set to begin in another, the real risk of duplicative and potentially needless trials warrants a stay.

Undeterred, Plaintiffs attempt to replace the mandatory stay factors with their own assessment of the merits of Google's appeal. That assessment does not address the factors used by this court to evaluate the appropriateness of a stay. As Google demonstrated, each of the factors set forth in *Kappel v. Comfort* weigh in favor of a stay. 914 F. Supp. 1056 (S.D.N.Y. 1996). A stay would serve the Court's interest in judicial efficiency by eliminating the risk of conflicting, overlapping litigation. A stay would also serve the public interest by protecting the possibility of having to repeat trials here and in California, which would require multiple weeks of commitment from a second set of juries. Non-parties will similarly benefit from not being called as witnesses multiple times in the same proceeding. Finally, a stay does not prejudice Plaintiffs, as they can still pursue their claims and the monetary relief they admit they seek. For these reasons, the Court should stay Plaintiffs' cases.

---

[1] Terms not otherwise defined herein have the meaning ascribed to them in Google's Opening Brief ("Mot."), MDL Dkt. No. 2080. The brief filed by the Publisher Class, MDL Dkt. No. 2111 is "Pub. Br." and the brief filed by Daily Mail and Gannett, MDL Dkt. No. 2109 is "DMG Br."

# ARGUMENT

## I. Plaintiffs Have Not Rebutted That All *Kappel* Factors Weigh In Favor Of A Stay

Plaintiffs do nothing to undermine Google's showing that the *Kappel* factors support a stay: they do not show they will suffer any prejudice from a stay, nor do they engage with what would serve the "best interests of the courts and the public." *See* Mot. 8 (citation omitted).

### A. A Stay Will Not Prejudice Plaintiffs, Who Can Still Pursue Their Full Claims For Damages

Plaintiffs cannot credibly contest that their claims are just about monetary damages and that there is no prejudice in delaying potential recovery of such relief. *See* Mot. 20. Indeed, the Publisher Class confirms that "[t]he crux of [its] case is that Google has been depriving publishers of approximately ten percent of their advertising revenue," Pub. Br. 15, while Gannett and Daily Mail describe their claims as a "damages case," MDL Dkt. No. 1521 at 1. Plaintiffs nevertheless attempt to dress up their pursuit of money damages as prejudice. Their attempts fail.

First, Plaintiffs claim prejudice because a stay would purportedly delay their opportunity to obtain injunctive relief. This argument ignores that the Virginia Court's remedies are designed to address the competitiveness of the same "open-web display" publisher ad server and ad exchange markets that Plaintiffs also challenge. *See* Mot. 13. While Plaintiffs broadly assert that these remedies are inadequate, DMG Br. 9-10; Pub. Br. 16-17, they fail to articulate any additional relief necessary beyond what the Virginia Court found "sufficient" to "pry open" these markets. *See* Mot. 20-21 (citation omitted).[2] Nor can they, as Plaintiffs waited at least a decade to challenge some of the conduct at issue and have never sought preliminary injunctive relief. *See* Mot. 21;

[2] The Publisher Class incorrectly asserts it can seek injunctive relief in its alleged ad buying tool markets, pointing to the buy-side remedies ordered in the Virginia Action. *See* Pub. Br. 17 n.19. Unlike the government enforcers in the Virginia Action, the Publisher Class must prove that it has antitrust standing to pursue the equitable relief it seeks. *See* Mot. 21 n.4; *In re Am. Express Anti-Steering Rules Antitrust Litig.*, 19 F.4th 127, 138 (2d Cir. 2021).

MDL Dkt. No. 956 at 7 (describing conduct from 2008).

Second, Plaintiffs claim their ability to obtain damages is a basis for opposing a stay. Pub. Br. 15-16, DMG Br. 9. But Plaintiffs' burden of establishing that they are entitled to pre- and post-judgment interest is the same whether a trial occurs six months from now, a year from now, or later. *See CA, Inc. v. Network Sols. Provider, Inc.*, No. 17-CV-3623, 2018 WL 6834472, at *2 (E.D.N.Y. Dec. 28, 2018) ("The burden is on the plaintiff to demonstrate its entitlement to pre-judgment interest"); *see also* Mot. 20. Plaintiffs do not articulate how a stay would prejudice—or, indeed, has any impact whatsoever on—their ability to recover such damages. And if Plaintiffs believe the passage of time resulting from a stay is a basis for awarding pre- or post-judgment interest, they can make that application at the appropriate time.

Third, Plaintiffs argue that any delay attendant to a stay prejudices their claims. Pub. Br. 15-16, DMG Br. 9. They ignore that the "prejudice present in every stay" is not grounds to deny a stay. Mot. 20 n.3 (citation omitted); *see Wang v. Nat'l Ass'n of Realtors*, No. 24-CV-2371, 2025 WL 278819, at *1 (S.D.N.Y. Jan. 23, 2025) (extending stay pending appeal of related case because "the prejudice to Plaintiff from the delay is outweighed considerably by the other interests").

Finally, while Plaintiffs assert they are also acting on behalf of absent class members or as private attorneys general, Pub. Br. 20; DMG Br. 8, a stay does not impede these claimed roles. A stay does not remove from Gannett or Daily Mail the $1.5 billion "sword of Damocles," DMG Br. 9, let alone from the many other direct action plaintiffs seeking billions in damages and the coalition of 16 states in Texas. And because a "major agency of the United States," along with 17 other attorneys general, have already obtained "vindication of the public interest" in the Virginia Action, "there can be no doubt that the dominant purpose" of Plaintiffs in pursuing their claims "is to determine whether [they] should receive a sum of money." *SCM Corp. v. Xerox Corp.*, 77 F.R.D.

10, 14 (D. Conn. 1977). Absent class members are similarly not prejudiced by a stay because they, like Plaintiffs, seek monetary damages. *See* Mot. 20; *Zachman v. Hudson Valley Fed. Credit Union*, No. 20-CV-1579, 2021 WL 1873235, at *2 (S.D.N.Y. May 10, 2021) ("[A]ny delay in recouping [damages] caused by a stay, while inconvenient, would not inflict substantial injury on plaintiff and the putative class.").[3]

**B. Trying These Cases Risks Significant Burdens <u>On The Court, The Jury, And On Non-Parties</u>**

Plaintiffs do not rebut that, absent a stay, if Google prevails on even one issue before the Fourth Circuit, this Court will have to hold a second trial (should it not dismiss the cases). Mot. 18. These trials will each last multiple weeks and involve many witnesses and pre-trial motions. *See id*. Plaintiffs nevertheless claim the Preclusion Order creates "substantial trial efficiencies," Pub. Br. 19, and that a trial would be short, DMG Br. 5. Neither assertion is grounded in reality.

That the Preclusion Order has taken out of issue certain elements of Plaintiffs' case says nothing about the potential need to repeat trials and the burden on multiple courts and the public from that needless litigation. *See* Mot. 10-19. Indeed, the purported efficiencies Plaintiffs claim only underscore the linked nature of Plaintiffs' trials with the Virginia Action and, thus, the very real risk that Google's appeal poses to the finality of any verdict. *See id*. at 4-5.

Moreover, even with the Court's Preclusion Order, Plaintiffs will still need to prove, among other things, that they were harmed by Google's conduct, the extent to which they were harmed by the conduct, and that the additional conduct challenged by the Plaintiffs that was not addressed

[3] That some absent class members might hypothetically use any damages payout to grow their businesses can be said for almost any business plaintiff opposing a stay. *See* Pub. Br. 15. Courts nevertheless find no prejudice to business plaintiffs from delays in receiving money damages. *See*, *e.g.*, *OV Loop, Inc. v. Mastercard Inc.*, 2023 WL 7905690, at *7 (S.D.N.Y. Nov. 16, 2023) (finding that digital payment supplier hoping to develop a new competitor product was not prejudiced because a stay, at most, "only delay[ed] realization of [its claimed] damages").

by the Preclusion Order is anticompetitive. *See, e.g.*, Mot. 1-2 (antitrust standing), 13 (damages), 15 & n.2 (non-precluded conduct).[4] Complex antitrust trials routinely take over a month. *See, e.g.*, Mot. 15-16; *United States v. Visa U.S.A., Inc.*, 163 F. Supp. 2d 322 (S.D.N.Y. 2001) (thirty-four day antitrust trial). The damages evidence for Daily Mail and Gannett alone will require the presentation and explanation of at least seven different damages models. *See* MDL Dkt. No. 1832-2 (Second Revised Report of Ali Hortacsu) at ¶ 755 & Table 1; *see also id.* ¶¶ 98-124 (describing the multi-step, multi-assumption calculations of which a jury will need to weigh the credibility for just part of Gannett's and Daily Mail's claimed damages). To assess the additional product features Plaintiffs challenge, like Bernanke and EDA, the jury will need to hear detailed evidence from expert, party, and non-party witnesses concerning product design and auction theory.

Unable to dispute the significant inefficiency that a Fourth Circuit reversal would cause, Plaintiffs instead argue that Google is unlikely to win its appeal. *See* Pub. Br. 10-14; DMG Br. 7-8. But as the Publisher Class acknowledges, likelihood of success on appeal is not considered under the "more lenient *Kappel* factors." *In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. and Versys Femoral Head Prods. Liab. Litig.*, No. 18-MD-2859, 2021 WL 5963392, at *4 & n. 5 (S.D.N.Y. Dec. 16, 2021) (granting stay pending appeal of a related case under *Kappel* and "declin[ing] to consider . . . whether the [appellant] has made a strong showing that it is likely to succeed"); *see also* Pub. Br. at 7 (listing the *Kappel* factors). Nor does the Court need to predict the outcome of an appeal that Google has not yet briefed. What matters is that Google will challenge on appeal the rulings on which Plaintiffs' cases rest, and that a reversal of any of them would require these cases to be retried or dismissed. *See* Mot. 10-16. For

[4] The Publisher Class claims that the alleged Act 2 tie (DFP-AdX) refers to "the same conduct the EDVA court already found anticompetitive." *See* Pub. Br. 19. To the contrary, this Court found "[t]he claimed 'Act 2' tie is unique to the AdX Class, and no tying such claim was advanced in the E.D. Va. Action." MDL Dkt. No. 2041 at 8.

example, despite acknowledging that its analysis centered on Google's "refus[al] to implement real-time bidding outside of its ad tech infrastructure," *United States v. Google LLC*, 778 F. Supp. 3d 797, 867 (E.D. Va. 2025), the Virginia Court declined to properly apply the refusal-to-deal doctrine. *See Verizon Commc'ns Inc. v. Law Offices of Curtis V. Trinko*, 540 U.S. 398 (2004); Mot. 2, 12-13. And the court also declined to apply the legal framework for "two-sided" markets, despite the Supreme Court's guidance in *Ohio v. American Express Co.*, 585 U.S. 529 (2018). *See* Mot. 13-14. As the Second Circuit's decision in *Sabre* illustrates, an appellate ruling on such issues can undo the results of a lengthy antitrust jury trial. *See U.S. Airways, Inc. v. Sabre Hldgs. Corp.*, 938 F.3d 43 (2d Cir. 2019); Mot. 11-12.

## II. Plaintiffs Are Wrong That This Court Has Previously Rejected A Stay

Plaintiffs argue that this Court has "twice declined Google's requests to defer this litigation." DMG Br. 2; *see also* Pub. Br. 5-6 (similar). But Google has never sought a stay of these cases, and this Court has never adjudicated whether the *Kappel* test weighs in favor of a stay. Instead, the pre-motion letters and briefing concerned the applicability of collateral estoppel, not whether to stay trial proceedings. *See*, *e.g.*, MDL Dkt. Nos. 949, 951, 1080.

The Publisher Class's claim that Google's request is untimely, Pub. Br. at 5-6, 21, is irrelevant under the *Kappel* factors. *See* Pub. Br. 7 (listing factors). Setting that aside, Google's request is timely. The ultimate shape these cases would take for trial was not known until recently. For example, Google had not been able to bring its motion for summary judgment, nor had the Court resolved it, until after the Preclusion Order. With the cases proceeding toward trial, it is now clear that two courts, jurors, and witnesses will participate in trials which may need to be redone and that are potentially unnecessary. Despite the trimming of the cases from the class certification, collateral estoppel, and summary judgment orders, as well as the Plaintiffs' dismissals of certain

claims, any trials of these cases will be substantial endeavors that will put a burden on the court, the public, and non-parties. *See supra* pp. 4-5. With trials now certain, a stay has become appropriate because now all five *Kappel* factors weigh in support of a stay. *See* Mot. 10-21.

## III. Plaintiffs' Cases Do Not Rebut That Courts Routinely Grant Stays In Similar Circumstances

Courts routinely grant stays where the appeal of a first-decided case can significantly impact issues in a pending case. *See* Mot. 6-7. Plaintiffs nowhere rebut this. Indeed, Plaintiffs cite no decision where a court rejected the stay of a trial date in a pending action where a related, first-decided action is subject to appeal. Plaintiffs argue that the "possibility of appellate reversal does not outweigh the inefficiency" of staying their "nearly trial-ready litigation," Pub. Br. 18, and that "[s]taying a trial-ready case pending appeals in a different court is not the norm," DMG Br. 4. But Plaintiffs identify no actual inefficiency from a stay and fail to distinguish the cases where courts grant stays of "trial ready" cases based on appeals of related proceedings.

For example, in *In re American Express Anti-Steering Rules Antitrust Litigation*, the court vacated a private antitrust trial date four months away because of the potentially preclusive effect of a related government action that was on appeal. No. 11-MD-2221, 2016 WL 748089, at *6 (E.D.N.Y. Jan. 7, 2016) ("*Amex II*"). Plaintiffs attempt to distinguish *Amex II* on the basis that the appellate court there had stayed proceedings in the related government action. Pub. Br. 7-8. Judge Garaufis, however, did not identify the appellate court's stay as a basis for his decision. Instead, he concluded a stay was proper because "depending on the Second Circuit's resolution of the appeal of the Government Action," proceeding to trial "could, in fact, create inefficiencies." *Amex II*, 2016 WL 748089 at *6. The same reasoning applies here.

Similarly, in *Amazon.com, Inc. v. WDC Holdings LLC*, the court vacated a trial date only six weeks away because of the "significant and unnecessary burdens" of holding a second trial

because of a related appeal. No. 20-CV-484, 2023 WL 7272350, at *1 (E.D. Va. Aug. 30, 2023). Plaintiffs quibble that *Amazon* considers a plaintiff seeking a stay rather than a defendant, DMG Br. 7, but the same considerations apply to any appeal which could require a trial redo.[5]

Plaintiffs also strain to distinguish *Sabre*. The court there had to scrap the results of a nine-week antitrust jury trial because of the decision in a related appeal. Mot. 11-14. Plaintiffs argue that the issues in *Sabre* were "unsettled," Pub. Br. 18-19, that stays are inappropriate when premised on a vague hope that the law "someday becomes clearer," and that the jury in *Sabre* did not follow its instructions, DMG Br. 7. But the Preclusion Order in Plaintiffs' cases is similarly "unsettled" given the forthcoming appeal of the decision on which it relies. And the Fourth Circuit will rule on Google's forthcoming appeal, where that ruling will instruct whether the Preclusion Order should stand. Finally, the fact that the jurors seemingly did not follow the appropriate instructions in *Sabre* only emphasizes the difficulties lay jurors have ingesting complex antitrust theories (*e.g.*, two-sided markets) also present in this case.

Plaintiffs attempt to challenge the ample case law supporting a stay here by citing eight cases that denied a stay, all of which either predate the *Kappel* five-factor framework, rule on simple disputes, or did not involve an appeal of a first-decided action.[6] For example, *Petrella v.*

---

[5] Plaintiffs argue that *Koninklijke Philips N.V. v. ZOLL Medical Corp.* involved a different statute and permitted a different trial to move forward, Pub. Br. 18, n. 20; DMG Br. 6, but the court vacated a damages trial date less than two months away because the liability trial was on an interlocutory appeal. 77 F. Supp. 3d 255, 256 (D. Mass. 2015). Unlike here, the trial that proceeded in *ZOLL* did not rely on the prior liability trial that was on appeal. *See id.* at 256-257.

[6] *Microfinancial, Inc. v. Premier Holidays Int'l, Inc.*, *Harris v. Butler,* and *National Coalition on Black Civic Participation v. Wohl* either involve related criminal actions or were brought pro se and none are antitrust cases. *See* 385 F.3d 72, 78 (1st Cir. 2004); 961 F. Supp. 61, 63 (S.D.N.Y. 1997); No. 20-CV-8668, 2021 WL 694557, at *5 (S.D.N.Y. Feb. 22, 2021). Likewise, *GTFM, Inc. v. Park* ruled on a stay of the disposition of plaintiff's summary judgment motion, not trial; indeed, the *Park* court ultimately granted summary judgment and merely requested the parties provide a proper form of judgment rather than proceed to a trial. *See* No. 2-CV-7020, 2002 WL 31890940, at *2 (S.D.N.Y. Dec. 30, 2002). Similarly, *In re Blood Reagents Antitrust Litigation* rejected a stay of discovery, not trial. *See* 756 F. Supp. 2d 623, 633 (E.D. Pa. 2010). By contrast, the parties, court, and the public face the immediate and potentially wasteful burden of weeks-or-months-long trials that a stay would properly avert while Google's appeal on dispositive issues is pending with the Fourth Circuit.

*Siegel* did not evaluate a motion to stay at all. *See* 843 F.2d 87 (2d Cir. 1988). It instead ruled on claim preclusion in a "relatively straightforward due process claim;" the court never addressed collateral estoppel, the appropriateness of a stay, or the application of *Kappel* in a complex antitrust case like this. *See id.* at 88. *Sherman v. Jacobson* was also a straightforward dispute about a cattle and swine contract. *See* 247 F. Supp. 261, 263-264 (S.D.N.Y. 1965). The *Sherman* court never analyzed the *Kappel* factors, let alone applied them in a context as complex as here. Finally, *Pet Milk Co. v. Ritter* similarly did not analyze any of the *Kappel* factors (it predates *Kappel* by decades), let alone consider why the lower court denied a stay. *See* 323 F.2d 586 (10th Cir. 1963). Instead, the Tenth Circuit explained that mandamus is a "drastic" remedy and that the petitioner made "no clear showing of abuse of discretion." *Id.* at 588. The court in fact recognized the prudence of staying a trial "until the appeals involving identical questions are decided." *Id.*

The other cases offered by Plaintiffs are stretched beyond their facts. For example, Plaintiffs rely on *Youngbloods v. BMG Music* to argue that a defendant's "speculative assertions" related to its chances of winning its appeal cut against a stay. *See* No. 07-CV-2394, 2011 WL 43510, at *5 (S.D.N.Y. Jan. 6, 2011). But *Youngbloods* did not concern an appeal of a first-decided action. It concerned parallel district court proceedings where it was "speculative" whether the issue of contract rescission in one district court case would bind the other district court. *Id.* Unlike the "speculative" connection between the two cases in *Youngbloods*, here, this Court has made clear that a reversal of the Virginia Action would have significant consequences. *Id.*; *see also* Mot. 10-11. Similarly, Plaintiffs take *United States v. National City Lines, Inc.*, 334 U.S. 573 (1948) out of context in arguing that "the public is better served if antitrust cases reach a swift conclusion." *See* DMG Br. 8. Not only did that case never mention a motion to stay, but it also did not involve a parallel action on appeal, as these cases do.

### IV. In The Alternative, Postponement Is Appropriate Because Google's Trial Counsel Has Scheduling Conflicts

If the Court denies Google's request to stay, the Court should at least reschedule the Daily Mail and Gannett trial to no sooner than the second half of 2027 to protect Google's right to a defense from its chosen trial counsel, Karen Dunn, Bill Isaacson, and Jeannie Rhee, of Dunn Isaacson Rhee LLP. *See* Mot. 21.[7] Ms. Dunn, Mr. Isaacson, and Ms. Rhee served as Google's lead trial counsel in the Virginia Action, *see* E.D. Va. Dkt. No. 1350 at 4:22-5:10, the matter buttressing this Court's Preclusion Order and which is substantially related to the matters to be tried here. Depriving Google of its choice of counsel would be highly prejudicial to Google.

"Courts in this Circuit are highly reluctant to take action which would deprive a party of its choice of counsel." *Rossi v. Ferring Pharm.*, No. 15-CV-1367, 2016 WL 593440, at *5 (D. Conn. Feb. 12, 2016); *see also Macheca Transp. Co. v. Phila. Indem. Co.*, 463 F.3d 827, 833 (8th Cir. 2006) ("A party's right to select its own counsel is an important public right and a vital freedom that should be preserved."). Other factors courts consider do not counsel against adjournment. For example, as a trial date has just been set and pre-trial briefing has not ended, there are no "difficulties that would ensue for the Court, the plaintiff, witnesses, and jurors should this trial be adjourned." *Carroll v. Trump*, 669 F. Supp. 3d 249, 256 (S.D.N.Y. 2023).

## CONCLUSION

Google respectfully requests that the Court stay proceedings in the above-captioned cases pending resolution of the forthcoming appeal of the final judgment in the Virginia Action.

[7] Ms. Dunn, Mr. Isaacson and Ms. Rhee all have a trial scheduled for eight days in Delaware where jury selection begins April 8, 2027, and trial begins April 12, 2027. *Conduent State Healthcare, LLC v. AIG Specialty Ins. Co.*, No. N18C-12-074 MMJ CCLD (Del. Super. Ct.) (schedule set on Apr. 23, 2026). Ms. Dunn and Ms. Rhee also have a three-week jury trial scheduled in San Francisco, where the pretrial conference is set for April 20, 2027, and trial begins May 3, 2027. *See Entrepreneur Media, LLC v. Meta Platforms, Inc.*, No. 25-cv-09579, Dkt. No. 175 (N.D. Cal. Oct. 14, 2026). Finally, Ms. Dunn and Mr. Isaacson have a four-week jury trial scheduled in Seattle, where the pretrial conference is set for May 28, 2027, and trial begins June 14, 2027. *See De Coster v. Amazon.com, Inc.*, No. 2:21-cv-00693-JHC, Dkt. No. 445 (W.D. Wash. Oct. 9, 2025).

Dated: October 30, 2026

Respectfully Submitted,

Jeannie S. Rhee
Karen L. Dunn
William A. Isaacson
Martha L. Goodman
Jessica E. Phillips
Amy J. Mauser
DUNN ISAACSON RHEE LLP
401 Ninth Street, NW
Washington, DC 20004
Telephone: (202) 240-2900
jrhee@dirllp.com
kdunn@dirllp.com
wisaacson@dirllp.com
mgoodman@dirllp.com
jphillips@dirllp.com
amauser@dirllp.com

Erin J. Morgan
DUNN ISAACSON RHEE LLP
11 Park Place
New York, NY 10007
Telephone: (202) 240-2900
emorgan@dirllp.com

*<u>/s/ Bradley Justus</u>*
Bradley Justus
Allison Vissichelli
Axinn LLP
1901 L Street NW
Washington, DC 20036
Telephone: (202) 912-4700
bjustus@axinn.com
avissichelli@axinn.com

Craig M. Reiser
Christopher Erickson
Axinn LLP
630 Fifth Avenue
New York, NY 10111
Telephone: (212) 728-2218
creiser@axinn.com
cerickson@axinn.com

Justina K. Sessions**
FRESHFIELDS US LLP
855 Main Street
Redwood City, CA 94603
Telephone: (650) 618-9250
justina.sessions@freshfields.com

*Counsel for Defendants Google LLC, Alphabet Inc., and YouTube LLC*

***Except as to Associated Newspapers Ltd., et al. v. Google LLC, No. 1:21-cv-03446 (PKC)*