UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---------------------------------------------------------x

IN RE: GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION — 21-md-3010 (PKC)

ORDER

---------------------------------------------------------x

ASSOCIATED NEWSPAPERS LTD. and MAIL MEDIA, INC.,

Plaintiffs, — 21-cv-3446 (PKC)

-against-

GOOGLE LLC and ALPHABET INC.,

Defendants.

---------------------------------------------------------x

GANNETT CO., INC.,

Plaintiff, — 23-cv-5177 (PKC)

-against-

GOOGLE LLC and ALPHABET INC.,

Defendants.

---------------------------------------------------------x

IN RE: GOOGLE DIGITAL PUBLISHER ANTITRUST LITIGATION — 21-cv-7034 (PKC)

---------------------------------------------------------x

CASTEL, Senior District Judge:

Plaintiffs Gannett Co., Inc. ("Gannett"), Associated Newspapers Ltd. and Mail Media, Inc. (the "Daily Mail") and a group of publishers, including a certified class of publishers (the "Publishers"), have completed fact and expert discovery in their actions against Google LLC and Alphabet Inc. (collectively, "Google"). Among the many pretrial rulings in these actions, the Court has ruled on a motion for partial summary judgment by the plaintiffs and a motion for summary judgment by Google. The Court has set the Gannett and Daily Mail actions for trial for

April 5, 2027. In the coming months, the Court will likely issue a suggestion of remand of the Publishers' action to the transferor court, the Northern District of California.

Google has filed a motion to stay the above-captioned cases, citing its expected appeal of the yet-to-be-entered judgment in United States v. Google LLC, 23-cv-108 (LMB) (E.D. Va.) (the "E.D. Va. Action"), resulting from liability and remedy bench trials before Judge Brinkema of a related action brought by the Department of Justice and others. (ECF 2079.) Google points to inefficiencies that would arise in the event that the United States Court of Appeals for the Fourth Circuit reversed some portion of Judge Brinkema's findings and conclusions. It correctly notes that this Court granted partial summary judgment to Gannett, Daily Mail and the Publishers based upon certain of the findings and conclusions in the E.D. Va. Action. Plaintiffs have filed responses in opposition and Google has replied. (ECF 2109, 2111, 2125.) For the reasons that will be explained, the Court concludes that Google has not satisfied the standard for a stay and its motion will be denied. Google's application in the alternative to adjourn the April 5, 2027 trial date will be addressed in a separate Order.

"[T]he power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its docket with economy of time and effort for itself, for counsel, and for litigants." Landis v. North American Co., 299 U.S. 248, 254 (1936). "The person seeking a stay bears the burden of establishing its need." Louis Vuitton Malletier S.A. v. LY USA, Inc., 676 F.3d 83, 97 (2d Cir. 2012) (quotation marks omitted). Courts in this District often look to the factors used by Judge Mukasey in Kappel v. Comfort, 914 F. Supp. 1056, 1058 (S.D.N.Y. 1996), which are "(1) the private interests of the plaintiffs in proceeding expeditiously with the civil litigation as balanced against the prejudice to the plaintiffs if delayed; (2) the private interests of and burden on the defendants; (3) the interests of the courts;

(4) the interests of persons not parties to the civil litigation; and (5) the public interest." "[T]he Kappel test is widely applied in this District for determining whether or not to grant a stay pending an appeal." Est. of Heiser v. Deutsche Bank Tr. Co. Americas, 2012 WL 5039065, at *2 (S.D.N.Y. Oct. 17, 2012) (Nathan, J.) (collecting cases). "'[I]f there is even a fair possibility that the stay for which [the movant] prays will work damage to someone else,' the movant 'must make out a clear case of hardship or inequity in being required to go forward.'" TradeWinds Airlines, Inc. v. Soros, 2011 WL 309636, at *3 (S.D.N.Y. Feb. 1, 2011) (Keenan, J.) (quoting Landis, 299 U.S. at 255). The Second Circuit has declined to endorse a multi-factor test and instructed that a district court should make a "studied judgment . . . based on the particular facts before it and the extent to which such a stay would work a hardship, inequity, or injustice to a party, the public or the court." Louis Vuitton, 476 F.3d at 99.[1]

Over a year ago, this Court granted plaintiffs' motions for partial summary judgment and applied issue preclusion to certain findings of fact and conclusions of law in the E.D. Va. Action, specifically that separate antitrust product markets exist for publisher ad servers and ad exchanges, that those markets are worldwide in scope, that Google unlawfully tied the DoubleClick for Publishers ad server and the AdX ad exchange in violation of section 1 of the Sherman Act, and that Google's implementations of that product tie, First Look, Last Look, Dynamic Revenue Share and Unified Pricing Rules were anticompetitive conduct in support of the claim that Google willfully acquired and maintained monopoly power in the markets for ad

[1] The Kappel factors provide a "more lenient" standard for evaluating whether "to stay a case pending an appeal in a related, but separate case." In re Zimmer M/L Taper Hip Prosthesis or M/L Taper Hip Prosthesis with Kinectiv Tech. & Versys Femoral Head Prods. Liab. Litig., 2021 WL 5963392, at *4 (S.D.N.Y. Dec. 16, 2021) (Crotty, J.) (emphasis in original). The movant must meet a higher standard when it seeks a stay pending interlocutory appeal of its own case or a court's enforcement of its own order. Id. (citing Hilton v. Braunskill, 481 U.S. 770, 776 (1987) (considering "(1) whether the stay applicant has made a strong showing that he is likely to succeed on the merits; (2) whether the applicant will be irreparably injured absent a stay; (3) whether issuance of the stay will substantially injure the other parties interested in the proceeding; and (4) where the public interest lies.")).

servers and ad exchanges. In re Google Digital Advertising Antitrust Litig., 2025 WL 3012840, at *17 (S.D.N.Y. Oct. 27, 2025) ("Google III").

The possibility that the Fourth Circuit could reverse some portion of the findings and conclusions of the E.D. Va. Action does not warrant a stay of these proceedings. First, as discussed in Google III, an interlocutory order is "final" for issue preclusion purposes when the "'prior adjudication of an issue . . . is determined to be sufficiently firm to be accorded conclusive effect.'" 2025 WL 3012840, at *5-6 (quoting Restatement (Second) of Judgments § 13). In Google III, this Court explained why, under Second Circuit precedent and persuasive authority of this District, Judge Brinkema's findings and conclusions qualified as a final judgment for purposes of issue preclusion. See id. (collecting cases). Google III noted Google's ability to appeal Judge Brinkema's "findings and conclusions once final judgment is reached after the remedies trial." Id. at *6. "If the finding of liability in the E.D. Va. Action were to be reversed on appeal, Rule 60(b), Fed. R. Civ. P., would provide Google with a remedy in any MDL member case in which issue preclusion was applied." Id. This is consistent with the approach of a leading commentary, which observed that "[d]espite the manifest risks of resting preclusion on a judgment that is being appealed, the alternative of retrying the common claims, defenses, or issues is even worse." 18A Wright, Miller & Cooper, Federal Practice & Procedure Juris. § 4433 (3d ed. 2021).

A stay that turns on the exhaustion of appeals in the E.D. Va. Action would indefinitely delay plaintiffs' claims. As noted, final judgment has not been entered in the E.D. Va. Action. In Google's pre-motion letter on issue preclusion of May 2025, which was filed after Judge Brinkema issued the Memorandum Opinion on liability but before the Order on remedies, Google inaccurately predicted that the Fourth Circuit could issue its decision on an

expected appeal as early as July 2026. (ECF 977 at 6.) The parties have observed that the median time from notice of appeal to decision in the Fourth Circuit is eight or nine months (ECF 2109 at 3 n.1; ECF 977 at 6) but a median figure offers little insight for any individual case, particularly an action resolving monopolization, attempted monopolization and tying claims and the remedies for proven liability. In the event of a loss in the Fourth Circuit, Google's logic would inevitably lead to a request to continue the stay through certiorari proceedings. If the Court entered a stay contingent on resolution of Google's appeals, it could remain in effect for years.

Google cites a "real risk" that a jury trial could be "unwound because of errors in the Virginia Action decision." (Google Mem. at 1 (ECF 2080).) While the likelihood of success on appeal is not one of the Kappel factors, those factors are not definitive, and Google's assertion that there is a "real risk" of reversal requires consideration of the merits of its planned appeal. Google asserts that the appeal will be premised on what it calls the erroneous application of the refusal-to-deal principles set forth in Verizon Communications Inc. v. Law Offices of Curtis V. Trinko, LLP, 540 U.S. 398 (2004). Google argues that the finding of an anticompetitive tie between its ad exchange and ad server is contrary to Trinko because it has no obligation to integrate its products with those of its rivals. (See Google Mem. at 2, 12-13.) Judge Brinkema's Memorandum Opinion thoroughly considered and distinguished Trinko and concluded that its reasoning does not apply "to anticompetitive restraints that a monopolist places on its customers, as opposed to its competitors." United States v. Google LLC, 778 F. Supp. 3d 797, 865-67 (E.D. Va. 2025). Google then argued to this Court that Judge Brinkema's application of Trinko was inconsistent with Second Circuit authority because she pointed out that, unlike the product market at issue in Trinko, Google's ad-tech products were not in a highly regulated industry, a

distinction that the Fourth Circuit has called "important." See Google III, 2025 WL 3012840, at *12. This Court concluded that the analysis was not in tension with Second Circuit authority, noting that "[t]he Second Circuit held that Trinko does not require the existence of a regulated industry, an unremarkable conclusion consistent with Fourth Circuit law and [the] findings in the E.D. Va. Action." Google III, 2025 WL 3012840, at *13. Both Judge Brinkema and this Court have considered some version of Google's Trinko argument and concluded that they are without merit. Google has not identified a novel or unsettled issue of law or a "real risk" of reversal sufficient to support a stay.

Google's arguments for prejudice to it largely turns on the inefficiencies that would arise if it succeeded on appeal and plaintiffs' claims require re-trial. But Rule 60(b) relief remains available, and Gannett and Daily Mail, for their part, anticipate needing approximately 1-1/2 weeks to try their claims and estimate a total trial length of three weeks.[2] (ECF 2109 at 5.) The inefficiency of re-trying the case is less compelling than the prejudice that would arise to plaintiffs through an indefinite stay.

Staying these actions would substantially impede the individual cases of other publishers in the MDL, as to which the logic of Google's present stay application would likely apply. While discovery could proceed to conclusion, any attempt to decide summary judgment motions, set trial dates or suggest remand to a transferor court would likely be met with a similar stay application. The interest of the Court in managing the MDL in a timely, efficient and just manner weighs against granting a stay.

Plaintiffs argue that they would be prejudiced if recovery is delayed. Google has pointed to the availability of pre-judgment interest in the event that plaintiffs win at trial, but

[2] The Publisher Class and Mikula do not provide an estimated trial length.

plaintiffs counter that Google would likely oppose any motion for pre-judgment interest. The Publisher Class and Mikula point out that the Clayton Act sets a high bar for the award of pre-judgment interest, 15 U.S.C. § 15(a), and state that they are unaware of any reported case where pre-judgment interest was awarded to an antitrust plaintiff. (ECF 2111 at 16 & n. 18.) Gannett and Daily Mail assert that practices like Enhanced Dynamic Allocation and Project Bernanke cause them ongoing injury and that they continue to be harmed by Google's purported supracompetitive take rate. Plaintiffs point out that their actions were brought respectively in 2020, 2021 and 2023 and argue that given the longevity of these cases they would be prejudiced by entry of a stay. Plaintiffs' assertions of prejudice are persuasive.

The public interest in expeditious enforcement of the antitrust laws weighs against the stay. The possibility that a non-party witness could be called upon to testify a second time weighs slightly in favor of the stay. A retrial would mean that the work of an empaneled jury on a three-week trial may need to be redone and this factor weighs slightly in favor of a stay.

Having considered and weighed the parties' arguments, the Kappel factors, and the particulars of this case as instructed by Luis Vuitton, Google's motion to "stay all proceedings in the above-captioned matters during the pendency of Google's forthcoming appeal" of the E.D. Va. Action (ECF 2079) is DENIED.

SO ORDERED.

P. Kevin Castel
United States District Judge

Dated: New York, New York
November 5, 2026