**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| IN RE GOOGLE DIGITAL ADVERTISING ANTITRUST LITIGATION | Case No. 1:21-md-03010 (PKC) |
| *This Document Relates To:* | |
| ASSOCIATED NEWSPAPERS LTD. and MAIL MEDIA, INC., *Plaintiffs*, -against- GOOGLE LLC and ALPHABET INC., *Defendants*. | Case No. 1:21-cv-03446 (PKC) |
| GANNETT CO., INC., *Plaintiff*, -against- GOOGLE LLC and ALPHABET INC., *Defendants*. | Case No. 1:23-cv-05177 (PKC) |

**PLAINTIFFS DAILY MAIL AND USA TODAY'S OMNIBUS**
**MEMORANDUM OF LAW IN SUPPORT OF THEIR MOTIONS IN LIMINE**

# TABLE OF CONTENTS

**Page**


TABLE OF AUTHORITIES ........ ii

INTRODUCTION ........ 1

LEGAL STANDARD ........ 1

ARGUMENT ........ 2

I. MIL #1: The Court Should Exclude Evidence and Argument That Judge Brinkema Already Heard and Rejected ........ 2

II. MIL #2: Google Should Be Excluded from Offering Evidence or Argument About Daily Mail's Website Content, USA Today's Merger with GateHouse Media, and USA Today's Advertising Inventory Practices ........ 11

- A. Evidence Concerning Daily Mail's Content Choices and USA Today's Management Decisions Is Irrelevant ........ 12
- B. Evidence Concerning Daily Mail's Content Choices and USA Today's Management Decisions Would Violate Rule 403 ........ 14

III. MIL #3: Evidence and Argument Concerning Legal Fee Arrangements, Costs, Attorneys' Fees, and Post-Verdict Trebling Should Be Excluded ........ 16

IV. MIL #4: Google Should Be Precluded from Mentioning DOJ's Failure To Prove the Existence of an Advertiser Ad Network Market ........ 17

V. MIL #5: The Court Should Prohibit Google from Raising a Waiver Defense ........ 19

VI. MIL #6: Google Should Be Precluded from Raising Its Antitrust Standing Defense at Trial ........ 21

VII. MIL #7: Google Should Be Precluded from Mentioning the Damages Sought in Other Ad Tech Monopolization Cases Against Google ........ 22

CONCLUSION ........ 25

## TABLE OF AUTHORITIES

Page

**CASES**

*Air Disaster at Lockerbie Scotland on Dec. 21, 1988*, *In re*, 37 F.3d 804 (2d Cir. 1994) ... 14, 15

*American Express Merchants' Litig.*, *In re*, 634 F.3d 187 (2d Cir. 2011) ... 20

*Apple Inc. v. Pepper*, 587 U.S. 273 (2019) ... 22

*Arlio v. Lively*, 474 F.3d 46 (2d Cir. 2007) ... 23

*Belgravia Hartford Gold Assets Corp. v. PolyNatura Corp.*, 813 F. Supp. 3d 1250 (D.N.M. 2025) ... 23

*Bentley v. Highlands Hosp. Corp.*, 2016 WL 5867496 (E.D. Ky. Oct. 6, 2016) ... 24

*Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251 (1946) ... 13

*Broadspring, Inc. v. Congoo, LLC*, 2014 WL 7392905 (S.D.N.Y. Dec. 29, 2014) ... 19

*Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477 (1977) ... 12

*Carroll v. Trump*, 2024 WL 97359 (S.D.N.Y. Jan. 9, 2024) ... 3, 4

*DDAVP Direct Purchaser Antitrust Litig.*, *In re*, 585 F.3d 677 (2d Cir. 2009) ... 12

*Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506 (9th Cir. 1985) ... 13

*ESPN, Inc. v. Off. of Comm'r of Baseball*, 76 F. Supp. 2d 383 (S.D.N.Y. 1999) ... 19

*Falise v. American Tobacco Co.*, 2000 WL 1804602 (E.D.N.Y. Nov. 30, 2000) ... 16

*Figueroa v. Boston Sci. Corp.*, 2003 WL 21488012 (S.D.N.Y. June 27, 2003) ... 18

*General Motors LLC Ignition Switch Litig.*, *In re:*, 2015 WL 8270427 (Dec. 7, 2015), *corrected*, 2015 WL 9480477 (S.D.N.Y. Dec. 29, 2015) ... 16

*Golden Pac. Bancorp v. FDIC*, 273 F.3d 509 (2d Cir. 2001) ... 20

*GSE Bonds Antitrust Litig.*, *In re*. 414 F. Supp. 3d 686 (S.D.N.Y. 2019) ... 17

*Hawaii Foodservice All., LLC v. Meadow Gold Dairies Hawaii, LLC*, 2024 WL 3567671 (D. Haw. July 29, 2024) ... 3

*HBE Leasing Corp. v. Frank*, 22 F.3d 41 (2d Cir. 1994) ... 17

*IceMOS Tech. Corp. v. Omron Corp.*, 2020 WL 289505 (D. Ariz. Jan. 21, 2020) ... 3

*Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195 (9th Cir. 1997) .......................... 13

*Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2 (1984) .......................................................... 6

*Jones v. New York City Health & Hosp. Corp.*, 2003 WL 21262087 (S.D.N.Y. May 29, 2003) .......................................................................................... 3

*Luce v. United States*, 469 U.S. 38 (1984) ........................................................................................ 1

*Mehta v. DLA Piper LLP*, 2026 WL 836677 (S.D.N.Y. Mar. 26, 2026) ...................................... 24

*MGI Digit. Tech. S.A. v. Duplo U.S.A. Corp.*, 2024 WL 655481 (C.D. Cal. Jan. 26, 2024) ........................................................................................ 16

*Moon v. Hy-Vee, Inc.*, 351 S.W.3d 279 (Mo. Ct. App. 2011) ...................................................... 23

*MTBE Prods. Liab. Litig.*, *In re*, 2014 WL 494522 (S.D.N.Y. Feb. 6, 2014) ............................... 21

*National Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co. Grp.*, 937 F. Supp. 276 (S.D.N.Y. 1996) ....................................................................................... 13

*Palmieri v. Defaria*, 88 F.3d 136 (2d Cir. 1996) ............................................................................. 1

*Panelle v. Chicago Transit Auth.*, 202 N.E.2d 484 (Ill. 1964) ...................................................... 24

*Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314 (S.D.N.Y. 2009) ..................... 15

*PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101 (2d Cir. 2002) ...................................................... 13

*Quinton v. American Express Co.*, 2025 WL 1384896 (May 13, 2025), *modified in part on recon.*, 2025 WL 1994848 (E.D.N.Y. July 17, 2025) ........................ 16

*Ragin v. Newburgh Enlarged City Sch. Dist.*, 2011 WL 2183175 (S.D.N.Y. June 3, 2011) ........................................................................................ 18

*Raniola v. Bratton*, 2002 WL 31388715 (S.D.N.Y. Oct. 22, 2002) ............................................. 23

*Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, *In re*, 335 F.R.D. 1 (E.D.N.Y. 2020) ............................................................................................ 12

*Theatre Techniques, Inc. v. United Scenic Artists, Local 829*, 1980 WL 2151 (S.D.N.Y. June 27, 1980), *aff'd mem.*, 671 F.2d 493 (2d Cir. 1981) ............................... 17

*Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724 (2d Cir. 1998) ........................... 4, 11

*United States v. Alcan Aluminum Corp.*, 990 F.2d 711 (2d Cir. 1993) .......................................... 4

*United States v. Google LLC*, 778 F. Supp. 3d 797 (E.D. Va. 2025) ........... 2, 5, 6, 8, 9, 10, 12, 18

*United States v. Quattrone*, 441 F.3d 153 (2d Cir. 2006) ................................................................ 1

*United States v. Topco Assocs., Inc.*, 405 U.S. 596 (1972)....................18

*Valassis Commc'ns, Inc. v. News Corp.*, No. 17-cv-07378 (S.D.N.Y. Sept. 27, 2019), Dkt. No. 298....................1

*Waldorf v. Shuta*, 3 F.3d 705 (3d Cir. 1993)....................23

*Wechsler v. Hunt Health Sys., Ltd.*, 1999 WL 672902 (S.D.N.Y. Aug. 27, 1999)....................20, 22

**STATUTES AND RULES**

Clayton Act, 15 U.S.C. § 12 *et seq.*

§ 4(a), 15 U.S.C. § 15(a)....................17

Sherman Act, 15 U.S.C. § 1 *et seq.*:

§ 1, 15 U.S.C. § 1....................12, 13

§ 2, 15 U.S.C. § 2....................12, 13

Fed. R. Civ. P.:

Rule 12(f)....................19

Rule 26(a)(2)....................24

Rule 26(e)....................20

Fed. R. Evid.:

Rule 401....................1, 3, 11, 17, 22, 23

Rule 402....................1, 11, 17, 22

Rule 403....................1, 11, 14, 17, 18, 19, 22

**OTHER AUTHORITIES**

Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* (4th ed. 2016)....................12, 18

## INTRODUCTION

Pursuant to the Court's Order on October 2, 2026, Plaintiffs Associated Newspapers Ltd., Mail Media, Inc. (together "Daily Mail") and Gannett Co., Inc. (now known as "USA Today") submit these motions in limine to exclude certain inadmissible evidence.[1]

## LEGAL STANDARD

A district court may "exclude anticipated prejudicial evidence before the evidence is actually offered." *Luce v. United States*, 469 U.S. 38, 40 n.2, 41 n.4 (1984). "The purpose of an in limine motion is 'to aid the trial process by enabling the Court to rule in advance of trial on the relevance of certain forecasted evidence, as to issues that are definitely set for trial, without lengthy argument at, or interruption of, the trial.' " *Palmieri v. Defaria*, 88 F.3d 136, 141 (2d Cir. 1996) (citation omitted).

"Evidence is relevant if: (a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action." Fed. R. Evid. 401. "Irrelevant evidence is not admissible." Fed. R. Evid. 402. Even relevant evidence may be excluded "if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence." Fed. R. Evid. 403. Evidence is unfairly prejudicial when "it could unduly inflame the passion of the jury, confuse the issues before the jury, or inappropriately lead the jury to [decide] on the basis of conduct not at issue in the trial." *United States v. Quattrone*, 441 F.3d 153, 186 (2d Cir. 2006).

---

[1] Consistent with the practice the Court adopted in *Valassis Communications, Inc. v. News Corp.*, No. 17-cv-07378 (PKC), Plaintiffs submit a single memorandum of law in support of their evidentiary motions in limine. *See* Order, *Valassis Commc'ns, Inc. v. News Corp.*, No. 17-cv-07378 (S.D.N.Y. Sept. 27, 2019), Dkt. No. 298. Plaintiffs proposed this procedure to Google on October 23, 2026. Google responded that negotiation of pre-trial procedures was "premature" in light of its motion to stay. *See* MDL Dkt. No. 2080.

## ARGUMENT

### I. MIL #1: The Court Should Exclude Evidence and Argument That Judge Brinkema Already Heard and Rejected

After the liability trial in the E.D. Va. Action, Google proposed that Judge Brinkema make several findings of fact and conclusions of law. *See United States v. Google LLC*, No. 1:23-cv-00108 (E.D. Va. Nov. 4, 2024), Dkt. Nos. 1375 & 1375-1. Google repeatedly cited the expert testimony of Dr. Mark Israel and Prof. Paul Milgrom to support those proposed findings. *See*, *e.g.*, E.D. Va. Dkt. No. 1375 ("E.D. Va. Google Proposed Findings") at 267-68 ¶¶ 528-530 (citing Dr. Israel's testimony on market definition); *id.* at 426-29 ¶¶ 903-915 (citing Prof. Milgrom's testimony on First Look). Google also cited testimony from several current or former employees. *See*, *e.g.*, *id.* at 455-58 ¶¶ 967-977 (citing Nitish Korula's testimony on Dynamic Revenue Share). Judge Brinkema considered this testimony, rejected it, and ruled for the U.S. Department of Justice ("DOJ"). *See*, *e.g.*, *United States v. Google LLC*, 778 F. Supp. 3d 797, 843 (E.D. Va. 2025) ("E.D. Va. Decision") (rejecting Dr. Israel's testimony on market definition); *id.* at 870 (rejecting Prof. Milgrom's testimony on Last Look); *id.* at 830-31 (rejecting Mr. Korula's testimony on Unified Pricing Rules). In granting issue preclusion, this Court held that "Google is precluded from relitigating, inclusive of the balancing of procompetitive benefits and anticompetitive effects," several "findings and conclusions in the E.D. Va. Action." MDL Dkt. No. 1219 at 32 ("Issue Preclusion Order").

In this case, Google again discloses Dr. Israel and Prof. Milgrom as its market-definition and liability experts. They offer the same opinions as they did in Virginia. Both admitted that portions of their expert reports in the E.D. Va. Action appear in their reports in this case. Google is also likely to call fact witnesses whose testimony Judge Brinkema already heard and rejected. It would waste the Court's and the jury's time for Google to repeat its Virginia case. Such

testimony would not make any fact of consequence more or less likely, *see* Fed. R. Evid. 401, because it would be relevant only to issues that are preclusively decided. Accordingly, Google should be "precluded . . . from offering testimony or advancing any argument inconsistent with the Court's collateral estoppel decision," *Carroll v. Trump*, 2024 WL 97359, at *7 (S.D.N.Y. Jan. 9, 2024), including testimony and argument that Judge Brinkema already heard and rejected.

### A. Testimony That Relitigates Precluded Issues Is Irrelevant

When a legal issue has been conclusively decided, evidence inconsistent with that decision is irrelevant. *See*, *e.g.*, *IceMOS Tech. Corp. v. Omron Corp.*, 2020 WL 289505, at *3 (D. Ariz. Jan. 21, 2020) (finding that "[e]vidence that is relevant only to" an issue on which a litigant was granted partial summary judgment "is not probative of any fact of consequence in the action"); *see also Jones v. New York City Health & Hosp. Corp.*, 2003 WL 21262087, at *1 (S.D.N.Y. May 29, 2003) (precluding a party "from submitting evidence at trial" relevant only to a claim lost at summary judgment). Accordingly, courts prohibit litigants from presenting evidence inconsistent with a prior, binding determination. For example, in *Hawaii Foodservice Alliance, LLC v. Meadow Gold Dairies Hawaii, LLC*, 2024 WL 3567671 (D. Haw. July 29, 2024), the court precluded an expert from presenting surveys about consumer confusion claims the plaintiff lost at summary judgment. Such testimony was "not relevant to the remaining claims" for trial "and thus must be excluded." *Id.* at *3.

Courts in this District likewise exclude evidence relevant only to precluded issues. In *Carroll*, the plaintiff alleged that the defendant sexually assaulted her, and she sued the defendant for defamation when he claimed the allegation was fabricated. 2024 WL 97359, at *1. In a separate case, the plaintiff sued the defendant for sexual assault and won a trial for damages. *Id.* at *6. The court granted that jury verdict preclusive effect in the defamation action, and "precluded [the defendant] from offering any testimony, evidence, or argument suggesting or

implying that" the findings from the first jury trial were incorrect. *Id.* at *7. The court reasoned the defendant was "precluded by collateral estoppel and the Court's partial summary judgment ruling from contending in this trial that [the plaintiff] fabricated her charge." *Id.* at *6. That approach delivers the full benefit of issue preclusion: "to protect parties from having to relitigate identical . . . issues and to promote judicial economy." *Transaero, Inc. v. La Fuerza Aerea Boliviana*, 162 F.3d 724, 731 (2d Cir. 1998); *see also United States v. Alcan Aluminum Corp.*, 990 F.2d 711, 719 (2d Cir. 1993) (issue preclusion "saves parties and the courts from the waste and burden of relitigating stale issues").

### B. Google's Witnesses Are Likely To Repeat E.D. Va. Testimony That Judge Brinkema Already Rejected

Based on depositions and Google's expert reports, Google apparently intends to present evidence already considered and rejected by Judge Brinkema, and which is relevant only to precluded issues. Dr. Israel conceded that "some of [his] report [in this case] comes out of the Eastern District of Virginia case, and so those pieces were drafted a couple of years" beforehand. MDL Dkt. No. 2106-4 at 662:20-663:3 (Apr. 1, 2025 Israel Dep. Tr.). And Prof. Milgrom agreed some of "the same work appeared in both reports." MDL Dkt. No. 2102-6 at 308:12-19 (Apr. 17, 2025 Milgrom Dep. Tr.). Plaintiffs identify here specific examples of Google's witnesses offering irrelevant testimony in this case on market definition, geographic scope, the DFP-AdX tie, Last Look, Dynamic Revenue Share, and Unified Pricing Rules. Such testimony should be excluded, as well as any other testimony that contradicts the E.D. Va. Decision and seeks to relitigate issues already decided against Google.

***Market definition.*** Google's retained expert, Dr. Israel, opines in this case that "the ad tech industry is, as a matter of economics, a two-sided transaction market (with advertisers on one side and publishers on the other)." MDL Dkt. No. 1464-1 at 19 ¶ 45 (Dec. 13, 2024 Israel

Rep.) (together with MDL Dkt. Nos. 1464-2 to 1464-4, "Israel Rep."). Dr. Israel made the same argument in the E.D. Va. Action. *See* E.D. Va. Google Proposed Findings at 270 ¶ 536 (citing Dr. Israel's trial testimony and asking Judge Brinkema to find that "the ad tech industry . . . should be analyzed as a single two-sided market . . . that facilitates connections between advertisers and impressions on publishers' pages or apps"). Judge Brinkema rejected it: "Google cites its market expert Dr. Israel, who testified that any analysis of competition within the ad tech industry should be conducted using a single two-sided market. . . . The Court finds this argument unpersuasive." E.D. Va. Decision, 778 F. Supp. 3d at 843-44; *see also Ohio v. Am. Express Co.*, 585 U.S. 529, 544 (2018) ("[T]he market for newspaper advertising behaves much like a one-sided market and should be analyzed as such.").

The Court should exclude Dr. Israel's market-definition testimony, and other similar testimony, because it is relevant only to a precluded issue. This Court decided that "Google is precluded from relitigating . . . the existence of separate and distinct markets for publisher ad servers and ad exchanges." Issue Preclusion Order at 32. Dr. Israel's and related testimony serves no purpose other than to contradict that decision. It is therefore irrelevant.

***Geographic scope.*** Dr. Israel opines in this case that "[a] geographic market limited to the United States is appropriate." Israel Rep. at 30 ¶ 56. Google offered the same testimony to Judge Brinkema in its post-trial findings of fact: "The relevant geographic market is the United States." E.D. Va. Google Proposed Findings at 349 ¶ 703 (citing Dr. Israel's testimony). Judge Brinkema found Dr. Israel's argument "unpersuasive" and held that the geographic markets for ad servers and ad exchanges are worldwide. E.D. Va. Decision, 778 F. Supp. 3d at 848-49.

The Court should exclude Dr. Israel's geographic-scope testimony, and other similar testimony, because it is relevant only to a precluded issue. This Court decided that "Google is

precluded from relitigating . . . that the ad server and ad exchange markets are worldwide in scope." Issue Preclusion Order at 32. Dr. Israel's and related testimony serves no purpose other than to contradict that decision. It is therefore irrelevant.

***The DFP-AdX tie.*** Dr. Israel opines in this litigation that DFP and AdX are not tied because "[p]ublishers *can* access demand from AdX (including real-time demand from AdX) without using DFP (via AdX Direct)." Israel Rep. at 438 ¶ 637. Google's fact witnesses have offered similar testimony. *See*, *e.g.*, MDL Dkt. No. 1032-9 at 20 ¶ 62 (Nov. 15, 2024 Korula Decl.) ("Korula Decl.") ("Publishers using third-party publisher ad servers or in-house ad servers can access real-time demand from AdX using AdX Direct.").

Google proposed an almost identical finding of fact to Judge Brinkema in support of its argument that DFP and AdX were not tied: "Publishers can access AdX without DFP by using AdX Direct tags." E.D. Va. Google Proposed Findings at 415 ¶ 871. Judge Brinkema rejected Google's argument and found that DFP and AdX were unlawfully tied together:

> Google argues that . . . those [publishers] that used DFP did not necessarily have to use AdX. But by prohibiting publishers that used a non-DFP ad server from having access to the essential AdX feature of real-time bidding by AdWords advertisers, Google effectively has "coerced the abdication of publishers' independent judgment as to the tied product's merits and insulated it from the competitive stresses of the open market."

E.D. Va. Decision, 778 F. Supp. 3d at 862 (quoting *Jefferson Par. Hosp. Dist. No. 2 v. Hyde*, 466 U.S. 2, 13 (1984)) (cleaned up). Specifically, regarding "AdX Direct," Judge Brinkema found:

> [It] was not an "economically viable substitute to accessing AdX through DFP" because it had rudimentary functionality, did not show the price that AdX was offering, did not provide access to real-time bids, increased latency, and did not permit publishers to place bids from AdX into real-time auctions with bids from other exchanges.

*Id.* at 825 n.16.

The Court should exclude testimony, whether from Dr. Israel, Mr. Korula, or other witnesses, that Daily Mail and USA Today could access real-time bids from AdX without DFP. The Court decided that "Google is precluded from relitigating, inclusive of the balancing of procompetitive benefits and anticompetitive effects, . . . that Google has unlawfully tied DoubleClick for Publishers and AdX." Issue Preclusion Order at 32. Fact or expert testimony that there is no tie, including any argument regarding AdX Direct, serves no purpose other than to contradict the Court's decision. It is therefore irrelevant and should not be presented at trial.

***Last Look.*** Prof. Milgrom opines in this case that Last Look was not anticompetitive and benefited publishers because it was "a consequence of the way that some publishers configured header bidding," and because "publishers could set higher floor prices across all impressions to account for the so-called 'Last Look' of AdX." MDL Dkt. No. 2102-7 at 356 ¶ 478, 359 ¶ 480(b) (Dec. 13, 2024 Milgrom Rep.) ("Milgrom Rep."); *see also* Israel Rep. at 487 ¶ 716 n.1025 (discussing Last Look). Other Google witnesses have offered similar testimony. *See, e.g.*, Korula Decl. at 11 ¶ 29 (declaring that Last Look "was the result of . . . the way that publishers configured Header Bidding line items to work with Dynamic Allocation").

In Virginia, Google relied on Prof. Milgrom's and Mr. Korula's testimony to support similar findings of fact. Google proposed that "[p]ublishers who ran header bidding auctions chose what to do with the winning header bid" and that "publishers not only could set higher price floors on AdX, but were incentivized to make the AdX floor price higher than what they were guaranteed to get from header bidding." E.D. Va. Google Proposed Findings at 443 ¶ 939, 447 ¶ 950.

Judge Brinkema considered Google's claim that "Last Look was procompetitive because publishers using header bidding could choose not to request a bid from AdX, and so they would

only activate Last Look if doing so increased their revenue." E.D. Va. Decision, 778 F. Supp. 3d at 870 (citing Prof. Milgrom's testimony). She rejected it: "[G]iven AdX's monopoly power in the ad exchange market," "it was not financially viable for large publishers to forgo using AdX and the access it offered to the unique advertising demand from AdWords." *Id.* She further found that "Last Look also harmed publishers using DFP, who were not compensated as much as they would have been for their inventory had Google's AdX demand been required to compete with third-party exchanges (i.e., non-Google exchanges) on a level playing field." *Id.* at 829.

The Court should exclude testimony from Prof. Milgrom, Mr. Korula, or other witnesses that Last Look benefited publishers and was not anticompetitive. The Court decided that "Google is precluded from relitigating, inclusive of the balancing of procompetitive benefits and anticompetitive effects," that Last Look supports Daily Mail and USA Today's claim that Google "willfully acquired and maintained its monopoly power in the . . . ad exchange market[ ]." Issue Preclusion Order at 32. Fact or expert testimony that Last Look was procompetitive or beneficial to publishers serves no purpose other than to contradict the Court's decision. It is therefore irrelevant and should not be presented at trial.

***Dynamic Revenue Share.*** Prof. Milgrom opines in this litigation that Dynamic Revenue Share is procompetitive because it "primarily affected impressions that would otherwise have remained unsold, unequivocally benefitting publishers." Milgrom Rep. at 449-50 ¶ 613. Dr. Israel similarly opines that Dynamic Revenue Share was introduced as a "procompetitive change[ ] to AdX policies" to address "an outcome" in which "impression[s] would not be sold and output would be reduced." Israel Rep. at 504 ¶ 749. Google's internal documents produced in this case and submitted to the Court contain similar talking points. *See*, *e.g.*, MDL Dkt. No. 1464-27 at 2 ("Dynamic Revenue Share" communications document updated January 29, 2020,

submitted in support of Google's Motion for Summary Judgment on the Publisher Class's claims) (Dynamic Revenue Share allows "more auctions [to] end with a winning buyer").

Google proposed the same factual finding to Judge Brinkema: "Google launched sell-side DRS in order to facilitate additional matches for impressions that would otherwise have gone unsold, which would benefit advertisers and publishers and increase Google's revenue." E.D. Va. Google Proposed Findings at 453 ¶ 965. Judge Brinkema rejected Google's argument, finding Dynamic Revenue Share anticompetitive:

> Google argues that sell-side dynamic revenue share helped create matches for impressions that would not have sold to any advertisers without it. But the primary purpose of sell-side dynamic revenue share was to outbid rival exchanges by using AdX's anticompetitive Last Look advantage.

E.D. Va. Decision, 778 F. Supp. 3d at 870.

The Court should exclude testimony from Prof. Milgrom, Mr. Korula, or other witnesses that Dynamic Revenue Share benefited publishers and was not anticompetitive. The Court decided that "Google is precluded from relitigating, inclusive of the balancing of procompetitive benefits and anticompetitive effects," that Dynamic Revenue Share supports Daily Mail and USA Today's claim that Google "willfully acquired and maintained its monopoly power in the . . . ad exchange market[ ]." Issue Preclusion Order at 32. Fact or expert testimony that Dynamic Revenue Share was procompetitive or beneficial to publishers serves no purpose other than to contradict the Court's decision. It is therefore irrelevant and should not be presented at trial.

***Unified Pricing Rules.*** Prof. Milgrom opines in this litigation that Unified Pricing Rules ("UPR") are procompetitive because they "protected advertisers from" "the possibility of price-fishing" and because they "simplified the publisher's process of setting floor prices." Milgrom Rep. at 526 ¶ 733, 527 ¶ 734. Dr. Israel offers similar testimony. *See*, *e.g.*, Israel Rep. at 517 ¶ 775 ("Another way in which UPR benefited advertisers was by protecting them from

publishers engaging in the 'price-fishing' tactic."), 521 ¶ 781 ("[T]he move to UPR substantially simplified the floor-setting process for publishers."). So, too, have other Google witnesses. *See, e.g.*, Korula Decl. at 19 ¶ 56 (declaring that, before UPR, "publishers had to undertake the complex and time-consuming task of configuring pricing floors separately on each exchange and network where their inventory was available").

After the E.D. Va. liability trial, Google proposed the factual finding that "UPR was a way to deal with the issue of price fishing" and that "UPR also provided benefits to publishers by simplifying the incredibly complex system for setting pricing floors that previously existed." E.D. Va. Google Proposed Findings at 480 ¶ 1033, 481 ¶ 1035 (citing Prof. Milgrom's testimony). Judge Brinkema considered Google's arguments that "Unified Pricing Rules established a level playing field for advertisers, simplified the ad tech bidding landscape for publishers, improved matches, and increased publisher revenue." E.D. Va. Decision, 778 F. Supp. 3d at 870. She rejected them: there was "strong evidence that Google implemented Unified Pricing Rules to enhance the AdX-DFP tie, and not for its proffered justifications." *Id.* at 871. Moreover, she found that UPR "decreas[ed] impressions won and revenue received by third-party exchanges." *Id.* at 831.

The Court should exclude testimony from Prof. Milgrom, Mr. Korula, or other witnesses that UPR benefited publishers and was not anticompetitive. The Court decided that "Google is precluded from relitigating, inclusive of the balancing of procompetitive benefits and anticompetitive effects," that UPR supports Daily Mail and USA Today's claim that Google "willfully acquired and maintained its monopoly power in the . . . ad exchange market[ ]." Issue Preclusion Order at 32. Testimony that UPR was procompetitive or beneficial to publishers

serves no purpose other than to contradict the Court's decision. It is therefore irrelevant and should not be presented at trial.

* * *

The benefit of issue preclusion is to "protect parties from having to relitigate identical . . . issues and to promote judicial economy." *Transaero*, 162 F.3d at 731. Consistent with the case law in this District and elsewhere, the Court also should preclude Google from presenting any evidence or argument that Judge Brinkema already considered and rejected, and which is relevant only to a precluded issue.

## II. MIL #2: Google Should Be Excluded from Offering Evidence or Argument About Daily Mail's Website Content, USA Today's Merger with GateHouse Media, and USA Today's Advertising Inventory Practices

The Court should exclude evidence and argument regarding three claims that Google unsuccessfully offered at summary judgment: (1) Daily Mail's websites feature " 'salacious, explicit, and violent' content similar to that of 'irreputable tabloids' "; (2) USA Today undertook the "Hail Mary play" of merging with GateHouse Media; and (3) USA Today "failed to properly offer its advertising inventory for sale on multiple occasions." MDL Dkt. No. 2041 at 44. In denying summary judgment, the Court found these claims have "no discernable relationship to" Daily Mail's and USA Today's "claimed Sherman Act damages." *Id*. Nor do they bear any relationship to the other elements of their claims or Google's defenses. Such evidence is therefore irrelevant, *see* Fed. R. Evid. 401, 402, and introducing it would confuse the jury, *see* Fed. R. Evid. 403.

### A. Evidence Concerning Daily Mail's Content Choices and USA Today's Management Decisions Is Irrelevant

Daily Mail and USA Today plead a tying claim under Section 1 and two monopolization claims under Section 2. Google's assertions regarding Daily Mail's and USA Today's content and business practices are irrelevant to these claims, as well as Google's defenses.

*First*, with liability established for the tying claim, *see* Issue Preclusion Order at 32, Daily Mail and USA Today need to prove only antitrust injury and quantify the resulting damage. *See In re Restasis (Cyclosporine Ophthalmic Emulsion) Antitrust Litig.*, 335 F.R.D. 1, 14 (E.D.N.Y. 2020). To prove antitrust injury, Daily Mail and USA Today must show that they suffered an " 'injury of the type the antitrust laws were intended to prevent and that flows from that which makes defendants' acts unlawful.' " *In re DDAVP Direct Purchaser Antitrust Litig.*, 585 F.3d 677, 688 (2d Cir. 2009) (quoting *Brunswick Corp. v. Pueblo Bowl-O-Mat, Inc.*, 429 U.S. 477, 489 (1977)). Daily Mail and USA Today suffered lost profits because they did not have meaningful ad server alternatives, *see* E.D. Va. Decision, 778 F. Supp. 3d at 851, 860-64; Issue Preclusion Order at 15-16, 27-28, 32, which is a canonical form of antitrust injury flowing from a tie, *see* Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 1769b (4th ed. 2016). Whether their content is "salacious" or their business practices are a "Hail Mary" is irrelevant to the question whether Daily Mail and USA Today claim the right form of damage. And, as the Court already held, such evidence also bears "no discernable relationship to the claimed Sherman Act damages." MDL Dkt. No. 2041 at 44. Google's arguments are irrelevant to resolving Daily Mail and USA Today's Section 1 claim.

*Second*, liability is also established for Daily Mail and USA Today's Section 2 claims, *see* Issue Preclusion Order at 32, except for Project Bernanke/Alchemist, Minimum Bid to Win ("MBTW"), and Enhanced Dynamic Allocation ("EDA"). For those acts, Daily Mail and USA

Today must show they are "'likely to have the effect of controlling prices or excluding competition.'" MDL Dkt. No. 308 at 37 (quoting *PepsiCo, Inc. v. Coca-Cola Co.*, 315 F.3d 101, 108 (2d Cir. 2002)). Daily Mail's and USA Today's content and business practices are irrelevant to that showing. What they publish and their merger partners, for example, have no bearing on whether Google excluded exchange competitors. *See* MDL Dkt. No. 2041 at 22-26 (discussing evidence of competitive harm from EDA, Bernanke, and MBTW). Such evidence is likewise irrelevant to the remaining non-precluded elements of their Section 2 claims: antitrust injury and damages. *See id.* at 44. Regarding injury, Daily Mail and USA Today claim lost profits arising from the absence of exchange and ad server competition. *See Bigelow v. RKO Radio Pictures, Inc.*, 327 U.S. 251, 264 (1946) (approving of comparison of profits affected by the wrongful acts "with what they would have been in its absence under freely competitive conditions"); *Image Tech. Servs., Inc. v. Eastman Kodak Co.*, 125 F.3d 1195, 1221 (9th Cir. 1997) ("'In economic terms, the amount of damages is the difference between what the plaintiff could have made in a hypothetical free economic market and what the plaintiff actually made in spite of the anticompetitive activities.'") (quoting *Dolphin Tours, Inc. v. Pacifico Creative Serv., Inc.*, 773 F.2d 1506, 1511 (9th Cir. 1985)). To calculate damages, they conduct "individualized analyses" of "an array of auction-related practices." MDL Dkt. No. 2041 at 7. As with the Section 1 claim, Google's assertions about low-quality content or poor business practices bear "no discernable relationship" to their antitrust injury or "the claimed Sherman Act damages." *Id.* at 44.

*Third*, Google's arguments are irrelevant to its affirmative defenses. The Court already held that the rejected claims do not support a mitigation defense. *See*, *e.g.*, *National Union Fire Ins. Co. of Pittsburgh v. L.E. Myers Co. Grp.*, 937 F. Supp. 276, 286-87 (S.D.N.Y. 1996) (excluding evidence inconsistent with prior ruling at summary judgment). Google's arguments

are likewise irrelevant to the statute of limitations: Daily Mail's and USA Today's content and business decisions do not disclose when Google imposed, or when Plaintiffs learned of, the challenged anticompetitive practices. *See* MDL Dkt. No. 1212 at 53. Google's arguments also fail to support its defenses that Daily Mail and USA Today "did not suffer any legally cognizable injury or damages," *id.* at 54, or their "damages were not legally caused by Google," *id.* at 53. Again, the Court found that Google's arguments have "no discernable relationship to" Daily Mail's and USA Today's "claimed Sherman Act damages." MDL Dkt. No. 2041 at 44. Finally, Google's other "defenses" argue that Daily Mail and USA Today have not proved the elements of their claims,[2] to which evidence of supposedly salacious content or poor business judgment is irrelevant, as stated above.

### B. Evidence Concerning Daily Mail's Content Choices and USA Today's Management Decisions Would Violate Rule 403

Even if the Court had not already rejected Google's proposed arguments, any marginal probative value of evidence concerning Daily Mail's and USA Today's editorial and management decisions is substantially outweighed by the dangers of unfair prejudice, confusing the issues, misleading the jury, and wasting trial time. Fed. R. Evid. 403.

*First*, presenting evidence about Daily Mail's "salacious" content or USA Today's business management would "draw[ ] the jury into misleading conjecture" and should be excluded. *In re Air Disaster at Lockerbie Scotland on Dec. 21, 1988*, 37 F.3d 804, 824-25 (2d Cir. 1994) (excluding evidence). Google has not developed any evidence from which the jury could draw a causal link between, on the one hand, USA Today's merger and purported ad placement mistakes or Daily Mail's editorial decision making and, on the other hand, the specific categories of damages USA Today and Daily Mail seek. As this Court explained, Daily Mail

---

[2] MDL Dkt. No. 1211 at 54-56; MDL Dkt. No. 1212 at 52-54.

and USA Today's damages expert performed "individualized analyses" of Last Look, EDA, Bernanke, Dynamic Revenue Share, Unified Pricing Rules, reduced auction pressure from Google's conduct, and Google's take-rate overcharge. MDL Dkt. No. 2041 at 7; *see also id*. at 17-21. None of Google's experts has disclosed an opinion that USA Today's or Daily Mail's content or business decisions are alternative causes of those damages. Although Google's damages expert asserts that, "*[t]o the extent that* Daily Mail's content changed" after the introduction of UPR, "this would confound" damages caused by UPR, Prof. Chevalier identifies no such change and makes no effort to elaborate on how any change in Daily Mail's content would impact damages. MDL Dkt. No. 2099-9 at 346 ¶ 572 (Dec. 13, 2024 Chevalier Rep.) (emphasis added); *see also* MDL Dkt. No. 2100-3 at 161-62 ¶ 357 (Hortacsu Rebuttal Rep.). Prof. Chevalier's speculation that an unproven change in Daily Mail's content could implicate UPR damages invites the jury to engage in "misleading conjecture" and is improper. *In re Air Disaster*, 37 F.3d at 824-25.

*Second*, evidence on these issues risks "turning the trial into a 'multi-ringed sideshow of mini-trials on collateral issues . . . that may have only tangential bearing, if at all, to the issues and claims disputed in this case.'" *Park W. Radiology v. CareCore Nat'l LLC*, 675 F. Supp. 2d 314, 325 (S.D.N.Y. 2009) (citation omitted). For example, if Google argued that USA Today's merger with GateHouse reduced its revenue, USA Today would need to explain the reasons for the merger, the impact of the merger on USA Today's business, and the lack of any connection between the merger and USA Today's damages. Or, if Google put on evidence of the "multiple occasions" USA Today purportedly "failed to properly offer its advertising inventory," USA Today would need to describe each instance and explain why it is unrelated to USA Today's damages. Finally, if Google claimed that advertisers "diverted spend" from Daily Mail due to its content, Daily Mail would have to put on evidence why that is not true. It would waste time and

risk juror confusion for Google to present evidence that the Court concluded has no "discernable relationship" to USA Today's and Daily Mail's damages. MDL Dkt. No. 2041 at 44.

This Court granted Plaintiffs' summary judgment motion to the extent "Google asserts that Daily Mail could have mitigated damages by publishing fewer 'salacious' articles" and "[USA Today] could have mitigated damages by making different business decisions." MDL Dkt. No. 2041 at 87. For this reason and the others above, this evidence should be excluded.

## III. MIL #3: Evidence and Argument Concerning Legal Fee Arrangements, Costs, Attorneys' Fees, and Post-Verdict Trebling Should Be Excluded

The Court should exclude any evidence and argument related to Plaintiffs' legal fee arrangements with their attorneys. "[F]ee arrangements have no tendency to make a fact of consequence . . . more or less probable." *Quinton v. American Express Co.*, 2025 WL 1384896, at *12 (May 13, 2025), *modified in part on other grounds on recon.*, 2025 WL 1994848 (E.D.N.Y. July 17, 2025). Courts routinely exclude evidence and argument related to legal fee arrangements such as contingency fees or third-party litigation funding. *See*, *e.g.*, *id.*; *Falise v. American Tobacco Co.*, 2000 WL 1804602, at *1 (E.D.N.Y. Nov. 30, 2000) (granting motion "to exclude reference to the 25% contingency fee received by attorneys"); *MGI Digit. Tech. S.A. v. Duplo U.S.A. Corp.*, 2024 WL 655481, at *8 (C.D. Cal. Jan. 26, 2024) (granting motion in limine to preclude reference to third-party litigation funding). And even references to "the number of lawyers that have worked on behalf of [a party] or the amount of legal fees the company has spent" are "patently objectionable as irrelevant and prejudicial." *In re: General Motors LLC Ignition Switch Litig.*, 2015 WL 8270427, at *4 (Dec. 7, 2015), *corrected on other grounds*, 2015 WL 9480477 (S.D.N.Y. Dec. 29, 2015).

The Court also should exclude any evidence and argument related to Plaintiffs' potential entitlement to costs and attorneys' fees, or the trebling of antitrust damages. "Reference to treble

damages and attorneys['] fees is irrelevant to the jury questions of liability and damages and may tend to confuse or prejudice a jury into reducing its eventual award, thus frustrating Congress's goal of deterring improper conduct." *HBE Leasing Corp. v. Frank*, 22 F.3d 41, 45 (2d Cir. 1994); *see Theatre Techniques, Inc. v. United Scenic Artists, Local 829*, 1980 WL 2151, at *2 (S.D.N.Y. June 27, 1980) ("[N]o mention should be made of the power in the court to treble any damages that may be awarded to the plaintiff, and to award counsel fees in such event."), *aff'd mem.*, 671 F.2d 493 (2d Cir. 1981). Trebling, costs, and attorneys' fees are not issues for the jury, *see In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 698 (S.D.N.Y. 2019) (citing 15 U.S.C. § 15(a)), and any argument or evidence relating to them would be prejudicial, *see* Fed. R. Evid. 403. Thus, the Court should preclude Google from referring to trebling, costs, or attorneys' fees before the jury.

## IV. MIL #4: Google Should Be Precluded from Mentioning DOJ's Failure To Prove the Existence of an Advertiser Ad Network Market

The Court should exclude as irrelevant and prejudicial any evidence or argument that DOJ failed to prove the existence of a market for advertiser ad networks in the E.D. Va. Action. *See* Fed. R. Evid. 401, 402, 403. As the Court recently recognized, Daily Mail and USA Today "do not contend" that "the market for ad-buying tools" "is an antitrust product market." MDL Dkt. No. 2041 at 24. They allege sell-side markets for ad exchanges and ad servers, which Google may not relitigate. *See* Issue Preclusion Order at 32. Google's buy-side conduct is relevant to the extent Google "manipulate[d] bids in favor of AdX and increase[d] AdX's share in the *market for ad exchanges*," MDL Dkt. No. 2041 at 25 (emphasis added), or to the extent Google's control of unique advertiser demand supports the DFP-AdX tie, *see* Issue Preclusion Order at 23. Judge Brinkema's finding regarding a buy-side market is therefore irrelevant to the claims and defenses in this case.

That ad exchanges are "two-sided" – i.e., they connect publishers and advertisers – does not make Judge Brinkema's finding relevant here. Ad exchanges, even if they are two-sided, are a separate market from ad-buying tools. *See* E.D. Va. Decision, 778 F. Supp. 3d at 837 ("Ad exchanges play a distinct role in the open-web display ad tech stack by connecting publishers using publisher ad servers with advertisers using programmatic buying tools such as demand-side platforms and ad networks."); *id.* at 843 ("Distinct products should not be grouped into a single omnibus market simply because they work together to achieve the same overarching purpose."). Nor may Google argue that it needs to deploy Project Bernanke or other conduct to help its buy-side tools compete in an allegedly more competitive buy-side market. "As a general proposition, antitrust rejects" that "possible injuries to competition in one market are offset by efficiency benefits in a different market." Phillip E. Areeda & Herbert Hovenkamp, *Antitrust Law* ¶ 972, at 57 (4th ed. 2016); *see United States v. Topco Assocs., Inc.*, 405 U.S. 596, 611 (1972) ("If a decision is to be made to sacrifice competition in one portion of the economy for greater competition in another portion this . . . is a decision that must be made by Congress and not by private forces or by the courts."). The Court should exclude Judge Brinkema's finding regarding a buying-tools market because it is irrelevant to Daily Mail and USA Today's claims.

Testimony regarding a buy-side market definition also would confuse the jury and result in unfair prejudice. Fed. R. Evid. 403; *see, e.g.*, *Ragin v. Newburgh Enlarged City Sch. Dist.*, 2011 WL 2183175, at *1 (S.D.N.Y. June 3, 2011) (excluding another tribunal's ruling under Rule 403 because the questions it decided "were substantially different from those involved in this case"). Jurors told that DOJ "failed" to prove a market in a case against Google are likely to conclude, incorrectly, that Google prevailed in some meaningful respect relevant to this case. *See Figueroa v. Boston Sci. Corp.*, 2003 WL 21488012, at *4 (S.D.N.Y. June 27, 2003)

(excluding evidence of other lawsuits that "produced mixed results"). They may also wrongly infer that Plaintiffs' claims depend on, or are weakened by, a market Plaintiffs never alleged. Rebutting that inference would require a time-consuming detour into a separate market, separate evidence, and a separate court's reasoning, which risks confusing the jury. Separately, under Rule 403, Plaintiffs respectfully ask the Court to preclude Google from referring to the ruling in the E.D. Va. Action that DOJ failed to prove an advertiser ad network market.

## V. MIL #5: The Court Should Prohibit Google from Raising a Waiver Defense

The Court should prohibit Google from introducing a waiver defense at trial. *See ESPN, Inc. v. Off. of Comm'r of Baseball*, 76 F. Supp. 2d 383, 387, 395 (S.D.N.Y. 1999) (adjudicating challenge to an affirmative defense via a motion in limine); *Broadspring, Inc. v. Congoo, LLC*, 2014 WL 7392905, at *1 n.1 (S.D.N.Y. Dec. 29, 2014) (noting "the Court's authority to strike a legally insufficient defense *sua sponte* at any time" under Federal Rule of Civil Procedure 12(f)).

Plaintiffs' contention interrogatories requested that Google "[i]dentify the material and/or primary facts and evidence in support of and the legal basis for your defense that [Daily Mail's or USA Today's] claims are barred, in whole or in part, by the doctrine of waiver." Defs.' Suppl. Resps. & Objs. to Daily Mail's 1st Set of Interrogs. at 10 (Aug. 30, 2024); Defs.' Suppl. Resps. & Objs. to USA Today's 1st Set of Interrogs. at 11 (Aug. 30, 2024). In response, Google asserted that Google's contracts "included limitations of liability" and that, by agreeing to those limitations, each Plaintiff "waived any right it might have otherwise had to recover, in whole or in part, on the claims in its" complaint. Defs.' Suppl. Resps. & Objs. to Daily Mail's 1st Set of Interrogs. (Aug. 30, 2024) at 11; Defs.' Suppl. Resps. & Objs. to USA Today's 1st Set of Interrogs. at 12 (Aug. 30, 2024). Google did not raise that contractual defense in its motion for summary judgment. *See* Defs.' Mot. Summ. J., MDL Dkt. No. 1360.

Google's waiver defense should be excluded because it relies solely on unenforceable contractual provisions. To the extent Google's contracts with Plaintiffs contain provisions that seek to limit Google's liability under antitrust law or New York law, those provisions are void as contrary to public policy. *See In re American Express Merchants' Litig.*, 634 F.3d 187, 197 (2d Cir. 2011) (recognizing "a firm principle of antitrust law that an agreement which in practice acts as a waiver of future liability under the federal antitrust statutes is void as a matter of public policy"); *see also Golden Pac. Bancorp v. FDIC*, 273 F.3d 509, 515 (2d Cir. 2001) (New York law "looks with disfavor upon agreements intended to absolve a party from the consequences of his wrongdoing," and "a release which purports to excuse a party from responsibility for misconduct is subject to the closest of judicial scrutiny") (cleaned up). Given the infirmity of Google's contractual waiver defense, which Google failed even to assert at summary judgment, the Court should prohibit Google from introducing that waiver defense at trial.

Nor should Google be permitted to introduce any other waiver defense. *See Wechsler v. Hunt Health Sys., Ltd.*, 1999 WL 672902, at *4 (S.D.N.Y. Aug. 27, 1999) (granting post-summary judgment motion to preclude undisclosed defense). Google never disclosed another basis for its waiver defense besides the parties' contracts. If Google had one, it was obligated to supplement its interrogatory response. *See* Fed. R. Civ. P. 26(e). And "[p]ursuant to Rule 37(c)(1), failure to follow Rule 26(e) will warrant preclusion of omitted information" unless the failure was substantially justified or harmless. *In re MTBE Prods. Liab. Litig.*, 2014 WL 494522, at *3 (S.D.N.Y. Feb. 6, 2014). Thus, courts preclude parties from asserting new theories at trial that were not disclosed in response to contention interrogatories. *See id.* at *4 (precluding an "undisclosed theory" of liability not raised in response to a contention interrogatory); *Wechsler*, 1999 WL 672902, at *2 (interrogatory responses "generally estop the answering party

from later seeking to assert positions omitted from, or otherwise at variance with, those responses"). The Court should preclude Google from offering an undisclosed theory of waiver.

## VI. MIL #6: Google Should Be Precluded from Raising Its Antitrust Standing Defense at Trial

In its contention interrogatory responses, Google asserted Plaintiffs lack standing because they are not "natural persons who are direct purchasers." Defs.' Suppl. Resps. & Objs. to Daily Mail's 1st Set of Interrogs. (Aug. 30, 2024) at 14-15; Defs.' Suppl. Resps. & Objs. to USA Today's 1st Set of Interrogs. at 13-14 (Aug. 30, 2024). Google argued that Plaintiffs have subsidiaries and that each Plaintiff "has the burden to demonstrate—for every entity for which it seeks to recover damages—direct participation in each of the relevant markets for the entire relevant period." Defs.' Suppl. Resps. & Objs. to Daily Mail's 1st Set of Interrogs. at 14-15 (Aug. 30, 2024); Defs.' Suppl. Resps. & Objs. to USA Today's 1st Set of Interrogs. at 14 (Aug. 30, 2024). Google's argument is meritless and should be precluded because it is legally irrelevant and would confuse and prejudice the jury.

Daily Mail and USA Today are direct purchasers of Google's services that deal directly with Google. *See* MDL Dkt. No. 2041 at 55-56 ("[USA Today] and Daily Mail . . . were customers of Google"); *id.* at 41 ("[USA Today] and Daily Mail each signed contracts in 2017 for the use of AdX and DFP."). The contracts for the use of Google's ad server are in the names of the above-captioned Plaintiffs: Gannett Co., Inc. and Associated Newspapers Ltd.[3] And

---

[3] *See, e.g.*, GANNETT_GOOG_0054678 (2012 Google Services Agreement signed by Gannett Co., Inc.); GANNETT_GOOG_0409029 (2017 DFP/AdX contract signed by Gannett Co., Inc.); GANNETT_GOOG_1757245 (2020 Extension Amendment to same signed by Gannett Media Corp. (f.k.a. and as successor-in-interest to Gannett Co., Inc.)); GANNETT_GOOG_0211799 (GAM order form for Gannett Media Corp. dated 2021); GANNETT_GOOG_1757319 (GAM order form for Gannett Media Corp. dated 2023); DM_GOOG_0014879 (2017 DFP/AdX contract signed by Associated Newspapers Limited);

Google affirmed to Daily Mail there was no need to have separate GAM contracts for each of its affiliates: instead, the parties could add an affiliate by editing the master agreement in the parent company's name. DM_GOOG_0033693 at -695. In like vein, USA Today laid out for Google a list of its domains as an exhibit to its GAM contract. GANNETT_GOOG_0054678 at -692-694. Both Plaintiffs also have identified to Google the domains they operate and for which they seek damages, and the DFP and AdX licenses responsible for their ad sales.[4] Plaintiffs stand in contractual privity with Google – they are the proper direct-purchaser plaintiffs. Daily Mail and USA Today therefore have antitrust standing to sue for damages sustained by the publications they own and operate. *See Apple Inc. v. Pepper*, 587 U.S. 273, 282 (2019) ("When there is no intermediary between the purchaser and the antitrust violator, the purchaser may sue.").

Because there is no factual issue for the jury to resolve, the Court should preclude Google from asserting its antitrust standing defense at trial. *See Wechsler*, 1999 WL 672902, at *4 (granting motion in limine to preclude defense). Argument and evidence regarding Plaintiffs' standing is irrelevant as a matter of law and would confuse the issues and waste time.

## VII. MIL #7: Google Should Be Precluded from Mentioning the Damages Sought in Other Ad Tech Monopolization Cases Against Google

The Court should preclude Google from presenting any evidence or argument about the damages sought by DOJ, the AdX Class, or other plaintiffs in other ad tech cases against Google. Such evidence is irrelevant, Fed. R. Evid. 401, 402, and would be unhelpful, confusing, and unduly prejudicial, Fed. R. Evid. 403. It also likely would be untimely expert opinion.

---

DM_GOOG_0469446 (2022 amendment signed by Associated Newspapers Limited); DM_GOOG_0014757 (same in 2023).

[4] *See* USA Today's Resps. & Objs. to Defs.' 1st Set of Interrogs. at 21-35 (Sept. 22, 2023); Daily Mail's 3d Set of Suppl. Resps. & Objs. to Defs.' 1st Set of Interrogs. at 13-14 (Jan. 31, 2024).

*First*, damages sought by other plaintiffs are irrelevant. *See Belgravia Hartford Gold Assets Corp. v. PolyNatura Corp.*, 813 F. Supp. 3d 1250, 1257 (D.N.M. 2025) ("[E]vidence of damages that a plaintiff is not entitled to recover is not relevant and is thus inadmissible at trial.") (cleaned up); *see also Raniola v. Bratton*, 2002 WL 31388715, at *1 (S.D.N.Y. Oct. 22, 2002) (evidence of another jury verdict "reflects only the assessment by another set of jurors of whatever evidence was presented to them in another trial"); *Arlio v. Lively*, 474 F.3d 46, 52-53 (2d Cir. 2007) (testimony concerning the results of a prior arbitration irrelevant under Rule 401 where the evidence relates to damages the plaintiff was not seeking); *Moon v. Hy-Vee, Inc.*, 351 S.W.3d 279, 286 (Mo. Ct. App. 2011) (evidence about the amount of a damages award in another case against the same defendant has "no conceivable relevance"). For example, DOJ sought damages as an advertiser, not a publisher. *See* E.D. Va. Dkt. No. 748 at 1-2. And, as the Court recently explained, "[t]here are marked differences to how [USA Today] and Daily Mail, on the one hand, and the AdX Class, on the other, propose to show antitrust impact and damages." MDL Dkt. No. 2041 at 7. The Class seeks to recover only a subset of publishers' harm. *See* MDL Dkt. No. 1496 at 9. Its request for limited damages is irrelevant to the question here: the total damages sustained by Daily Mail and USA Today.

*Second*, allowing Google to discuss the damages sought in other cases would cause juror confusion and be unduly prejudicial. Google could use other, smaller damages calculations improperly to argue that Daily Mail and USA Today's damages should be reduced. *Cf. Waldorf v. Shuta*, 3 F.3d 705, 706 (3d Cir. 1993) (vacating judgment "based on the jury's inadvertent exposure to media coverage of a $30 million verdict awarded in a similar case," which served as "a prejudicially impermissible yardstick"). Alternatively, Google impermissibly could argue that Daily Mail and USA Today's damages are too large because other publishers could use their

methodologies to seek yet more. *Cf. Panelle v. Chicago Transit Auth.*, 202 N.E.2d 484, 485 (Ill. 1964) (vacating judgment where defendant's attorney argued to the jury that, if the defendant were required to pay every claim made against it, then "there isn't enough money collected in a year that we would have to pay out in claims in a month"). Either way, arguments about damages in other cases inevitably would introduce mini-trials on those damages calculations. For example, Daily Mail and USA Today would need to explain how DOJ sought damages only as an advertiser rather than a publisher, which implies a different incidence for any take-rate overcharge. *See* MDL Dkt. No. 2099-7 at 230 ¶¶ 719-720 (Oct. 18, 2024 Second Revised Hortacsu Rep.) (Daily Mail and USA Today's expert calculating specific incidence). They also would need to explain that, although the AdX Class's expert used a 10% but-for take rate, he opined that a 5% take rate was acceptable, too. *See* MDL Dkt. No. 1355-11 at 172:16-173:7 (Mar. 11, 2025 Elhauge Dep. Tr.). Other issues would arise, as well, with the parties arguing about opinions offered by other witnesses in other cases who will not appear at trial. The Court should exclude such evidence and argument.

*Third*, if sponsored by an expert, allowing Google to introduce evidence or argument about other plaintiffs' damages would be untimely expert opinion, in violation of Rule 26(a)(2) and the Court's scheduling order. Rule 26(a)(2) requires parties to disclose expert opinions "early enough in the case to permit the other side to prepare a response." *Bentley v. Highlands Hosp. Corp.*, 2016 WL 5867496, at *3 (E.D. Ky. Oct. 6, 2016); *see also Mehta v. DLA Piper LLP*, 2026 WL 836677, at *8 (S.D.N.Y. Mar. 26, 2026) (recognizing prejudice to plaintiff from defendant's untimely disclosed supplemental expert report). Under the Court's scheduling order, the deadline for Defendants to disclose their expert rebuttal opinions was December 13, 2024, almost two years ago. MDL Dkt. No. 880. Both then and since, Google's damages experts have

made no attempt to use the damages sought in other cases as a benchmark to compare the damages being sought here. They should not be permitted to do so now. The lack of any relevant expert testimony on comparative damages confirms that any discussion at trial would be confusing, unsupported, and prejudicial.

**CONCLUSION**

For the foregoing reasons, the Court should grant Plaintiffs' motions in limine.

Dated: November 6, 2026

Respectfully submitted,

/s/ *John Thorne*

John Thorne
Mark C. Hansen
Joseph S. Hall
Christopher C. Goodnow
Thomas W. Traxler
KELLOGG, HANSEN, TODD, FIGEL & FREDERICK, P.L.L.C.
1615 M Street, N.W., Suite 400
Washington, D.C. 20036
Tel.: (202) 326-7900
Fax: (202) 326-7999
Email: jthorne@kellogghansen.com
mhansen@kellogghansen.com
jhall@kellogghansen.com
cgoodnow@kellogghansen.com
ttraxler@kellogghansen.com

*Counsel for Associated Newspapers Ltd., Mail Media, Inc., and Gannett Co., Inc.*